IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAN R. SUNDARAM,<br><br>    Plaintiff,<br><br>    v.<br><br>FRESHWORKS INC, et al.,<br><br>    Defendants. | Case No. 22-cv-06750-CRB<br><br>**ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL** |

Before the Court are dueling motions to appoint lead plaintiff and lead counsel in this action under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Two prospective class members seek appointment: Mohan R. Sundaram ("Sundaram"), the plaintiff in this action, who seeks appointment of Scott+Scott LLP as lead counsel, see Sundaram Mot. (dkt. 42), and Vivek Nagarajan ("Nagarajan"), who seeks appointment of Pomerantz LLP as lead counsel. See Nagarajan Mot. (dkt. 44).

As discussed below, finding this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), the Court vacates the hearing currently set for February 10, 2023, appoints Sundaram as lead plaintiff in the action, and appoints Scott+Scott LLP as lead counsel.

I.    **BACKGROUND**

Defendant Freshworks Inc. ("Freshworks") is a Delaware corporation based in San Mateo, California. Compl. (dkt. 1) ¶ 14. Freshworks provides customer support software and tools for small- and medium-sized businesses. Id. In the class action complaint, Sundaram alleges that Freshworks' Offering Documents in connection with its IPO "contained untrue statements of material facts or omitted to state other facts necessary to

make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation." Id. ¶ 52.  To convince prospective investors of Freshworks' vitality, the Offering Documents touted Freshworks' continued growth in the lead up to the IPO, its "broad appeal," its "healthy" net dollar retention rates, and its year-over-year revenue growth rate. Id. ¶ 53.  The class action complaint alleges that such statements were false and misleading because they omitted that, at the time of the IPO, Freshworks' net dollar retention rate had plateaued and its revenue growth rate was decelerating. Id. ¶ 54.  Despite this, on September 22, 2021, Defendants priced the IPO at $36 per share, and filed the final prospectus for the IPO. Id. ¶ 51.  After the company announced its earnings for the fourth quarter of 2021, which reported the growth deceleration, Freshworks' stock dropped 18 percent, to $18.41 per share. Id. ¶ 58.  Sundaram brings claims under Sections 11, 12(a), and 15 of the Securities Act, "on behalf of a class consisting of all persons and entities that purchased, or otherwise acquired, Freshworks common stock issued in connection with the Company's IPO." Id. ¶ 64; see also id. ¶¶ 70–90.

On January 3, 2023, Nagarajan and Sundaram filed the competing motions to appoint lead plaintiff and lead counsel at issue in this order. See Sundaram Mot.; Nagarajan Mot.  Those motions are now fully briefed. See Nagarajan Opp'n (dkt. 48); Sundaram Opp'n (dkt. 50); Nagarajan Reply (dkt. 56); Sundaram Reply (dkt. 57).

## II.     APPOINTMENT OF LEAD PLAINTIFF

### A.     Legal Standard

Under the PSLRA, a court is to appoint the "most adequate plaintiff" to serve as lead plaintiff in the action. 15 U.S.C. § 78u-4(a)(3)(B)(i).  The plaintiff most capable of adequately representing the interest of class members "is the person or group of persons that" (1) either filed the complaint or filed a timely lead plaintiff motion; (2) has the largest financial interest in the relief sought by the class, as determined by the court; and (3) satisfies the requirements of Federal Rule of Civil Procedure 23. Id. § 78u-4(a)(3)(B)(iii)(I).  Rule 23 provides that a party may serve as a class representative if (1)

2

its claims or defenses are typical of those of the class, and (2) it will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

The Ninth Circuit has established a three-step process for the appointment of a lead plaintiff under the PSLRA.  See In re Cavanaugh, 306 F.3d 726, 729–31 (9th Cir. 2002); Doherty v. Pivotal Software, Inc., No. 3:19-CV-03589-CRB, 2019 WL 5864581, at *4 (N.D. Cal. Nov. 8, 2019).  First, the court must determine whether the plaintiff in the first-filed action issued a notice publicizing the pendency of the action.[1]  See Cavanaugh, 306 F.3d at 729.  Second, the court must compare the financial stakes of the various plaintiffs, determine which has the most to gain from the lawsuit, and determine whether that plaintiff satisfies Rule 23, particularly its typicality and adequacy requirements.  Id. at 730.  Third, the court must consider competing plaintiffs' attempts to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23.  Id.  This can be done using proof that the presumptive lead plaintiff (1) will not fairly and adequately protect the interests of the class, or (2) is subject to unique defenses that render the plaintiff incapable of adequately representing the class.  Fed. R. Civ. Proc. 23(a); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); Doherty, 2019 WL 586581, at *4.

