JOHN T. JASNOCH (CA 281605)
HAL D. CUNNINGHAM (CA 243048)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565
jjasnoch@scott-scott.com
hcunningham@scott-scott.com

*Counsel for Plaintiff Mohan R. Sundaram*
*and the Proposed Class*

[Additional counsel on signature page.]

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAN R. SUNDARAM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FRESHWORKS INC., RATHNA GIRISH MATHRUBOOTHAM, TYLER SLOAT, ROXANNE S. AUSTIN, JOHANNA FLOWER, SAMEER GANDHI, RANDY GOTTFRIED, ZACHARY NELSON, BARRY PADGETT, JENNIFER TAYLOR, MORGAN STANLEY & CO. LLC, J.P. MORGAN SECURITIES LLC, BOFA SECURITIES, INC., JEFFERIES LLC, BARCLAYS CAPITAL INC., ROBERT W. BAIRD & CO. INCORPORATED, CANACCORD GENUITY LLC, JMP SECURITIES LLC, NEEDHAM & COMPANY, LLC, NOMURA SECURITIES INTERNATIONAL, INC., OPPENHEIMER & CO. INC., PIPER SANDLER & CO., RAYMOND JAMES & ASSOCIATES, INC., AMERIVET SECURITIES, INC., CASTLEOAK SECURITIES, L.P., SAMUEL A. RAMIREZ & COMPANY, INC., and R. SEELAUS & CO., LLC,<br><br>Defendants. | Case No. 3:22-cv-06750-CRB<br><br>**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Lead Plaintiff Mohan R. Sundaram ("Plaintiff") makes the following allegations, individually and on behalf of all others similarly situated, by and through his counsel upon information and belief except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and beliefs are based upon, *inter alia*, counsel's investigation, which included, among other things, review and analysis of regulatory filings made by Freshworks Inc. ("Freshworks" or the "Company") with the U.S. Securities and Exchange Commission ("SEC"), analyst and media reports, conference call transcripts, Company press releases, and other publicly available information. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE AND SUMMARY OF THE ACTION

1. This is a federal securities class action on behalf of all persons and entities that purchased shares of Freshworks' Class A common stock ("Freshworks common stock") pursuant or traceable to the Company's Prospectus and Registration Statement, filed with the SEC on August 27, 2021 and September 22, 2021, as amended (collectively, the "Offering Documents"), that were issued in connection with Freshworks' September 22, 2021 initial public offering (the "Offering" or "IPO"). The action asserts claims and seeks to recover damages under §§11, 12, and 15 of the Securities Act of 1933 ("Securities Act") against Defendant Freshworks; the Freshwork officers and/or directors who signed the Offering Documents (the "Individual Defendants"); and each of the 17 underwriters of the IPO (the "Underwriter Defendants"), based on their violations of the Securities Act.

2. Freshworks is a Software as a Service ("SaaS") company that offers small-, medium-, and larger-sized businesses various cloud-based marketing, sales, support, and Information Technology ("IT") solutions.

3. Founded in 2010 by Defendant Mathrubootham, Freshworks became the first India-born SaaS company to trade on the Nasdaq stock exchange, following its September 2021 IPO in which the Company raised $1.13 billion.

4. At the time of its IPO, Freshworks' strong and accelerating rate of growth was highly material to investors' and other market participants' assessment of Freshworks' business,

prospects, and share price valuation. In the Offering Documents – pursuant to which Freshworks issued 28,500,000 of its class A common shares to the public at a price of $36 per share – Freshworks stated that its "business has grown rapidly in recent periods" as its "customer base and operations have scaled," and highlighted that its year-over-year revenue growth rate in the year ended December 31, 2020 was 45%. Indeed, according to information contained in the Offering Documents, the Company's year-over-year revenue growth across all business lines had increased to 56% in the quarter ended June 30, 2021 (2Q 2021[1]) – the last full quarter prior to the IPO – reflecting a second straight quarter of *accelerating* revenue growth. No less important, investors also assessed Freshworks' "calculated billings" (or simply "billings") metric, a key non-generally accepted accounting principles ("GAAP") metric which effectively takes into account both GAAP revenue *and* the dollar value of new contracts signed (for which cash has been received but for which revenue cannot yet be recognized[2]), and which therefore provides a fuller picture of a Company's revenue potential. Based on information that could be readily calculated from other financial data that was contained in the Offering Documents, market participants were also aware that Freshworks' "calculated billings" (which simply consists of the sum of the Company's revenue and change in deferred revenue in the quarter at issue) had also accelerated to 61% (on a year-over-year basis) as of the end of 2Q 2021 (the last full quarter prior to the IPO). As shown below however, by the date of the Offering and unbeknownst to investors, Freshworks' revenue and calculated billings growth rate had already begun to rapidly decelerate.

5.     Moreover, the Offering Documents also failed to disclose that, at the time of the IPO, Freshworks was experiencing increased churn rates, particularly with its small- and medium-

---

[1]     "1Q," "2Q," "3Q," and "4Q" refers to first fiscal quarter, second fiscal quarter, third fiscal quarter, and fourth fiscal quarter, respectively.

[2]     Because GAAP requires that revenue may not be recognized until it is earned, if, for example, Freshworks receives payment of $1200 from a customer on the first day of a new one-year service contract that commences January 1, that $1200 will be reported as an increase of $1200 in cash on its balance sheet (an *asset*) – and at the same time it will also record a corresponding increase in its balance sheet of $1200 for "deferred revenue" (which is booked as a *liability* to reflect that Freshworks has not yet "earned" any of its fee under the contract, and its duty to perform reflects a liability). Thereafter, at the end of each quarter (as services to be provided under the contract are in fact provided), a service provider such as Freshworks will reduce (debit) its "deferred revenue" account by $300, as it converts a portion of what had previously been "deferred revenue" into recognized "revenue."

sized customers ("SMBs"), many of whom were month-to-month subscribers of the Company's products and services.  As a result but also unbeknownst to investors, as of the IPO, Freshworks' "net dollar retention rate" – which the Offering Documents described as a "measure[] . . . [of the Company's] ability to increase revenue across our existing customer base through expansion of users and products associated with a customer as offset by our churn and contraction in the number of users and products associated with a customer" – had also begun to decline, reversing the prior trend of five consecutive quarters of growth prior to the IPO.

6.    As a result, the Offering Documents for the IPO materially misled investors and omitted information required to be disclosed therein.  In sum, while painting a picture of ongoing and accelerating growth, and merely warning of the "risk" that these trends "might" not continue into the future, the Offering Documents failed to disclose that, as of the IPO, Freshworks was ***already*** experiencing adverse financial and operational trends in the form of ***deceleration*** (rather than continued acceleration) in its rate of revenue and calculated billings growth, as well as a decline (after five consecutive quarters of increases) in its net dollar retention rate.