**B.     Discussion**

Both Sundaram and Nagarajan timely moved for appointment as lead counsel in response to the PSLRA notice.[2]  The Court first addresses the PSLRA's financial loss requirement, and then the Rule 23(a) adequacy and typicality requirements.

**1.     Financial Loss Requirement**

Because the PSLRA does not specify how to calculate "largest financial interest,"

---

[1] The PSLRA provides that the plaintiff must publish notice alerting members of the purported class of the pendency of the action, the claims asserted, and the purported class period within 20 days after filing the complaint.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Any member of the proposed class may file a motion to serve as lead plaintiff within 60 days of the notice's publication.  Id. § 78u-4(a)(3)(A)(i)(II).

[2] It is undisputed that Sundaram, the plaintiff in this action, published adequate notice on November 1, 2022.  See Jasnoch Decl. Ex. A.  Both movants timely filed their motions to serve as lead plaintiff within the required 60-day time period.  See 15 U.S.C. § 77z-1(a)(3)(A)-(B); Sundaram Mot.; Nagarajan Mot.

3

courts determine which movant has the most to gain from the lawsuit through "accounting methods that are both rational and consistently applied." Cavanaugh, 306 F.3d at 730 n.4; see also Doherty, 2019 WL 5864581, at *5. Courts consider the Olsten-Lax factors to "determine who has the largest financial interest: '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.'" Doherty, 2019 WL 5864581, at *5 (quoting In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)). Of the four Olsten-Lax factors, courts in the Ninth Circuit consider the fourth factor, approximate losses suffered, the most determinative. See, e.g., Bruce v. Suntech Power Holdings Co., 12-cv-4061, 2012 WL 5927985, at *2 (N.D. Cal. Nov. 13, 2012).

Sundaram argues that he suffered the greatest loss, calculating his losses at $32,840 based on a loss calculation method that tracks the remedy available under Section 12 of the Securities Act, one of the claims Sundaram brings in this action. See Jasnoch Decl. (dkt. 43) Ex. C; Sundaram Opp'n at 2 n.2. But Nagarajan contends that he suffered the greatest loss, calculating his losses to be approximately $23,677, applying the statutory methodology for calculation of losses pursuant to Section 11 of the Securities Act, another claim brought in this action. See Pafiti Decl. (dkt. 44-2) Ex. A; Nagarajan Opp'n at 1. Under Nagarajan's model, he alleges that Sundaram's losses would in fact be lower than Nagarajan's at $22,840, which Sundaram does not dispute. See Second Pafiti Decl. (dkt. 49) Ex. A. Thus the question is whether Cavanaugh's requirement that a calculation method be "both rational and consistently applied" requires that Nagarajan's Section 11 calculation method (as opposed to Sundaram's Section 12 method) be used—if so, Nagarajan, rather than Sundaram, would be the class member with the "largest financial interest" and thus the presumptive lead plaintiff.

Neither the Ninth Circuit nor the PSLRA specifies how to calculate which plaintiff has the largest financial interest. Instead, as discussed above, a district court "may select accounting methods that are both rational and consistently applied" to "compare the

financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." Cavanaugh, 306 F.3d at 730 & n.4; see also Perlmutter v. Intuitive Surgical, Inc., No. 10-CV-03451-LHK, 2011 WL 566814, at *3 (N.D. Cal. Feb. 15, 2011). Despite Nagarajan's protests, the Section 11 calculation methodology is not the required or even the default methodology for this exercise. Courts apply various methods, including those based in actual economic loss or potential recovery, to determine which plaintiff has suffered the greatest losses and thus has the largest financial interest. See Perlmutter, 2011 WL 566814, at *3. Both parties' chosen methods are rational: Sundaram brings a Section 12 claim on behalf of the class along with the Section 11 claim, and Section 12 allows a plaintiff to "recover the consideration paid" for that security. See 15 U.S.C. § 77l. Nagarajan uses the methodology for claims under Section 11, which require losses to be calculated based on "the price at which the security was offered to the public," even if the purchaser bought the security at a higher price. See id. § 77k(e).