7.    The charts below reflect the significant deceleration of Freshworks' revenue and calculated billings growth year-over-year after the IPO:



CONSOLIDATED AMENDED CLASS ACTION COMPLAINT – Case No. 3:22-cv-06750-CRB

1
2
3
4
5
6
7
8



Freshworks' Revenue Year-Over-Year Growth

9 8. Similarly, although Freshworks' net dollar retention rate had steadily increased

10 from 107%, to 109%, to 111%, to 112%, and to 118%, in each of the four quarters leading up to

11 the Offering (from 2Q 2020 through 3Q 2020, 4Q 2020, 1Q 2021, and 2Q 2021), as of the IPO

12 this metric was also now on a downward trajectory, as the Company would report (just six weeks

13 after the IPO) that this rate had declined to 117% as of the end of 3Q 2021, which in turn was the

14 precursor to a further decline to just 114% by the end of 4Q 2021.

15 9. Because the IPO Offering Documents were declared "effective" just **seven** business

16 days before the end of Freshworks' third quarter (3Q 2021), it would have been apparent to

17 Defendants that Freshworks' pre-IPO trend of ***accelerating*** growth rate in billings and revenue

18 had ***already reversed*** – and begun to sharply decelerate – as of the IPO's September 22, 2021

19 "effective date." Similarly, it would have been apparent that the Company's prior trend of

20 improved "net dollar retention" was now going in reverse or – at best – was flattening out.

21 Nonetheless, without disclosing any of this adverse information in the Offering Documents,

22 Defendants proceeded to consummate the IPO, selling over 28,500,000 million shares to

23 unsuspecting investors at an Offering Price of $36 per share.

24 10. After the close of the markets on November 2, 2021 – less than six weeks after the

25 IPO – Freshworks was forced to publicly disclose its financial results for the 3Q 2021. Those

26 results revealed, among other things, that (a) the rate of Freshworks' calculated billings growth

27 had suddenly and sharply ***decelerated*** (after four consecutive prior quarters of ***accelerating***

28 growth) ***from 61%*** in 2Q 2021 to ***just 41%*** in the 3Q 2021; (b) the rate of Freshworks' revenue

growth had also suddenly and sharply decelerated (after two consecutive prior quarters of strong accelerating growth), *from 56%* in 2Q 2021 to *only 46%* in the 3Q 2021; and Freshworks' net dollar retention rate had also deteriorated (after five consecutive prior quarters of increases) during that quarter. Freshworks common stock promptly fell by 14% in trading the next day.

11.    In the following weeks and months, the price of Freshworks common stock continued to tumble, with shares falling below $30 in December 2021 and further plummeting to $18.41 on February 11, 2022 (when the Company was forced to publicly disclose further deterioration in its financial performance). Within a week after Freshworks issued further disappointing financial results on May 3, 2022, Freshworks shares had fallen to just $14.07 – and as of the filing of this Amended Complaint they continue to trade in the mid-teens. By this action, Plaintiff now seeks to recover damages for himself and the Class he seeks to represent for the substantial losses he and other Class members incurred in connection with their purchase of Freshworks common stock issued in and/or traceable to the IPO.

## JURISDICTION AND VENUE

12.    The claims asserted herein arise under and pursuant to §§11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§77k, 77l(a)(2), and 77o, respectively.

13.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the Securities Act, 15 U.S.C. §77v.

14.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the acts and transactions giving rise to the violations of law complained of occurred, in part, in this District, certain Defendants reside and/or transact business in this District, and the Company maintains its corporate headquarters in this District.

15.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the U.S. mail, interstate telephone communications, and the facilities of a national securities exchange.

16.    **Divisional Assignment**: This action should be assigned to the San Francisco Division of this Court, as the Company is headquartered in San Mateo County, California, under Civil Local Rule 3-2(d).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PARTIES

### A.    Plaintiff

17.    Lead Plaintiff Mohan R. Sundaram, as set forth in his certification (ECF No. 1 at 23), purchased shares of the Company's common stock that were issued pursuant and traceable to the Registration Statement and Offering, and was damaged thereby.

### B.    Defendants

#### 1.    The Company

18.    Defendant Freshworks Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business in San Mateo, California.  Freshworks operates an SaaS platform that provides cloud-based marketing, sales, support, and IT solutions to businesses. Freshworks' stock trades on Nasdaq under the ticker symbol "FRSH."

#### 2.    The Individual Defendants

19.    Defendant Rathna Girish Mathrubootham ("Mathrubootham") is, and was at all relevant times, Chief Executive Officer and Chairman of the Freshworks' Board of Directors (the "Board").  Defendant Mathrubootham reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

20.    Defendant Tyler Sloat ("Sloat") is, and was at all relevant times, Freshworks' Chief Financial Officer.  Defendant Sloat reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

21.    Defendant Roxanne S. Austin ("Austin") is, and was at all relevant times, a director on the Board.  Defendant Austin reviewed, approved, and participated in making statements in the Offering Documents, which she signed.

22.    Defendant Johanna Flower ("Flower") is, and was at all relevant times, a director on the Board.  Defendant Flower reviewed, approved, and participated in making statements in the Offering Documents, which she signed.

23.    Defendant Sameer Gandhi ("Gandhi") is, and was at all relevant times, a director on the Board.  Defendant Gandhi reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

24.     Defendant Randy Gottfried ("Gottfried") is, and was at all relevant times, a director on the Board.  Defendant Gottfried reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

25.     Defendant Zachary Nelson ("Nelson") is, and was at all relevant times, a director on the Board.  Defendant Nelson reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

26.     Defendant Barry Padgett ("Padgett") is, and was at all relevant times, a director on the Board.  Defendant Padgett reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

27.     Defendant Jennifer Taylor ("Taylor") is, and was at all relevant times, a director on the Board.  Defendant Taylor reviewed, approved, and participated in making statements in the Offering Documents, which she signed.

28.     Defendants Mathrubootham, Sloat, Austin, Flower, Gandhi, Gottfried, Nelson, Padgett, and Taylor are collectively referred to herein as the "Individual Defendants."

29.     In addition, although not an element of Plaintiff's (or the Class's) claims (and is instead an issue on which each Individual Defendant bears the burden of proof to the extent it seeks to assert it as an affirmative defense), no Individual Defendant conducted an adequate due diligence investigation in connection with the matters alleged herein and will accordingly be unable to establish a statutory "due diligence" affirmative defense under the Securities Act.

### 3.    The Underwriter Defendants

30.     The Underwriter Defendants were also instrumental in soliciting investors and in underwriting the Freshworks shares that were offered and sold in or traceable to the IPO available to Plaintiff and the other members of the Class.

31.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents. Morgan Stanley acted as a representative of all the underwriters.  Morgan Stanley also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the

Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. Morgan Stanleys' participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 9,025,001 shares of Freshworks common stock to investors in the IPO. Defendant Morgan Stanley conducts business in this District.

32.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents. J.P. Morgan acted as a representative of all the underwriters. J.P. Morgan also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. J.P. Morgan's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 7,125,001 shares of Freshworks common stock to investors in the IPO. Defendant J.P. Morgan conducts business in this District.

33.     Defendant BofA Securities, Inc. ("BofA") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents. BofA acted as a representative of all the underwriters. BofA also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. BofA's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 4,207,144 shares of Freshworks common stock to investors in the IPO. Defendant BofA conducts business in this District.

34.     Defendant Jefferies LLC ("Jefferies") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents. Jefferies participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.

1   Jefferies' participation in and its solicitation of offers in connection with the IPO were motivated

2   by its financial interests, and it sold 1,628,571 shares of Freshworks common stock to investors in

3   the IPO. Defendant Jefferies conducts business in this District.