   Nagarajan's arguments against Sundaram's chosen calculation methodology fall flat. First, Nagarajan argues that "Sundaram's suggestion that the Court should utilize the Section 12 formula to assess recoverable damages is difficult to credit" because his initial motion made no reference to his "alternative loss-calculation methodology." Nagarajan Reply at 4. While Sundaram can perhaps be faulted for not making his proposed methodology clear in his initial motion, it is hardly "alternative," given that there is no required or default loss-calculation methodology prescribed by the Ninth Circuit or the PSLRA. Second, Nagarajan contends that adopting Sundaram's loss calculation methodology "would impede a court's ability to consistently apply rational methodologies in evaluating financial interests." Nagarajan Reply at 5. The Court does not see how; under Cavanaugh, it is required to assess the parties' proposed methodologies, find one that is "rational" and apply it consistently. Cavanaugh, 306 F.3d at 730 n.4. It would not shock the Court to learn that parties might argue for methodologies that would lend them the presumption of lead plaintiff status. Finally, Nagarajan argues that Sundaram "has not cited a single case alleging violations of Section 11 of the Securities Act where a court,

5

considering the appropriate measure of financial interest, calculated losses pursuant to Section 12." Nagarajan Reply at 5. But Nagarajan has also not cited a single case in which a court has disregarded a Section 12 calculation methodology under Cavanaugh where a Section 12 claim is brought on behalf of a class. In short, Nagarajan has not persuaded the court that Sundaram's chosen calculation method is "[ir]rational" or that Sundaram has applied it "[in]consistently." Cavanaugh, 306 F.3d at 730 n.4.

Because either proposed calculation method may be applied under Cavanaugh, the Court discusses both parties' fitness to serve as lead plaintiff under the Rule 23(a) requirements to determine whether either Sundaram or Nagarajan "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); Cavanaugh, 306 F.3d at 730.

### 2.      Rule 23(a) Requirements: Adequacy and Typicality

Rule 23(a) provides that a class action may proceed if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The typicality and adequacy requirements of Rule 23 are the Court's main focus in this context. Cavanaugh, 306 F.3d at 730. A presumptive lead plaintiff "need only make a prima facie showing of its typicality and adequacy." Id. at 730–31.

The test for adequacy is whether the presumptive lead plaintiff and its counsel have any conflicts of interest with other class members, and whether they will prosecute the action vigorously on behalf of the class. See Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003). The test for typicality "is whether other class members have the same or similar injury, whether the action is based on conduct that is not unique to the presumptive lead plaintiff, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). Additionally, the presumptive lead plaintiff may be atypical if they are subject to "unique defenses which threaten to become the focus of the litigation." See id. (citation omitted).

6

### a. Sundaram

Sundaram meets both requirements. He alleges that he purchased Freshworks stock traceable to its IPO and suffered damages as a result of the company's material misstatements and omissions. See Compl. ¶ 13; Jasnoch Decl. Ex. C–D. His injury is therefore similar to other prospective class members in this action. There is no evidence that Sundaram would be subject to "unique defenses which threaten to become the focus of the litigation," see Hanon, 976 F.2d at 508, nor is there any evidence that Sundaram's claims conflict with the rest of the class. And as discussed in the next section, Sundaram's selected counsel is qualified and experienced in prosecuting securities class actions. See infra Section III.

Nagarajan argues that Sundaram is inadequate to represent the class because he "significantly overstated his claimed financial interest by improperly failing to calculate his losses pursuant to the methodology mandated by the Securities Act." Nagarajan Opp'n at 6. But as discussed above, no calculation methodology is mandated by the Ninth Circuit or the PSLRA, and Sundaram has argued persuasively that, in a case in which Section 12 claims are brought, a methodology based in the remedy allowed under Section 12 is not irrational. Sundaram has therefore not "overstated" his financial interest, and Nagarajan's references to cases where a prospective lead plaintiff had made calculation errors or where other typicality concerns were also at play are inapposite. See, e.g., Lako v. Loandepot, Inc., 21-cv-1449, 2022 WL 1314463, at *5–7 (C.D. Cal. May 2, 2022); Camp v. Qualcomm Inc., 18-cv-1208, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019).