4      35. Defendant Barclays Capital Inc. ("Barclays") was an underwriter of the Company's

5   IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the

6   Company's materially misleading and incomplete Offering Documents. Barclays participated in

7   conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual

8   Defendants who participated in the roadshow, including lodging and travel, among other expenses.

9   Barclays' participation in and its solicitation of offers in connection with the IPO were motivated

10  by its financial interests, and it sold 1,628,571 shares of Freshworks common stock to investors in

11  the IPO. Defendant Barclays conducts business in this District.

12     36. Defendant Robert W. Baird & Co. Incorporated ("Baird") was an underwriter of

13  the Company's IPO, serving as a financial advisor for and assisting in the preparation and

14  dissemination of the Company's materially misleading and incomplete Offering Documents.

15  Baird participated in conducting and promoting the roadshow for the IPO and paying for the

16  expenses of the Individual Defendants who participated in the roadshow, including lodging and

17  travel, among other expenses. Baird's participation in and its solicitation of offers in connection

18  with the IPO were motivated by its financial interests, and it sold 542,857 shares of Freshworks

19  common stock to investors in the IPO. Defendant Baird conducts business in this District.

20     37. Defendant Canaccord Genuity LLC ("Canaccord Genuity") was an underwriter of

21  the Company's IPO, serving as a financial advisor for and assisting in the preparation and

22  dissemination of the Company's materially misleading and incomplete Offering Documents.

23  Canaccord Genuity participated in conducting and promoting the roadshow for the IPO and paying

24  for the expenses of the Individual Defendants who participated in the roadshow, including lodging

25  and travel, among other expenses. Canaccord Genuity's participation in and its solicitation of

26  offers in connection with the IPO were motivated by its financial interests, and it sold 542,857

27  shares of Freshworks common stock to investors in the IPO. Defendant Canaccord Genuity

28  conducts business in this District.

1    38.    Defendant JMP Securities LLC ("JMP") was an underwriter of the Company's IPO,

2   serving as a financial advisor for and assisting in the preparation and dissemination of the

3   Company's materially misleading and incomplete Offering Documents.  JMP participated in

4   conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual

5   Defendants who participated in the roadshow, including lodging and travel, among other expenses.

6   JMP's participation in and its solicitation of offers in connection with the IPO were motivated by

7   its financial interests, and it sold 542,857 shares of Freshworks common stock in the IPO.

8   Defendant JMP conducts business in this District.

9    39.    Defendant Needham & Company, LLC ("Needham") was an underwriter of the

10   Company's IPO, serving as a financial advisor for and assisting in the preparation and

11   dissemination of the Company's materially misleading and incomplete Offering Documents.

12   Needham participated in conducting and promoting the roadshow for the IPO and paying for the

13   expenses of the Individual Defendants who participated in the roadshow, including lodging and

14   travel, among other expenses.  Needham's participation in and its solicitation of offers in

15   connection with the IPO were motivated by its financial interests, and it sold 542,857 shares of

16   Freshworks common stock to investors in the IPO.  Defendant Needham conducts business in this

17   District.

18    40.    Defendant Nomura Securities International, Inc. ("Nomura") was an underwriter of

19   the Company's IPO, serving as a financial advisor for and assisting in the preparation and

20   dissemination of the Company's materially misleading and incomplete Offering Documents.

21   Nomura participated in conducting and promoting the roadshow for the IPO and paying for the

22   expenses of the Individual Defendants who participated in the roadshow, including lodging and

23   travel, among other expenses.  Nomura's participation in and its solicitation of offers in connection

24   with the IPO were motivated by its financial interests, and it sold 542,857 shares of Freshworks

25   common stock to investors in the IPO.  Defendant Nomura conducts business in this District.

26    41.    Defendant Oppenheimer & Co. Inc. ("Oppenheimer") was an underwriter of the

27   Company's IPO, serving as a financial advisor for and assisting in the preparation and

28   dissemination of the Company's materially misleading and incomplete Offering Documents.

Oppenheimer participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. Oppenheimer's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 542,857 shares of Freshworks common stock to investors in the IPO. Defendant Oppenheimer conducts business in this District.

42. Defendant Piper Sandler & Co. ("Piper Sandler") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents. Piper Sandler participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. Piper Sandler's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 542,857 shares of Freshworks common stock to investors in the IPO. Defendant Piper Sandler conducts business in this District.

43. Defendant Raymond James & Associates, Inc. ("Raymond James") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents. Raymond James participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. Raymond James' participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 542,857 shares of Freshworks common stock to investors in the IPO. Defendant Raymond James conducts business in this District.

44. Defendant Amerivet Securities, Inc. ("Amerivet") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents. Amerivet participated in conducting and promoting the roadshow for the IPO and paying for the

1  expenses of the Individual Defendants who participated in the roadshow, including lodging and

2  travel, among other expenses.  Amerivet's participation in and its solicitation of offers in

3  connection with the IPO were motivated by its financial interests, and it sold 135,714 shares of

4  Freshworks common stock to investors in the IPO.  Defendant Amerivet conducts business in this

5  District.

6        45.    Defendant CastleOak Securities, L.P. ("CastleOak") was an underwriter of the

7  Company's IPO, serving as a financial advisor for and assisting in the preparation and

8  dissemination of the Company's materially misleading and incomplete Offering Documents.

9  CastleOak participated in conducting and promoting the roadshow for the IPO and paying for the

10 expenses of the Individual Defendants who participated in the roadshow, including lodging and

11 travel, among other expenses.  CastleOak's participation in and its solicitation of offers in

12 connection with the IPO were motivated by its financial interests, and it sold 135,714 shares of

13 Freshworks common stock to investors in the IPO.  Defendant CastleOak conducts business in this

14 District.

15       46.    Defendant Samuel A. Ramirez & Company, Inc. ("Ramirez") was an underwriter

16 of the Company's IPO, serving as a financial advisor for and assisting in the preparation and

17 dissemination of the Company's materially misleading and incomplete Offering Documents.

18 Ramirez participated in conducting and promoting the roadshow for the IPO and paying for the

19 expenses of the Individual Defendants who participated in the roadshow, including lodging and

20 travel, among other expenses.  Ramirez's participation in and its solicitation of offers in connection

21 with the IPO were motivated by its financial interests, and it sold 135,714 shares of Freshworks

22 common stock to investors in the IPO.  Defendant Ramirez conducts business in this District.

23       47.    Defendant R. Seelaus & Co., LLC ("Seelaus") was an underwriter of the

24 Company's IPO, serving as a financial advisor for and assisting in the preparation and

25 dissemination of the Company's materially misleading and incomplete Offering Documents.

26 Seelaus participated in conducting and promoting the roadshow for the IPO and paying for the

27 expenses of the Individual Defendants who participated in the roadshow, including lodging and

28 travel, among other expenses.  Seelaus' participation in and its solicitation of offers in connection

1  with the IPO were motivated by its financial interests, and it sold 135,714 shares of Freshworks

2  common stock to investors in the IPO.  Defendant Seelaus conducts business in this District.