Accordingly, the Court finds that Sundaram has met the 23(a) requirements at this juncture.

### b. Nagarajan

The same cannot be said of Nagarajan. Sundaram argues that, because Nagarajan purchased his shares after the lock-up period expired, Nagarajan's shares are not traceable to the registration statement at issue in this case, making him an atypical and inadequate plaintiff. See Sundaram Opp'n at 3–5; Doherty, 2019 WL 5864581, at *9–*11. Nagarajan

7

does not dispute that he purchased his shares after the lock-up expired, nor does he offer additional evidence that his shares are traceable to the registration statement at issue, as required by Century Aluminum.  See In re Century Aluminum Co. Sec. Litig., 729 F.3d 1104, 1107–1109 (9th Cir. 2013).  Instead, he argues that the Ninth Circuit's recent opinion in Pirani v. Slack Technologies fundamentally alters the law on traceability as stated in Century Aluminum and as discussed by the Court in Doherty.  See Nagarajan Reply at 6–9; Pirani v. Slack Techs., Inc., 13 F.4th 940 (9th Cir. 2021), cert. granted sub nom. Slack Techs., LLC v. Pirani, 143 S. Ct. 542 (2022).

  The Court does not agree.  Pirani, critically, addressed unregistered shares sold after a direct listing, where registered and unregistered securities are offered to the public at the same time without any lock-up period.  Pirani, 13 F.4th at 943–45.  Thus, there was no way to establish traceability because, in a direct listing, both registered and unregistered shares are immediately available to the public.  Id. at 947.  Pirani did not call into question cases like Century Aluminum (and this case and Doherty), which address traceability of shares purchased in a mixed market after an IPO (and subsequent lock-up period), not a direct listing.  See id. at 946.

  Nagarajan's shares were clearly purchased in a mixed market, and he does not argue that they are traceable to the shares issued in Freshworks' IPO.  In the IPO in September 2021, Freshworks issued 31.35 million shares of common stock. Compl. ¶ 51.  At the time of the IPO, millions of Freshworks shares were subject to lock-up agreements and thus were not eligible to be sold on the open market.  Second Jasnoch Decl. (dkt. 51) Ex. A at 47.  On November 4, 2021, 58.2 million of the shares that had been subject to lock-up agreements became eligible for public sale.  Second Jasnoch Decl. Ex. B.  Thus, by November 4, 2021, only a little more than a third of the stock eligible for public sale was issued pursuant to the September 2021 registration statement.  Nagarajan began purchasing Freshworks shares in December 2021, after the lock-up period for those unregistered shares had expired, in a mixed market.  See Pafiti Decl. Ex. A.  Under Century Aluminum and Doherty, to render plausible Nagarajan's allegation that his shares are traceable to the

registration statement at issue, the Court requires "a greater level of factual specificity" that his shares are traceable to the IPO and to confer statutory standing. Century Aluminum, 729 F.3d at 1107; see also Doherty, 2019 WL 5864581, at *9. Nagarajan, relying on Pirani, provides no factual specificity. Thus, because Nagarajan has not plausibly alleged that his shares are traceable to the IPO, his claims are atypical. See Doherty, 2019 WL 5864581, at *11.

Thus, because Nagarajan does not meet the requirements of Rule 23(a), the Court appoints Sundaram as lead plaintiff.

### III. APPOINTMENT OF LEAD COUNSEL

Under the PSLRA, the Court must also appoint lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). While the appointment of lead counsel is made subject to the approval of the court, the lead plaintiff gets to select lead counsel for the class. See Cavanaugh, 306 F.3d at 732 ("[T]he district court has no authority to select for the class what it considers to be the best possible lawyer or the lawyer offering the best possible fee schedule. Indeed, the district court does not select class counsel at all."). Sundaram has selected Scott+Scott LLP, a firm with experience prosecuting complex securities class actions. There is no reason to disapprove Sundaram's choice.

Accordingly, the Court appoints Scott+Scott LLP as lead counsel in this action.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Sundaram's motion and DENIES Nagarajan's motion. The Court appoints Mohan R. Sundaram as lead plaintiff and Scott+Scott LLP as lead counsel in this action.

**IT IS SO ORDERED.**

Dated: February 8, 2023

_____
CHARLES R. BREYER
United States District Judge