3      48.    The Defendants listed in ¶¶31-47 are collectively referred to herein as the

4  "Underwriter Defendants."  Pursuant to the Securities Act, each Underwriter Defendant is liable

5  for the materially inaccurate, misleading, and incomplete statements in the Offering Documents.

6  In addition, although not an element of Plaintiff's (or the Class's) claims (and is instead an issue

7  on which each Underwriter Defendant bears the burden of proof to the extent it seeks to assert it

8  as an affirmative defense), no Underwriter Defendant conducted an adequate due diligence

9  investigation in connection with the matters alleged herein and will accordingly be unable to

10  establish a statutory "due diligence" affirmative defense under the Securities Act.

11      49.    Each Underwriter Defendant named herein is an investment banking firm whose

12  activities include, *inter alia*, the underwriting of public offerings of securities.  As the underwriters

13  of the IPO, the Underwriter Defendants earned $59.3 million in underwriting discounts and

14  commissions.

15      50.    As underwriters, the Underwriter Defendants met with potential investors in the

16  IPO and presented highly favorable, but materially misleading, information about the Company,

17  its business, products, plans, and financial prospects, and omitted to disclose material information

18  required to be disclosed under the federal securities laws and applicable regulations promulgated

19  thereunder.

20      51.    Representatives of the Underwriter Defendants assisted Freshworks and the

21  Individual Defendants in planning the IPO, and purported to conduct an adequate and reasonable

22  investigation into the business, operations, products, and plans of the Company, an undertaking

23  known as a "due diligence" investigation.  During the course of their "due diligence," the

24  Underwriter Defendants had continual access to confidential corporate information concerning the

25  Company's business, operations, financial condition, products, performance, and prospects.

26      52.    In addition to having access to internal corporate documents, the Underwriter

27  Defendants and/or their agents, including their counsel, had access to Freshworks' management

28  and directors to determine: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO,

1    including the price at which Freshworks' common stock would be sold; (iii) the language to be

2    used in the Offering Documents; (iv) what disclosures about Freshworks would be made in the

3    Offering Documents; and (v) what responses would be made to the SEC in connection with its

4    review of the Offering Documents.  As a result of those constant contacts and communications

5    between the Underwriter Defendants' representatives and Freshworks' management and directors,

6    the Underwriter Defendants were aware of, or at a minimum should have known of, Freshworks'

7    undisclosed but then-existing problems and deteriorating growth rates, and of the Offering

8    Document's materially misleading and incomplete statements and omissions as alleged herein.

9        53.    The Underwriter Defendants caused the Registration Statement to be filed with the

10   SEC and declared effective in connection with the IPO so that they, and the Individual Defendants,

11   could offer to sell (and did in fact sell) the Freshworks shares registered thereby to members of the

12   Class pursuant to the Offering Documents.

13                          **SUBSTANTIVE ALLEGATIONS**

14   **A.    Overview of Freshworks and Its Business Model**

15       54.    In 2010, Freshworks was founded in Chennai, India by Defendant Mathrubootham

16   and his co-founder, Shan Krishnasamy, as "Freshdesk."  At that time, its core business operation

17   was to provide user-focused cloud-based customer service software.  In 2017, the Company began

18   doing business under the name "Freshworks."  By this time, Freshworks had launched two more

19   products, "Freshservice" and "Freshsales."

20       55.    Freshworks' "Freshdesk" is cloud-based software designed for sale to businesses

21   to facilitate and improve those businesses' ability to provide customer services to their respective

22   customers.  According to the Offering Documents, Freshdesk includes a family of customer service

23   products like Freshdesk Support Desk (helping businesses to support their customers with service

24   engagement touchpoint across traditional channels like email, telephone, and self-service, as well

25   as modern channels like messaging and social media), Freshdesk Messaging (helping businesses

26   engage with customers across web, mobile, and social messaging applications with bot technology

27   that provides answers to frequently asked questions), Freshdesk Contact Center (helping

28   businesses connect customers with a system that supports complex call-flows and routing needs),

Freshdesk Customer Service (helping B2B businesses manage their customers to increase customer retention), and Freshdesk Omnichannel Suite (helping businesses provide customer service by combining the capabilities of Freshdesk Support Desk, Freshdesk Messaging, and Freshdesk Contact Center).

56.    Freshworks' "Freshservice" is a cloud-based information technology service management (ITSM) solution that helps businesses manage their IT functions, service catalog, users, assets, and incidents.  For example, while Fresh*desk* helps businesses serve their outside customers (including through various electronic and/or internet-based channels), Fresh*service* provides IT services to businesses to help those businesses' own in-house personnel deal with IT issues and problems.  Freshservice also purportedly enables a business's non-IT departments to leverage capabilities like service request catalogs, workflow automation and orchestration, and reporting to deliver services and improve employee satisfaction.

57.    Freshworks' "Freshsales" is a cloud-based Customer Relationship Management (CRM) solution intended to help businesses manage their sales (and any related sales cycle processes) with those businesses' existing and/or potential customers.  According to the Offering Documents, Freshsales' features include sales lead tracking, dashboards to provide real-time reporting on sales metrics, and sales forecasting tools.  Businesses can also use Freshsales to send personalized bulk marketing emails, and then monitor activities relating to those emails.

58.    On September 21, 2021, Defendants commenced Freshworks' IPO, with the Company issuing 28,500,000 shares of Freshwork common stock that were sold to the investing public at $36.00 per share, all pursuant to the Offering Documents, and with the Company raising gross proceeds of $1.13 billion ($66.3 million net of underwriting discounts and commissions and Offering expenses).  Freshworks also granted the Underwriter Defendants a "greenshoe option," which, in this case, gave the Underwriter Defendants an option to sell an additional 2,850,000 million shares pursuant to the Offering Documents.

59.    According to the Offering Documents, Freshworks' divides its own customers into three main categories: (1) SMBs, which employ 250 or fewer employees; (2) Mid-Market Businesses, which employ 251 to 5,000 employees; and (3) Enterprise businesses ("Enterprises"),

which employ 5,001 or more employees.  As of December 31, 2020, approximately 80% of the Freshworks' customers were SMBs, 17% were Mid-Market Businesses; and 3% were Enterprises.[3]

**B.    The Offering Documents Paint a Misleading Picture of Ongoing Accelerating Growth in Freshworks' Revenue and Overall Generation of Business, When Freshworks' Growth Had Actually Begun to *Decelerate* as of the IPO**

**(1)    The Offering Documents**

60.    Freshworks' 3Q 2021 closed September 30, 2021, just seven business days after the Offering Documents were declared "effective" by the SEC as of 4:00 pm ET on September 21, 2021.

61.    The Offering Documents repeatedly emphasized data showing that Freshworks' rate of revenue growth was not only rapid, but was also ***accelerating***.  For example, the Offering Documents stated that:

> ***Our business has grown rapidly in recent periods as our customer base and operations have scaled***.  Our total revenue was $172.4 million and $249.7 million in the years ended December 31, 2019 and 2020, respectively, ***representing a year-over-year growth rate of 45%***.  Our total revenue was $110.5 million and $168.9 million in the six months ended June 30, 2020 and 2021, respectively, ***representing a year-over-year growth rate of 53%***.

[Emphasis added.]

62.    Similarly, the Offering Documents provided various financial data, including the chart below, from which it could be readily determined that Freshworks' year-over-year revenue had experienced strong and accelerating growth for the two consecutive quarters immediately preceding the IPO, with revenue growth accelerating from ***44%*** in the quarter ended December 31, 2020, to ***49%*** in the quarter ended March 31, 2021, and to ***56%*** in the quarter ended June 30, 2021:

---

[3]    According to the Offering Documents, as of December 31, 2020, Freshworks had a total of 48,500 customers, consisting of approximately 38,700 SMB customers, 8,300 mid-market customers, and 1,500 enterprise customers.

**Consolidated Statements of Operations Data**

| | Three Months Ended | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Mar 31, 2019 | Jun 30, 2019 | Sept 30, 2019 | Dec 31, 2019 | Mar 31, 2020[1] | Jun 30, 2020 | Sept 30, 2020 | Dec 31, 2020 | Mar 31, 2021 | Jun 30, 2021 |
| | | | | | (in thousands) | | | | | |
| Revenue | $ 36,833 | $ 39,144 | $ 45,731 | $ 50,669 | $ 53,996 | $ 56,475 | $ 66,187 | $ 73,001 | $ 80,587 | $ 88,341 |
| Cost of revenue[1] | 7,670 | 8,828 | 9,488 | 10,476 | 12,134 | 11,723 | 13,163 | 15,472 | 16,693 | 18,703 |
| Gross profit | 29,163 | 30,316 | 36,243 | 40,193 | 41,862 | 44,752 | 53,024 | 57,529 | 63,894 | 69,638 |
| Operating expenses: | | | | | | | | | | |
| Research and development[1] | 7,535 | 9,240 | 10,371 | 11,413 | 27,545 | 12,268 | 13,249 | 16,148 | 15,395 | 18,895 |
| Sales and marketing[1] | 21,784 | 29,494 | 30,985 | 28,852 | 30,585 | 30,599 | 34,164 | 37,929 | 42,508 | 48,862 |
| General and administrative[1] | 2,951 | 4,456 | 4,363 | 4,141 | 32,368 | 6,027 | 5,558 | 6,839 | 7,706 | 8,320 |
| Total operating expenses | 32,270 | 43,190 | 45,719 | 44,406 | 90,498 | 48,894 | 52,971 | 60,916 | 65,609 | 76,077 |
| (Loss) income from operations | (3,107) | (12,874) | (9,476) | (4,213) | (48,636) | (4,142) | 53 | (3,387) | (1,715) | (6,439) |
| Interest and other income (expense), net | 1,402 | 1,401 | (1,202) | 579 | (1,330) | 953 | 1,239 | 1,971 | 373 | 132 |
| (Loss) income before income taxes | (1,705) | (11,473) | (10,678) | (3,634) | (49,966) | (3,189) | 1,292 | (1,416) | (1,342) | (6,307) |
| Provision for (benefit from) income taxes | 127 | 1,378 | 1,495 | 635 | 3,759 | 232 | (95) | 119 | 1,073 | 1,122 |
| Net (loss) income | $ (1,832) | $ (12,851) | $ (12,173) | $ (4,269) | $ (53,725) | $ (3,421) | $ 1,387 | $ (1,535) | $ (2,415) | $ (7,429) |

63.     The Offering Documents also discussed that "[n]ow we generate a healthy mix of revenue from companies of all sizes" and highlighted the Company's rapidly growing annual recurring revenue ("ARR"), which was used to calculate its net dollar retention date:

> As of June 30, 2021, 13,326 of our customers contributed more than $5,000 in annual recurring revenue (ARR), as compared to 8,588, 9,187, 9,822, 10,723, 11,570, and 12,332 as of December 31, 2019, March 31, 2020, June 30, 2020, September 30, 2020, December 31, 2020, and March 31, 2021, respectively, demonstrating the broad appeal of our products to customers of all sizes and geographies. As of December 31, 2019, March 31, 2020, June 30, 2020, September 30, 2020, December 31, 2020, March 31, 2021, and June 30, 2021, customers contributing more than $5,000 in ARR represented 78%, 79%, 79%, 80%, 82%, 83%, and 84% of total ARR, respectively. We believe that the number of customers that contribute more than $5,000 in ARR is an indicator of our success in attracting, retaining, and expanding with larger businesses. As of June 30, 2021, over 50% of our ARR was from customers with more than 250 employees and we had 1,164 customers that each contributed $50,000 or more in ARR. We provide products across multiple massive markets in order to address the needs of businesses of all sizes that need to digitally transform to delight their customers and employees.

64.     The Offering Documents also portrayed its deferred revenue as experiencing significant and sustained growth, as reflected by the following chart:

**Deferred Revenue and Remaining Performance Obligations**

Deferred revenue consists of customer billings in advance of revenue being recognized from the Company's subscription and professional services arrangements. The following table summarizes the changes in the balance of deferred revenue during the periods:

| | December 31, | | June 30, | |
|---|---|---|---|---|
| | 2019 | 2020 | 2020 | 2021 |
| | (in thousands) | | (unaudited) | |
| Balance at beginning of the period | $ 39,739 | $ 67,540 | $ 67,540 | $ 104,184 |
| Add: Billings during the period | 200,178 | 286,303 | 124,087 | 195,242 |
| Less: Revenue recognized during the period | (172,377) | (249,659) | (110,471) | (168,928) |
| Balance at end of the period | $ 67,540 | $ 104,184 | $ 81,156 | $ 130,498 |

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT – Case No. 3:22-cv-06750-CRB

65.     The disclosures of (recognized) revenue and of deferred revenue in the Offering Documents allowed investors to readily determine Freshworks' "calculated billings" (which, as Defendant Sloat would note on Freshworks' first post-IPO earnings call on November 2, 2021) is simply the "sum of our revenue and change in deferred revenue in the quarter."

66.     With the information provided in the Offering Documents, investors and other market participants were able to readily determine Freshworks' year-over-year calculated billings growth for the **four consecutive quarters** prior to the IPO, as it had **rapidly increased from 31%** (for the quarter ending June 30, 2020) **to 47%, 53%, 54%, and ultimately 61%**, respectively, for the quarters ended September 30, 2020, December 31, 2020, March 31, 2021, and June 30, 2021.

67.     Similarly, the Offering Documents also touted how the Company had "grown rapidly" while simultaneously maintaining a "healthy net dollar retention rate" of 118% as of the end of the 2Q 2021.  These statements, together with the reporting of historical revenue growth (as well as the reporting of relevant revenue and deferred revenue data from which the favorable trend Company's "calculated billings" metric could be easily determined) for the periods leading up to the IPO that were provided in the Offering Documents, painted a highly rosy picture of continuing and accelerating growth trends as of the IPO.

### (2)    The Undisclosed Material Adverse Facts

68.     Unbeknownst to prospective investors, however, during the 3Q 2021, Freshworks' revenue and billing growth was decelerating, and as of the IPO it was experiencing elevated "churn" (as reflected in its declining "net dollar retention" rate, as further discussed below).  In short, as detailed below, the Offering Documents conveyed the false impression that Freshworks' rate growth was continuing to accelerate, when in fact, as of the date of the IPO, both Freshworks' revenue and billings growth were decelerating, and its churn was increasing.

69.     More specifically, in the two consecutive quarters leading up to the Offering – 1Q 2021 and 2Q 2021 – Freshworks' year-over-year revenue growth had sharply increased (from 44% in 4Q 2020) **to 49%** in 1Q 2021 and **56%** in 2Q 2021.  As would only be revealed after the IPO, however, the Company's year-over-year revenue growth rate had declined **sharply** in 3Q 2021 – the quarter which had ended just seven days after the IPO – to just 46%.  *See also* ¶7, chart, above.

70. Similarly, in the four consecutive quarters leading up to the Offering – 3Q 2020, 4Q 2020, 1Q 2021, and 2Q 2021 – Freshworks' year-over-year calculated billings growth had accelerated (from 31% in 2Q 2020) to 47%, 53%, 54%, and 61%, respectively. As was only later revealed, however for 3Q 2021 (the quarter of the IPO), the Company's year-over-year calculated billings growth was just 41% – *reflecting a nearly 33% decline compared to the immediately preceding quarter*.

71. Given, *inter alia*, the temporal proximity between the September 21, 2021 IPO effective date and the close of the 3Q 2022 just seven business days later on September 30, Freshworks' senior management would have known (and did know) that the Company's revenue and calculated billings growth was decelerating. Similarly, during the course of their "due diligence," Underwriter Defendants also had continual access to internal, confidential, and current corporate information concerning Freshworks' most up-to-date operational and financial results and prospects. As a result, Underwriter Defendants also knew of, or in the exercise of reasonable care should have known of, Freshworks' then-existing problems and deteriorating growth rates, as detailed herein.

72. Similarly, and also unbeknownst to investors, Freshworks' key "net dollar retention rate" metric had also started to *decline* as of the IPO after five consecutive prior quarters of improvement.

73. The Offering Documents describe this metric as a "measure[] . . . [of the Company's] ability to increase revenue across our existing customer base through expansion of users and products associated with a customer as offset by our churn and contraction in the number of users and products associated with a customer." The Offering Documents further described "net dollar retention rate" as one of its "Key Business Metrics."

74. As the Offering Documents explain, to calculate its net dollar retention rate as of a particular date, one first determines the Company's "'Entering ARR,'" which is the "ARR from the population of [its] customers as of 12 months *prior* to the end of the reporting period." [Emphasis added.] One then calculates the Company's "Ending ARR" from "the same set of

1    customers as of the ***end*** of the reporting period."[4]  [Emphasis added.]  To arrive at Freshworks'

2    net dollar retention rate, one then simply "divide[s] the Ending ARR by the Entering ARR."

3         75.     In the five quarters leading up to the Offering – 2Q 2020, 3Q 2020, 4Q 2020, 1Q

4    2021, and 2Q 2021 – Freshworks' net dollar retention rate was 107%, 109%, 111%, 112%, and

5    118%, respectively.  As was later revealed, for 3Q 2021, the net dollar retention rate was 117%.

6    In other words, for 3Q 2021, Freshworks was unable to execute its "land-and-expand strategy,"

7    leading to increased churn, and to deteriorating net dollar retention rates.

8                  **(1) Defendants' Actionably Misleading Statements**

9         76.     As alleged herein, each of the statements contained in the Offering Documents and

10    identified above was materially misleading and incomplete for failing to disclose that the favorable

11    trends in revenue and net dollar retention rates, and the combined changes in GAAP revenue and

12    deferred revenue – *i.e.*, in "calculated billings" – reported in the Offering Documents were no

13    longer ongoing as of the IPO, but had ***reversed***.

14         77.     Furthermore, although the Offering Documents contained "risk factors" language

15    that purported to "warn" investors of merely possible risks that might materialize ***in the future***,

16    the Offering Documents failed to apprise investors of the negative financial and operational trends

17    that Freshworks was ***already*** experiencing as of the IPO, and instead misleadingly presented these

18    so-called "risks" as merely future, contingent possibilities.  For example, the Offering Documents

19    stated that "[e]ven if our revenue continues to increase, we expect that our revenue growth rate

20    ***may decline in the future***" and that "our recent growth rates ***may*** not be indicative of our future

21    growth" – when in fact these "risks" had ***already materialized*** as of the IPO.  [Emphasis added.]

22    Similarly, the Offering Documents stated that "[o]ur quarterly results of operations, including the

23    levels of our revenue . . . ***may vary significantly in the future***," when in fact, *e.g.*, the Company's

24    revenue growth rate was already in the midst of a staggering 33% decline compared to the

25    immediately preceding quarter.  [Emphasis added.]  Indeed, the foregoing "risk warnings" were

26

27

---

28    [4]     "Ending ARR" includes "upsells" (*e.g.*, sales of new product offerings), "cross-sells" (*e.g.*, expanded sales of existing products), and "renewals" during the measurement period, and is net of any contraction or attrition over the same period.

not only inadequate, but were themselves actionably misleading for portraying as mere risk "contingencies" that had effectively already materialized as of the IPO.

    **C.    Events Subsequent to the IPO**

        **1.    November 2, 2021 Press Release and Earnings Call**

    78.    After markets closed on November 2, 2021, Freshworks issued a press release announcing its financial results for the third quarter ended September 30, 2021 – the quarter that had closed ***just six business days after*** the IPO.

    79.    The press release reported highly disappointing third quarter results, including that Freshworks had generated only $96.6 million in revenue, representing just 46% year-to-year growth, as compared to 56% year-to-year growth rate in the immediately preceding second quarter that was referenced in the Offering Documents – and also representing a sudden and sharp ***decline*** in Freshworks' revenue growth rate compared to the previous two consecutive quarters of ***accelerating*** revenue growth (from 44% in 4Q 2020, and then to 49% in 1Q 2021, to 56% in 2Q 2021).

    80.    On the earnings call later that same day, Defendant Sloat also disclosed that "[o]ur calculated billings, which is a sum of our revenue and change in deferred revenue in the quarter, was $109.3 million in Q3," representing just 41% year-over-year growth, as compared to 61% year-to-year growth rate in the immediately preceding second quarter – and representing a sudden and sharp ***decline*** in Freshworks' billings growth rate compared to the previous four consecutive quarters of ***accelerating*** billings growth (from 31% in 2Q 2020, and then to 47% in 3Q 2020, to 53% in 4Q 2020, to 54% in 1Q 2021, and to 61% in 2Q 2021).

    81.    In the press release, Defendants also disclosed that as of the end of 3Q 2021, Freshworks' net dollar retention rate had declined to 117%. This figure represented the first time in the prior five consecutive quarters that this rate had declined, as this key metric had previously and steadily increased from 107% in 2Q 2020, to 109% in 3Q 2020, to 111% in 4Q 2020, to 112% in 1Q 2021, and to 118% in 2Q 2021.

    82.    The following day, on November 3, 2021, the price of Freshworks common stock fell 14%.

**2.    February 10, 2022 Press Release, Earnings Call, and Form 10-Q**

83.    After markets closed on February 10, 2022, Freshworks issued a press release announcing its financial results for the fourth quarter ended December 31, 2021.

84.    The press release reported that Freshworks generated $105.5 million in revenue, reflecting a further slowing in the Company's revenue growth rate in the fourth quarter to just 44% year-to-year growth (compared to 46% year-over-year in 3Q 2021).

85.    The press release further reported that the Company's net dollar retention rate had declined again to just 114% (compared to 117% in 3Q 2021).

86.    The disappointing revenue and net dollar retention rate news more than outweighed the fact that Freshworks' quarterly "calculated billings" growth had temporarily improved to 45% year-over-year (compared to 41% in 3Q 2021).  As a result, Freshworks' stock declined 18% following the disclosures of February 10, 2022, closing at just $18.41 per share on February 11, 2022.

**3.    May 3, 2022 Press Release, Earnings Call, and Form 10-Q**

87.    After markets closed on May 3, 2022, Freshworks issued a press release announcing its financial results for the first quarter ended March 31, 2022.

88.    The press release reported that Freshworks generated only $114.6 million in revenue, and revealed a further slowing of the Company's revenue growth rate in the first quarter to just 42% (compared to 44% in 4Q 2021, and 46% in 3Q 2021).

89.    On the earnings call with analysts held later that day, Defendant Sloat disclosed that the Company's quarterly calculated billings growth rate had also fallen again, to just 32% year-over-year (compared to 45% in 4Q 2021, and 41% in 3Q 2021).

90.    The negative news that Freshworks' revenue growth rate had now decelerated for three consecutive quarters, and that its calculated billings growth rate had fallen to its *lowest level in nearly two years* (since its 31% reported growth rate in 2Q *2020*), significantly outweighed the news that the Company's net dollar retention rate had improved.

91.    Markets again responded negatively.  On Thursday, May 5, 2022 Freshworks common stock closed at $15.99 per share, reflecting a two-day decline of approximately 5.72%

1    from its closing price of $16.96 on May 3 – and by the following Monday (May 9, 2022),

2    Freshworks shares closed at a new low of just $14.07.

3        92.    Since early May of 2022, the price of Freshworks common stock has continued to

4    languish, and as of 11:00 am ET on April 14, 2023 (the day of the filing of this Amended

5    Complaint) trades for less than $14.00.

6    **D.    The Offering Documents Failed to Adequately Disclose Material Events,**
7    **Uncertainties, and Risks in Violation of SEC Regulations**

8        93.    The failure of the Offering Documents to disclose the material adverse information

9    identified in ¶¶78-92 also violated Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303 ("Item

10   303").  Specifically, Item 303 provides, in pertinent part, that the Management Discussion and

11   Analysis section of any offering materials filed with the SEC must disclose

12
13       any known trends or uncertainties that have had or that are reasonably likely to have
         a material favorable or unfavorable impact on net sales or revenues or income from
14       continuing operations.  If the registrant knows of events that are reasonably likely
         to cause a material change in the relationship between costs and revenues (such as
15       known or reasonably likely future increases in costs of labor or materials or price
         increases or inventory adjustments), the change in the relationship must be
16       disclosed.

17       94.    As of the IPO and the issuance of the Offering Documents, Defendants were aware,

18   but did not disclose, that Freshworks' revenue and calculated billing was decelerating

19   significantly.  The undisclosed negative events, trends, and uncertainties referenced in ¶¶78-92

20   each represented known trends or uncertainties that were reasonably expected to have a material

21   unfavorable impact on the Company's business, sales, revenues, and/or income from continuing

22   operations, and, therefore, were required to be (but were not) disclosed in the Offering Documents.

23       95.    The failure of the Offering Documents to disclose material adverse information also

24   violated Item 105 of SEC Regulation S-K, 17 C.F.R. §229.105 ("Item 105").  Specifically, Item

25   503 provides, in pertinent part, that the "Risk Factors" section of offering documents filed with

26   the SEC discuss the most significant factors that make an offering risky or speculative, and that

27   each risk factor adequately describes the risk.

28

96.     Indeed, as alleged above, the Offering Documents' discussion of risk factors was itself materially misleading because it provided generic statements of potential or contingent risk, yet failed to disclose that the potential future adverse impacts described were *already* occurring at the time of the IPO.  For example, the Offering Documents noted that Freshworks' "revenue growth rate *may* decline in the future," but failed to disclose that it already was falling sharply. Indeed, the Offering Documents failed to make *any* mention of slowing revenue growth as required by SEC rules and regulations.   Under Item 105, Defendants were required in the Offering Documents to disclose the known risks and likely impacts of this significant slowdown.

97.     In addition, by affirmatively raising these topics, Defendants assumed a duty to be complete and truthful about such topics.  Defendants violated that duty by failing to disclose the material information described therein.

## CLASS ACTION ALLEGATIONS

98.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

99.     Plaintiff brings this action as a class action, pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a class consisting of all persons and entities that purchased, or otherwise acquired, Freshworks common stock issued pursuant or traceable to the Company's IPO.

100.     Excluded from the Class are: (i) Defendants; (ii) present or former executive officers of Freshworks, members of the Freshworks' Board, and members of their immediate families (as defined in 17 C.F.R. §229.404, Instructions (1)(a)(iii) and (1)(b)(ii)); (iii) any of the foregoing persons' legal representatives, heirs, successors, or assigns; and (iv) any entities in which Defendants have or had a controlling interest, or any affiliate of Freshworks.

101.     The members of the Class are so numerous that joinder of all members is impracticable.  The Company's common stock was actively traded on the Nasdaq, a national securities exchange.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the Class.  Record owners and other members of the Class

1     may be identified from records maintained by Freshworks or its transfer agent and may be notified

2     of the pendency of this action by mail, using a form of notice similar to that customarily used in

3     securities class actions.

4         102.     Plaintiff's claims are typical of the claims of Class members, who were all similarly

5     affected by Defendants' wrongful conduct in violation of the federal securities laws.  Further,

6     Plaintiff will fairly and adequately protect the interests of Class members and has retained counsel

7     competent and experienced in class and securities litigation.

8         103.     Common questions of law and fact exist as to all members of the Class and

9     predominate over any questions solely affecting individual members of the Class.  Among the

10     questions of law and fact common to the members of the Class are:

11            (a)     whether Defendants violated the Securities Act;

12            (b)     whether statements made in the Offering Documents were materially

13                 incomplete or otherwise in violation of applicable SEC regulations;

14            (c)     whether statements made in the Offering Documents omitted material facts

15                 necessary in order to make the statements made, in light of the

16                 circumstances under which they were made, not misleading; and

17            (d)     the extent of damage sustained by Class members and the appropriate

18                 measure of damages.

19         104.     A class action is superior to all other available methods for the fair and efficient

20     adjudication of this controversy, since joinder of all members is impracticable.  Further, as the

21     damages suffered by individual Class members may be relatively small, the expense and burden

22     of individual litigation make it impossible for Class members to individually redress the wrongs

23     done to them.  There will be no difficulty in the management of this action as a class action.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CLAIM ONE

### For Violations of §11 of the Securities Act
### (Against All Defendants)

105.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

106.    This claim is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.  This is a non-fraud cause of action.  Plaintiff does not assert that any Defendant committed intentional or reckless misconduct or that Defendants acted with scienter or fraudulent intent.

107.    The Offering Documents were materially misleading and incomplete, and omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

108.    The Company is the registrant of the Freshworks common stock purchased by Plaintiff and the proposed Class.  As such, the Company is strictly liable for the materially misleading statements contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate.  By virtue of the Offering Documents containing material misrepresentations and omissions of material fact necessary to make the statements therein not false and misleading, Freshworks is liable under §11 of the Securities Act to Plaintiff and the Class.

109.    The Individual Defendants each signed the Offering Documents and caused their issuance.  As such, each is strictly liable for the materially inaccurate statements contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate, unless he or she is able to carry his or her burden of establishing an affirmative "due diligence" defense. The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Offering Documents and ensure that they were true and accurate, there were no omissions of material facts that would make the Offering Documents misleading, and the documents contained all facts required to be stated therein.  In the exercise of reasonable care, the Individual Defendants should have known of the materially misleading statements and omissions contained in the Offering Documents and also

should have known of the omissions of material fact necessary to make the statements made therein not misleading. Accordingly, the Individual Defendants are liable to Plaintiff and the Class.

110. The Underwriter Defendants each served as underwriters in connection with the IPO. As such, each is strictly liable for the materially misleading and incomplete statements contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate, unless it is able to carry its burden of establishing an affirmative "due diligence" defense. The Underwriter Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Offering Documents. They had a duty to ensure that such statements were true and accurate, that there were no omissions of material facts that would make the Offering Documents misleading, and that the documents contained all facts required to be stated therein. In the exercise of reasonable care, the Underwriter Defendants should have known of the materially misleading statements and omissions contained in the Offering Documents and also should have known of the omissions of material facts necessary to make the statements made therein not misleading. Accordingly, each of the Underwriter Defendants is liable to Plaintiff and the Class.

111. Defendants acted negligently in preparing the Offering Documents. None of the Defendants named in this Claim made a reasonable investigation or possess reasonable grounds for the belief that the statements contained in the Offering Documents were without omission of any material facts and were not materially misleading. In alleging the foregoing, Plaintiff specifically disclaims any allegation of fraud.

112. By reasons of the conduct herein alleged, each Defendant named in this claim violated §11 of the Securities Act.

113. None of the untrue statements or omissions of material fact in the Offering Documents alleged herein was a forward-looking statement. Rather, each such statement concerned existing facts. Moreover, the Offering Documents did not properly identify any of the materially misleading statements as forward-looking statements and did not disclose information that undermined the putative validity of these statements.

114.    Plaintiff acquired the Company's securities pursuant or traceable to the Offering Documents and without knowledge of the materially misleading statements and/or omissions alleged herein.  Plaintiff sustained damages, and the price of the Company's shares declined substantially due to materially misleading and incomplete Offering Documents.

115.    This Claim is brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the Offering.

116.    By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under §11, as measured by the provisions of §11(e), from the Defendants and each of them, jointly and severally.

## CLAIM TWO

### For Violations of §12(a) of the Securities Act
### (Against All Defendants)

117.    Plaintiff repeats and realleges each and every allegation contained above, as if fully set forth herein.

118.    Each Defendant promoted, solicited, and sold Freshworks common stock pursuant to the Offering Documents.

119.    The Prospectus for the IPO contained materially misleading statements of fact, and concealed and failed to disclose material facts, as detailed above.  Defendants owed all members of the Class who purchased Freshworks shares pursuant or traceable to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus, to ensure that such statements were true and that there was no omission to state a material fact required to be stated, in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the materially misleading statements and omissions contained in the Prospectus, as set forth above.

120.    No member of the Class knew, nor in the exercise of reasonable diligence could have known, of the materially misleading statements and omissions contained in the Prospectus at the time he or she acquired Freshworks shares.

121.   By reason of the conduct alleged herein, Defendants violated §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2).   As a direct and proximate result of such violations, all members of the proposed Class who purchased Freshworks securities pursuant to the Prospectus sustained substantial damages in connection with their purchases of the shares.   Accordingly, all members of the Class who hold Freshworks securities that they acquired pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and to recover based on a recissionary measure of damages from Defendants sued herein, and all Class members who have sold such acquired Freshworks shares seek damages to the extent permitted by law.

## CLAIM THREE

### For Violations of §15 of the Securities Act
### (Against the Individual Defendants)

122.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

123.   This claim is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o, on behalf of the Class, against each Individual Defendant.

124.   The Individual Defendants were controlling persons of the Company within the meaning of §15 of the Securities Act.   By reason of their ownership interest in, senior management positions at, and/or directorships held at the Company, as alleged above, these Defendants invested in, individually and collectively, and had the power to influence, and exercised the same over, the Company to cause it to engage in the conduct complained of herein.   Similarly, each Individual Defendant not only controlled those subject to liability as a primary violator of §11 of the Securities Act, as alleged above, but he or she also directly participated in controlling Freshworks by having signed, or authorized the signing of, the Registration Statement and authorizing the issuance and offering of Freshworks securities as alleged herein.

125.   As control persons of Freshworks, each Individual Defendant is jointly and severally liable pursuant to §15 of the Securities Act with and to the same extent as Freshworks for its violations of §11 of the Securities Act.

1

## PRAYER FOR RELIEF

2      WHEREFORE, Plaintiff, on Plaintiff's own behalf and on behalf of the Class, prays for

3   relief and judgment as follows:

4      A.      Declaring that this action is a proper class action, pursuant to Federal Rule of Civil

5   Procedure 23, certifying Plaintiff as a representative of the Class, and designating Plaintiff's

6   counsel as Class Counsel;

7      B.      Awarding Plaintiff and the other members of the Class compensatory damages;

8      C.      Awarding Plaintiff and the other members of the Class rescission on their §12(a)(2)

9   claims;

10     D.      Awarding Plaintiff and the other members of the Class pre-judgment and post-

11  judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and

12  disbursements; and

13     E.      Awarding Plaintiff and the other members of the Class such other and further relief

14  as the Court may deem just and proper.

15

## DEMAND FOR TRIAL BY JURY

16     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury

17  of all issues that may be so tried.

18  DATED:  April 14, 2023              **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

19                                       s/ *John T. Jasnoch*

20                                       John T. Jasnoch (CA 281605)
                                         Hal D. Cunningham (CA 243048)
                                         600 W. Broadway, Suite 3300
21                                       San Diego, CA 92101
                                         Tel.: (619) 233-4565
22                                       jjasnoch@scott-scott.com
                                         hcunningham@scott-scott.com
23

24

25

26

27

28

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT – Case No. 3:22-cv-06750-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
William C. Fredericks (*pro hac vice*)
Thomas L. Laughlin, IV (*pro hac vice*)
Mandeep S. Minhas (*pro hac vice*)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: (212) 233-6444
wfredericks@scott-scott.com
tlaughlin@scott-scott.com
mminhas@scott-scott.com

**THE SCHALL LAW FIRM**
Brian J. Schall
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
Facsimile: 310-388-0192
brian@schallfirm.com

*Counsel for Lead Plaintiff Mohan R. Sundaram and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2023, I caused the foregoing document to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Executed on April 14, 2023, at San Diego, California.

<div align="center" style="float:right">

*s/ John T. Jasnoch*
John T. Jasnoch (CA 281605)

</div>