COOLEY LLP
PATRICK E. GIBBS (183174) (pgibbs@cooley.com)
SHANNON M. EAGAN (212830) (seagan@cooley.com)
3175 Hanover Street
Palo Alto, California  94304-1130
Telephone:     +1 650 843 5000
Facsimile:     +1 650 849 7400

SARAH M. LIGHTDALE (slightdale@cooley.com) (*pro hac vice*)
BRIAN M. FRENCH (bfrench@cooley.com) (*pro hac vice*)
55 Hudson Yards
New York, New York  10001-2157
Telephone:     +1 212 479 6000
Facsimile:     +1 212 479 6275

Attorneys for Defendants Freshworks Inc., Rathna Girish
Mathrubootham, Tyler Sloat, Roxanne S. Austin, Johanna Flower,
Sameer Gandhi, Randy Gottfried, Zachary Nelson, Barry Padgett,
and Jennifer Taylor

[*Additional parties and counsel in the signature block below.*]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAN R. SUNDARAM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FRESHWORKS INC., RATHNA GIRISH MATHRUBOOTHAM, TYLER SLOAT, ROXANNE S. AUSTIN, JOHANNA FLOWER, SAMEER GANDHI, RANDY GOTTFRIED, ZACHARY NELSON, BARRY PADGETT, JENNIFER TAYLOR, MORGAN STANLEY & CO. LLC, J.P. MORGAN SECURITIES LLC, BOFA SECURITIES, INC., JEFFERIES LLC, BARCLAYS CAPITAL INC., ROBERT W. BAIRD & CO. INCORPORATED, CANACCORD GENUITY LLC, JMP SECURITIES LLC, NEEDHAM & COMPANY, LLC, NOMURA SECURITIES INTERNATIONAL, INC., OPPENHEIMER & CO. INC., PIPER SANDLER & CO., RAYMOND JAMES & ASSOCIATES, INC., AMERIVET SECURITIES, INC., CASTLEOAK SECURITIES, L.P., SAMUEL A. RAMIREZ & COMPANY, INC., and R. SEELAUS & CO., LLC,<br><br>Defendants. | Case No. 3:22-cv-06750-CRB<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>Judge:     Hon. Charles R. Breyer |

COOLEY LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

ISSUES TO BE DECIDED .............................................................................................. vi

SUMMARY OF ARGUMENT ...................................................................................... vii

BACKGROUND ............................................................................................................ 1

    A.    Freshworks' Business And Recent Growth ........................................... 1

    B.    Freshworks' September 2021 IPO And Offering Documents .............. 1

    C.    Freshworks Announces Q3 2021 Results Consistent With Its Historical Results ................................................................................................... 3

    D.    This Lawsuit .......................................................................................... 3

LEGAL STANDARD ..................................................................................................... 3

ARGUMENT .................................................................................................................. 4

I.    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTIONS 11 AND 12(a)(2) ................................................................................................... 4

    A.    Freshworks' Historical Results Were Not False Or Misleading ........... 4

    B.    Freshworks' Risk Disclosures Were Not False Or Misleading ............ 9

    C.    Freshworks' Characterizations Of Historical Results Were Not False Or Misleading ....................................................................................... 10

    D.    Freshworks Did Not Violate Item 303 ............................................... 11

    E.    Freshworks Did Not Violate Item 105 ............................................... 12

II.    PLAINTIFF LACKS STANDING TO BRING A SECTION 12(a)(2) CLAIM .............. 13

III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 15 .............................. 14

CONCLUSION ............................................................................................................. 14

COOLEY LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arfa v. Mecox Lane,*
  2012 WL 697155 (S.D.N.Y. Mar. 5, 2012) ................................................................ 5

*Berg v. Velocity Fin.,*
  2021 WL 268250 (C.D. Cal. Jan. 25, 2021) .............................................................. 13

*Blackmoss Invs. v. ACA Cap. Holdings,*
  2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) .............................................................. 11

*Brody v. Transitional Hosps.,*
  280 F.3d 997 (9th Cir. 2002) ..................................................................................... 9

*In re Century Aluminum Sec. Litig.,*
  749 F. Supp. 2d 964 (N.D. Cal. 2010) ...................................................................... 14

*City of Royal Oak Ret. Sys. v. Juniper Networks,*
  880 F. Supp. 2d 1045 (N.D. Cal. 2012) .................................................................... 10

*In re Convergent Techs. Sec. Litig.,*
  948 F.2d 507 (9th Cir. 1991) ..................................................................................... 5

*In re DDi Corp. Sec. Litig.,*
  2005 WL 8157394 (C.D. Cal. Jan. 7, 2005) .............................................................. 5

*In re Dropbox Sec. Litig.,*
  2020 WL 6161502 (N.D. Cal. Oct. 21, 2020) ........................................................ 3, 4

*In re Eargo Sec. Litig.,*
  2023 WL 1997918 (N.D. Cal. Feb. 14, 2023) ................................................ 3, 4, 9, 11

*Fadia v. FireEye,*
  2016 WL 6679806 (N.D. Cal. Nov. 14, 2016) .......................................................... 10

*Fisher v. Acuson,*
  1995 WL 261439 (N.D. Cal. Apr. 26, 1995) .............................................................. 5

*In re Focus Media Holding Litig.,*
  701 F. Supp. 2d 534 (S.D.N.Y. 2010) .................................................................... 5, 6

*In re Foundry Networks,*
  2002 WL 32354617 (N.D. Cal. June 6, 2002) ............................................................ 9

*Garnett v. RLX Tech.,*
  2022 WL 4632323 (S.D.N.Y. Sept. 30, 2022) ......................................................... 14

**TABLE OF AUTHORITIES**
continued

Page(s)

*Golubowski v. Robinhood Mkts.*,
2023 WL 1927616 (N.D. Cal. Feb. 10, 2023) .................................................................. *passim*

*In re HEXO Sec. Litig.*,
524 F. Supp. 3d 283 (S.D.N.Y. 2021) ...................................................................... 14

*Holbrook v. Trivago*,
2019 WL 948809 (S.D.N.Y. Feb. 26, 2019) ............................................................ 12

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
2018 WL 4181954 (N.D. Cal. Aug. 31, 2018) ........................................................... 4

*Jedrzejczyk v. Skillz*,
2022 WL 2441563 (N.D. Cal. July 5, 2022) ............................................................ 13

*Kapps v. Torch Offshore*,
379 F.3d 207 (5th Cir. 2004) ............................................................................... 11

*Khoja v. Orexigen Therapeutics*,
899 F.3d 988 (9th Cir. 2018) ................................................................................ 4

*In re Levi Strauss & Co. Sec. Litig.*,
527 F. Supp. 2d 965 (N.D. Cal. 2007) ................................................................... 13

*In re Limelight Networks Sec. Litig.*,
2008 WL 11339621 (D. Ariz. Aug. 8, 2008) .......................................................... 14

*Lloyd v. CVB Fin.*,
811 F.3d 1200 (9th Cir. 2016) ............................................................................... 9

*In re Lyft Sec. Litig.*,
484 F. Supp. 3d 758 (N.D. Cal. 2020) ..................................................................... 5

*Mallen v. Alphatec Holdings*,
861 F. Supp. 2d 1111 (S.D. Cal. 2012) .................................................................. 12

*Nat'l Elevator Indus. Pension Fund v. Conagra Brands*,
2022 WL 1449184 (7th Cir. May 9, 2022) ............................................................ 10

*Nguyen v. MaxPoint Interactive*,
234 F. Supp. 3d 540 (S.D.N.Y. 2017) .................................................................... 11

*In re Noah Educ. Holdings Sec. Litig.*,
2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010) .......................................................... 6

COOLEY LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
continued

**Page(s)**

*Park v. GoPro,*
    2019 WL 1231175 (N.D. Cal. Mar. 15, 2019) ........................................................................ 10

*Pearlstein v. BlackBerry,*
    93 F. Supp. 3d 233 (S.D.N.Y. 2015) ................................................................................... 11

*Pino v. Cardone Capital, LLC,*
    55 F. 4th 1253 (9th Cir. 2022) ........................................................................................... 14

*In re Pivotal Sec. Litig.,*
    2020 WL 4193384 (N.D. Cal. July 21, 2020) .......................................................... 4, 9, 13

*Primo v. Pac. Biosciences of Cal.,*
    940 F. Supp. 2d 1105 (N.D. Cal. 2013) .............................................................................. 13

*In re Progenity Sec. Litig.,*
    2023 WL 219345 (S.D. Cal. Jan. 13, 2023) ....................................................................... 12

*Rieckborn v. Jefferies LLC,*
    81 F. Supp. 3d 902 (N.D. Cal. 2015) ................................................................................. 13

*In re Rigel Pharms. Sec. Litig.,*
    697 F.3d 869 (9th Cir. 2012) .............................................................................................. 14

*In re Splash Tech. Holdings Sec. Litig.,*
    160 F. Supp. 2d 1059 (N.D. Cal. 2001) ........................................................................ 5, 10

*Steckman v. Hart Brewing,*
    1996 WL 881659 (S.D. Cal. Dec. 24, 1996) ............................................................. 6, 8, 11

*In re Sunrise Techs. Sec. Litig.,*
    1992 WL 359636 (N.D. Cal. Sept. 22, 1992) ...................................................................... 5

*In re Talis Biomedical Sec. Litig.,*
    2022 WL 17551984 (N.D. Cal. Dec. 9, 2022) ............................................................. 12, 13

*Terenzini v. GoodRx Holdings,*
    2022 WL 2189592 (C.D. Cal. June 9, 2022) ..................................................................... 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.,*
    480 F. Supp. 3d 1050 (N.D. Cal. 2020) ............................................................................... 9

*Wenger v. Lumisys,*
    2 F. Supp. 2d 1231 (N.D. Cal. 1998) ................................................................................... 4

1

## TABLE OF AUTHORITIES
### continued

2

**Page(s)**

3

*In re Yahoo! Sec. Litig.*,

4

   2012 WL 3282819 (N.D. Cal. Aug. 10, 2012) .......................................................................... 9

5

*Zeid v. Kimberley*,

   930 F. Supp. 431 (N.D. Cal. 1996) ........................................................................................ 9

6

**Statutes & Rules**

7

15 U.S.C.

8

   § 77k(a) ................................................................................................................................... 4

9

   § 77l(a)(2) ............................................................................................................................... 4

10

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 3

11

**Other Authorities**

12

17 C.F.R.

13

   § 210.3-01 ............................................................................................................................... 2

   § 229.105 ............................................................................................................................... 12

14

   § 229.303 ....................................................................................................................... 2, 11, 12

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ISSUES TO BE DECIDED**

2       1.       Whether Plaintiff's claims under Sections 11 and 12(a)(2) of the Securities Act

3   of 1933 should be dismissed given his failure to allege (i) a materially false or misleading statement,

4   or (ii) that Freshworks omitted information it had a duty to disclose.

5       2.       Whether Plaintiff's claim under Section 12(a)(2) should be dismissed given that he

6   lacks standing to bring it as an aftermarket purchaser.

7       3.       Whether Plaintiff's claim under Section 15 of the Securities Act of 1933 should be

8   dismissed given his failure to allege a primary violation of Sections 11 or 12(a)(2).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW

DEFENDANTS' MOTION TO DISMISS
3:22-CV-06750-CRB

1

## SUMMARY OF ARGUMENT

2

3

4

Many securities class actions are complicated; this one is not. It asks whether Freshworks was required to disclose its interim Q3 2021 results before the end of that quarter. Freshworks had no such obligation, so the case should be dismissed.

5

6

7

8

9

10

Freshworks went public in September 2021. The offering documents accurately reported its historical financials from 2019 through Q2 2021—showing past growth but cautioning that the "historical results [we]re not necessarily indicative of the results to be expected for any other period in the future." Six weeks later, in November 2021, Freshworks announced its Q3 2021 results. As the table below shows, Freshworks' Q3 2021 performance largely mirrored its recent historical performance:

11

12

13

14

15

|  | **Quarterly Results From Q2 2020 to Q2 2021** | **Q3 2021** |
|---|---|---|
| **Revenue** *Quarterly YoY Growth* | 44% – 56% | 46% |
| **Calculated Billings**[1] *Quarterly YoY Growth* | 31% – 61% | 41% |
| **Quarterly Net Dollar Retention Rate** | 107% – 118% | 117% |

16

But Freshworks' stock price closed lower the next day. So Plaintiff sued.

17

18

19

20

21

22

23

24

25

Plaintiff brings claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933. Plaintiff insists that Freshworks' interim Q3 2021 performance—as measured by the three metrics above—represented such a "staggering" departure from its past performance that it was required to make an early disclosure of its intraquarter results. That is every bit as wrong as it sounds. Freshworks' Q3 2021 performance was not a "staggering" departure; it generally tracked Freshworks' recent historical performance. Nothing in the offering documents was false or misleading, and no statute or regulation required Freshworks to disclose partial results for a quarter still in progress. The Court should dismiss Plaintiff's Amended Complaint (the "AC") in its entirety.

26

27

*First*, Freshworks' historical results reported in the offering documents were not false or misleading. As a matter of law, Freshworks cannot be liable for accurately reporting historical data.

28

---

[1] *See infra* note 4 (discussing Plaintiff's calculated-billings figures).

*See Golubowski v. Robinhood Mkts.*, 2023 WL 1927616, at *5 (N.D. Cal. Feb. 10, 2023) ("A company's statements are inactionable if they merely restate accurately reported historical information."). Nor did Freshworks have a duty to disclose intraquarter results, as Plaintiff does not allege interim fluctuations that were "extraordinary and indicative of larger future trends." *Id.* at *11. The historical results were even accompanied by clear warnings that recent growth rates may not be sustainable, and that churn rates had increased. Judge Chen's decision in *Robinhood* is directly on point, and the Court should reach the same result here.

*Second*, Freshworks' risk disclosures were not false or misleading. This District may not even recognize Plaintiff's theory. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 480 F. Supp. 3d 1050, 1061 (N.D. Cal. 2020) (Breyer, J.) (following the "numerous decisions from this district holding that 'cautionary statements are not actionable to the extent plaintiffs contend defendants should have stated that the adverse factors 'are' affecting financial results rather than 'may' affect financial results'" (cleaned up) (quoting *In re LeapFrog Enters. Sec. Litig.*, 527 F. Supp. 2d 1033, 1048 (N.D. Cal. 2007)). Even if it does, Plaintiff does not allege that Freshworks' risk disclosures "affirmatively create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *In re Eargo Sec. Litig.*, 2023 WL 1997918, at *12 (N.D. Cal. Feb. 14, 2023) (Breyer, J.) (quoting *Brody v. Transitional Hosps.*, 280 F.3d 997, 1006 (9th Cir. 2002)). After all, cautioning that revenue growth "may decline" is entirely consistent with later reporting that Q3 growth had continued to track historical growth.

*Third*, Freshworks' generic characterizations of historical results—*i.e.*, "grown rapidly," "healthy net dollar retention rate," "healthy mix of revenue"—were not false or misleading. Plaintiff does not even seem to disagree with them. Regardless, all three are textbook examples of inactionable corporate puffery.

*Fourth*, Freshworks did not violate Item 303 of Regulation S-K. *See* 17 C.F.R. § 229.303. Plaintiff does not allege any aspect of an Item 303 violation—not a "persistent" trend, not that declining growth was "reasonably likely" to continue and have a "material impact" moving forward, and certainly not that any Defendant knew it. *See id.*

*Fifth*, Freshworks did not violate Item 105 of Regulation S-K. *See* 17 C.F.R. § 229.105. It did exactly what Item 105 requires: disclose "the material factors that make an investment in the registrant or offering speculative or risky." *Id.* In fact, Freshworks' 41 pages of risk disclosures warned of the very possibilities that Plaintiff claims were omitted.

*Finally*, Plaintiff lacks standing to bring a Section 12(a)(2) claim because his certification confirms that he purchased in the aftermarket. *See* ECF No. 1, Schedule A (stating that Plaintiff purchased his shares the day after the IPO at $10 per share higher than the IPO price); *Primo v. Pac. Biosciences of Cal.*, 940 F. Supp. 2d 1105, 1124 (N.D. Cal. 2013) ("§ 12(a)(2) liability does not extend to aftermarket transactions."); *In re Century Aluminum Sec. Litig.*, 749 F. Supp. 2d 964, 976-77 (N.D. Cal. 2010) (dismissing Section 12(a)(2) claim where "plaintiffs' certifications of their stock purchases . . . show that none of the named plaintiffs purchased any shares on the date of the . . . offering, or at the . . . offering price").

For these reasons—and more below—the AC should be dismissed with prejudice.

1

## BACKGROUND

A.   Freshworks' Business And Recent Growth

Freshworks is a leading software-as-a-service ("SaaS") company. ¶ 2.[2] Founded in 2010, Freshworks provides modern business-software solutions to over 63,000 companies of all sizes. ¶¶ 18, 54, 59 & n.3; Ex. 1 at 1, 5-6; Ex. 2 at 5-6, 47-48, 76.[3] Freshworks' suite of software products helps businesses improve productivity and meet their marketing, sales, customer support, and IT needs. ¶¶ 2, 18.

Between 2019 and mid-2021, Freshworks saw rapid growth. Its revenue grew 45% in 2020, then 53% year-over-year ("YoY") in the first half of 2021 ("H1 2021"). ¶ 62 (screenshotting Consolidated Statements of Operations Data for Q1 2019 through Q2 2021). Plaintiff alleges that Freshworks' calculated billings (*i.e.*, the sum of revenue and change in deferred revenue for that period) grew between 31% and 61% (on a YoY basis) each quarter from Q2 2020 through Q2 2021.[4] ¶ 70. All the while, Freshworks maintained a net dollar retention rate—which measures its "ability to increase revenue across [its] existing customer base through expansion of users and products associated with a customer as offset by [its] churn and contraction in the number of users and products associated with a customer"—of between 107% and 118%. ¶¶ 5, 75.

B.   Freshworks' September 2021 IPO And Offering Documents

Freshworks went public in September 2021. ¶ 3. Its Registration Statement became effective on September 22, 2021, and it filed a Rule 424(b)(4) Prospectus (together with the Registration Statement, the "Offering Documents") that same day. ¶ 1. Pursuant to the Offering Documents, Freshworks issued 31,350,000 shares of Class A common stock at $36 per share. *See*

---

[2] "¶" refers to paragraphs of the AC. "Ex." refers to exhibits attached to the Declaration of Brian M. French ("French Declaration"), filed concurrently herewith. Unless otherwise noted, all emphasis is added, and all internal citations, quotations marks, and alterations are omitted.

[3] As explained in Defendants' concurrently filed Request for Judicial Notice and for Incorporation by Reference, each exhibit to the French Declaration is incorporated by reference in the AC and/or properly subject to judicial notice.

[4] Plaintiff concedes that these calculated billings figures were not reported in the Offering Documents, but he alleges that each figure "could be readily calculated from other financial data that was contained in the Offering Documents." ¶ 4. Although Defendants will accept that allegation as true solely for purposes of this motion, Defendants have so far been unable to replicate Plaintiff's calculations using the Offering Documents. Notably, Plaintiff never explains how he derived these figures from the Offering Documents. Defendants reserve all rights.

¶¶ 4, 58; Ex. 5 at 13, 86.

The Offering Documents accurately reported Freshworks' historical results. As required by SEC regulations, Freshworks included its audited consolidated financial statements for the previous two fiscal years (2019 and 2020), as well as its latest available unaudited quarterly financial statements (Q1 and Q2 2021). ¶ 4; Ex. 1 at F-3; *see* 17 C.F.R. §§ 229.303, 210.3-01. Freshworks also disclosed its net dollar retention rate for each quarter during that period. ¶ 75; Ex. 1 at 74.

But alongside those results, Freshworks clearly and repeatedly warned that recent growth rates may not be sustainable. As the Offering Documents explained, Freshworks' customers were most "impacted by the pandemic . . . in the second quarter of 2020," meaning that Q2 2021 YoY growth rates (*e.g.*, revenue, calculated billings) benefited from a favorable comparison to the most pandemic-impacted quarter in 2020. Ex. 1 at 71 ("The conditions caused by the pandemic adversely affected spending by new customers and renewal and retention rates of existing customers. . . . The impact of the pandemic on our results were more pronounced *in the second quarter of 2020* and then moderated during the second half of 2020."). Freshworks thus cautioned that it had "experienced rapid growth in recent periods," and that its "results for [H1] 2021 [we]re not necessarily indicative of the results to be expected for [FY] 2021 or any other period." *Id.* at 7, 13, 16, 67 (prominently disclosing this warning two sentences before the table of consolidated financial data); *see id.* at 18 ("Our quarterly results of operations, including the levels of our revenue, deferred revenue, working capital, and cash flows, may vary significantly in the future, such that period-to-period comparisons of our results of operations may not be meaningful."). It stated that it "expect[ed] that [its] revenue growth rate may decline," emphasizing that investors should "not rely on [its] revenue for any prior quarterly or annual periods as any indication of [its] future revenue or revenue growth." *Id.* at 16-17. And it disclosed that it was already experiencing "a reduction in renewal rates and increased churn rates," and that it "expect[ed] [its] net dollar retention rate to fluctuate" moving forward. *Id.* at 22, 75.

C.      Freshworks Announces Q3 2021 Results Consistent With Its Historical Results

After markets closed on November 2, 2021, Freshworks reported Q3 2021 results that largely tracked its historical results. ¶ 78; *see* Ex. 3; Ex. 4. Revenue for Q3 2021 grew 46% YoY from Q3 2020 after growing 44-56% during the prior five quarters on a YoY basis. ¶¶ 62, 79. Calculated billings grew 41% in Q3 2021 YoY from Q3 2020 after growing 31-61% YoY for the prior five quarters.[5] ¶ 80. And net dollar retention rate stayed high at 117% after ranging from 107-118% for ten quarters. Ex. 1 at 73; ¶ 81; *see* Ex. 4 at 10 (analyst remarking that net dollar retention rate "stayed elevated, very impressive 117% in the quarter").

The next day, Freshworks saw a modest stock-price decline, ¶ 82, closing at $43.06 per share, Ex. 6.[6] This was still 20% higher than the IPO price of $36 per share. ¶ 4.

D.      This Lawsuit

On November 1, 2022—exactly 364 days after Freshworks reported its Q3 2021 results[7]—Plaintiff filed an initial, placeholder complaint. ECF No. 1. Though it contained vanishingly few facts, the initial complaint alleged that Defendants (*i.e.*, Freshworks, certain of its current officers and directors, and underwriters of Freshworks' IPO) made material misstatements and omissions in Freshworks' Offering Documents, violating Sections 11, 12(a)(2), and 15 of the Securities Act of 1933. *Id.* After the Court appointed lead plaintiff and lead counsel on February 8, 2023, ECF No. 61, Plaintiff filed the AC on April 14, 2023, ECF No. 70. Like its predecessor, the AC remains light on facts and alleges essentially the same violations of Sections 11, 12(a)(2), and 15. *Id.*

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim that is facially plausible." *In re Eargo Sec. Litig.*, 2023 WL 1997918, at *12 (N.D. Cal. Feb. 14, 2023) (Breyer, J.) (citing Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[5] *See supra* note 4 (discussing Plaintiff's calculated-billings figures).

[6] The Court may take judicial notice of Freshworks' historical stock prices. *See In re Dropbox Sec. Litig.*, 2020 WL 6161502, at *5 (N.D. Cal. Oct. 21, 2020).

[7] *See generally Dropbox*, 2020 WL 6161502, at *9 ("Claims brought under the Securities Act are barred 'unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.'" (quoting 15 U.S.C. § 77m)).

(2009)). The Court "must take all of the factual allegations in the complaint as true, but it is not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* Nor must the Court credit "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 1008 (9th Cir. 2018).

To state a claim under Sections 11 and 12(a)(2), Plaintiff must allege that Freshworks' Offering Documents either (i) contained "an untrue statement of a material fact," or (ii) omitted "a material fact" necessary to make the statements therein "not misleading." 15 U.S.C. §§ 77k(a), 77*l*(a)(2). A misleading statement "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *11 (N.D. Cal. July 21, 2020) (Breyer, J.) (quoting *Brody v. Transitional Hosps.*, 280 F.3d 997, 1006 (9th Cir. 2002)). And an omission is material "when there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'" *Id.* at *10 (quoting *Basic v. Levinson*, 485 U.S. 224, 238 (1988)).

## ARGUMENT

## I.   PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTIONS 11 AND 12(a)(2)

### A.   Freshworks' Historical Results Were Not False Or Misleading

Plaintiff claims that it was misleading to accurately report Freshworks' historical results but omit that Q3 2021—the quarter in progress—was seeing mildly lower growth. ¶¶ 60-76. That theory fails for several reasons.

*First*, as a matter of law, Freshworks cannot be liable for accurately reporting historical data. *See, e.g.*, *Golubowski v. Robinhood Mkts.*, 2023 WL 1927616, at *5 (N.D. Cal. Feb. 10, 2023) ("A company's statements are inactionable if they merely restate accurately reported historical information."); *Dropbox*, 2020 WL 6161502, at *7 ("Courts in this district have repeatedly refused to find disclosure of accurate historical data misleading." (collecting cases)); *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 2018 WL 4181954, at *5 (N.D. Cal. Aug. 31, 2018) ("Plaintiff's allegations are inactionable as they merely restate accurately reported historical information." (cleaned up)); *Wenger v. Lumisys*, 2 F. Supp. 2d 1231, 1245 (N.D. Cal. 1998) ("Disclosure of

accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future."). That is true even where (unlike here) the historical data was "unrepresentative of what was actually occurring currently at the Company." *Fisher v. Acuson*, 1995 WL 261439, at *9 (N.D. Cal. Apr. 26, 1995). After all, "[s]tatements regarding past events contain no implicit prediction that those events or conditions will continue in the future." *In re Splash Tech. Holdings Sec. Litig.*, 160 F. Supp. 2d 1059, 1078 (N.D. Cal. 2001) (collecting cases); *see, e.g.*, *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991) ("[S]imply report[ing] past performance do[es] not imply any comparison between the rate of past and future growth."); *Fisher*, 1995 WL 261439, at *9 ("[A]ccurate information about the past [does not] mislead an investor into thinking that the trend would continue."); *In re Sunrise Techs. Sec. Litig.*, 1992 WL 359636, at *4 (N.D. Cal. Sept. 22, 1992) ("The law in this Circuit is that accurate historical financial reports of financial success are not actionable even though followed by periods of financial decline, because such accurate reporting does not, in and of itself, carry with it a projection of future financial success."). And that is exactly what Freshworks told investors: "Our historical results are not necessarily indicative of the results to be expected for any other period in the future, and our results for [H1] 2021 are not necessarily indicative of the results to be expected for [FY] 2021 or any other period." Ex. 1 at 13, 67.

    *Second*, Freshworks had no duty to disclose intraquarter results.

    Courts have long been "reluctant to impose liability based upon a failure to disclose financial data for a fiscal quarter in progress." *In re Lyft Sec. Litig.*, 484 F. Supp. 3d 758, 773 (N.D. Cal. 2020); *see, e.g.*, *Robinhood*, 2023 WL 1927616, at *5 ("SEC regulations give companies 45 days after the end of a quarter to report quarterly results and do not generally require the disclosure of interim quarterly results."); *Arfa v. Mecox Lane*, 2012 WL 697155, at *12 (S.D.N.Y. Mar. 5, 2012) ("Defendant had [no] obligation to disclose the results of a quarter in progress."), *aff'd*, 504 F. App'x 14 (2d Cir. 2012); *In re Focus Media Holding Litig.*, 701 F. Supp. 2d 534, 539 (S.D.N.Y. 2010) (rejecting attempt to "hold Defendants liable for [their] failure to disclose financial information about the third quarter before that quarter had concluded"); *In re DDi Corp. Sec. Litig.*, 2005 WL 8157394, at *19 n.30 (C.D. Cal. Jan. 7, 2005) (rejecting claim "that Defendants had a

duty to disclose DDi's financial condition as of February 2001, when DDi issued the Prospectus"); *Steckman v. Hart Brewing*, 1996 WL 881659, at *4 (S.D. Cal. Dec. 24, 1996) ("In short, companies have no duty to disclose intraquarter results."), *aff'd*, 143 F.3d 1293 (9th Cir. 1998). And for good reason: Courts recognize "how unworkable and potentially misleading a system of instantaneous disclosure out[side] the normal reporting periods would be." *Focus Media*, 701 F. Supp. 2d at 540. Thus, courts will not find a duty to disclose interim data absent "allegations of specific contextual information demonstrating that" intraquarter declines were both "extraordinary *and* indicative of larger future trends." *Robinhood*, 2023 WL 1927616, at *11 (rejecting duty to disclose interim results unless "the decline . . . in the two to three months before the filing of the Offering Documents w[as] extraordinary and indicative of larger future trends"); *see also In re Noah Educ. Holdings Sec. Litig.*, 2010 WL 1372709, at *7 (S.D.N.Y. Mar. 31, 2010) ("[T]he SEC's financial reporting regulations, . . . in the absence of an *extreme* deviation from past performance, do not require publicly traded companies to disclose interim financial data." (collecting cases)).

Here, far from showing extraordinary declines, the AC confirms that Freshworks' interim Q3 2021 growth was substantial and generally in line with its historical growth:

- Net dollar retention rate was 107-118% for ten quarters, including 118% for Q2 2021—then 117% for Q3 2021. Ex. 1 at 73; ¶ 8.
- Revenue grew 44-56% YoY for five quarters, including 56% for Q2 2021—then 46% YoY for Q3 2021. ¶¶ 62, 69.
- Calculated billings (a metric not even reported in the Offering Documents) grew 31-61% YoY for five quarters, including 61% in Q2 2021—then 41% YoY in Q3 2021.[8] ¶ 80.

Q3 2021 was not "extraordinary"; it was more of the same. Investors knew that Q3 2021 might see lower YoY growth than Q2 2021 did, especially after the Offering Documents warned that Q2 2021 YoY growth rates had benefited from a favorable comparison to the most pandemic-impacted quarter in 2020. Ex. 1 at 71 ("The conditions caused by the pandemic adversely affected spending by new customers and renewal and retention rates of existing customers. . . . The impact of the pandemic on our results were more pronounced *in the second quarter of 2020* and then moderated during the second half of 2020."). And Plaintiff alleges nothing—let alone "specific contextual

---

[8] *See supra* note 4 (discussing Plaintiff's calculated-billings figures).

information"—showing that interim fluctuations in Freshworks' growth rates were "indicative of larger future trends." *Robinhood*, 2023 WL 1927616, at *11.

Judge Chen's decision in *Robinhood* is directly on point. Like Freshworks, Robinhood went public partway through Q3 2021, accurately reported its historical financial results in its offering documents, and did not disclose its interim Q3 2021 results. *Id.* at *1-3. But while Freshworks continued to grow in Q3 2021, Robinhood saw substantial declines across key performance indicators (*e.g.*, 19% decline in monthly average users, $25.30 decline in average revenue per user, 35% decline in overall revenue by quarter-end). *Id.* at *3. Nevertheless, Judge Chen held that Robinhood's declines were "not so extraordinary as to mandate specific out-of-quarter disclosure" absent "contextual information that would show the declines to be unusual and indicative of larger future trends." *Id.* at *5.

If anything, this is an easier case than *Robinhood*. Robinhood's pre-IPO fluctuations were larger than Freshworks'. Robinhood's business was actually declining, while Freshworks' was still growing. And *Robinhood* at least involved *some* allegations about why those fluctuations occurred and might be expected to persist. *See id.* at *3 (discussing allegations about the effects of Robinhood's app features). This case involves no such allegations.

*Third*, Freshworks' financial results were accompanied by clear warnings that its recent growth rates may not be sustainable. For example, Freshworks cautioned that:

- "We have experienced rapid growth in recent periods, and our recent growth rates may not be indicative of our future growth. . . . Even if our revenue continues to increase, we expect that our revenue growth rate may decline in the future as a result of a variety of factors . . . . You should not rely on our revenue for any prior quarterly or annual periods as any indication of our future revenue or revenue growth." Ex. 1 at 16-17.

- "Our historical results are not necessarily indicative of the results to be expected for any other period in the future, and our results for the six months ended June 30, 2021 are not necessarily indicative of the results to be expected for the full year ending December 31, 2021 or any other period." *Id.* at 13, 67.

- "Our quarterly results may fluctuate significantly and may not meet our expectations or those of investors or securities analysts. Our quarterly results of operations, including the levels of our revenue, deferred revenue, working capital, and cash flows, may vary significantly in the future, such that period-to-period comparisons of our results of operations may not be meaningful. . . . You should not rely on our past results as an indicator of our future performance."

*Id.* at 18-19.

- "We expect our net dollar retention rate to fluctuate in future periods due to a number of factors." *Id.* at 75.

- "While we have experienced significant growth in the number of customers on our products, we do not know whether we will continue to achieve similar customer growth rates in the future. Numerous factors may impede our ability to add new customers, convert customers using our free trial versions into paying customers, expand usage within organizations, and sell subscriptions to our products." *Id.* at 20.

- "[B]ecause we believe a substantial percentage of subscriptions to our solutions are shorter than many comparable SaaS companies and because we have many variations of billing cycles, our deferred revenue may be a less meaningful indicator of our future financial results as compared to other SaaS companies." *Id.* at 21; *cf.* ¶ 4 & n.2 (focusing on the deferred-revenue-based metric of "calculated billings").

These warnings directly addressed the allegedly omitted risks (*e.g.*, lower growth, fluctuating net dollar retention) and are more than "sufficient to negate a claim of misleading omission where, as here, the recent trends of decline in some [metrics], as alleged, were not clearly remarkable." *Robinhood*, 2023 WL 1927616, at *7; *see Steckman*, 1996 WL 881659, at *4 (warning that "[p]ast growth may not continue because there can be no assurance that the significant growth in demand for craft beers will continue" sufficiently disclosed the issuer's uncertain "ability to continue its prior record of increases in sales and earnings").

*Fourth*, Freshworks squarely disclosed increased churn rates: "We have also experienced . . . increased churn rates, particularly within our small and medium-sized customers, many of whom are on month-to-month subscriptions." Ex. 1 at 22. This is—nearly verbatim—the information Plaintiff alleges was omitted. ¶ 5 ("[T]he Offering Documents also failed to disclose that . . . Freshworks was experiencing increased churn rates, particularly with its small- and medium-sized customers ('SMBs'), many of whom were month-to-month subscribers."). And the information was immaterial in any event; churn rate's only alleged relevance is to net dollar retention rate, ¶¶ 5, 68, which moved a barely perceptible 1% in Q3 2021, ¶ 8 (net dollar retention rates for Q2 and Q3 2021 were 118% and 117%, respectively).

B.   Freshworks' Risk Disclosures Were Not False Or Misleading

Next, Plaintiff alleges that Freshworks' risk disclosures were misleading for stating that revenue growth "may" decline when it already had. ¶ 77 (criticizing warnings such as "we expect that our revenue growth rate may decline in the future," and "the levels of our revenue . . . may vary significantly in the future" (alteration in original)). This gets Plaintiff nowhere.

For one thing, this District may not even recognize such a theory. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 480 F. Supp. 3d 1050, 1061 (N.D. Cal. 2020) (Breyer, J.) (following the "numerous decisions from this district holding that 'cautionary statements are not actionable to the extent plaintiffs contend defendants should have stated that the adverse factors 'are' affecting financial results rather than 'may' affect financial results'" (cleaned up) (quoting *In re LeapFrog Enters. Sec. Litig.*, 527 F. Supp. 2d 1033, 1048 (N.D. Cal. 2007); *Lloyd v. CVB Fin.*, 811 F.3d 1200, 1207 (9th Cir. 2016) ("nothing misleading" about labeling market deterioration as a "risk factor" that "could" affect future revenue "when in fact that risk had already come to fruition"); *In re Foundry Networks*, 2002 WL 32354617, at *7 (N.D. Cal. June 6, 2002) ("Plaintiffs . . . cannot state a claim based on the disclosure of risk factors."); *Zeid v. Kimberley*, 930 F. Supp. 431, 437 (N.D. Cal. 1996) ("Plaintiffs argue that Firefox should not have stated that certain adverse factors *may* [a]ffect the financial statements, but rather it should have said they *are* [a]ffecting Firefox's business. Plaintiffs' argument is absurd. Defendants' warnings regarding potential adverse factors are not actionable as a matter of law." (emphases in original)).

Even if it does, Plaintiff would need factual allegations that the risks had not only "come to fruition," *Pivotal*, 2020 WL 4193384, at *6, but to such a degree that the disclosures "create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed],'" *Eargo*, 2023 WL 1997918, at *12 (quoting *Brody*, 280 F.3d at 1006). There is no such allegation here. The AC confirms that Freshworks' Q3 2021 revenue growth largely tracked its recent historical growth—an outcome "entirely consistent" with earlier warnings that revenue growth "may decline." *Brody*, 280 F.3d at 1007; *see In re Yahoo! Sec. Litig.*, 2012 WL 3282819, at *11 (N.D. Cal. Aug. 10, 2012) (Breyer, J.) (holding that an earlier disclosure was not misleading because it did not "necessarily negate the later" disclosure), *aff'd*, 611 F. App'x 387 (9th Cir. 2015).

So Plaintiff's allegations fall short regardless.

C.     Freshworks' Characterizations Of Historical Results Were Not False Or Misleading

Plaintiff challenges three other, generic statements: (i) "Our business has *grown rapidly* in recent periods as our customer base and operations have scaled," ¶ 61; *see* ¶ 67; (ii) "We believe that the success of our business model is evidenced by our *healthy net dollar retention rate* of 118% as of June 30, 2021," Ex. 1 at 2, 93; *see* ¶ 67 (selectively quoting only the phrase "healthy net dollar retention rate"); and (iii) "Now we generate a *healthy mix of revenue* from companies of all sizes," ¶ 63. None was false or misleading.

The challenge to the first two statements—"grown rapidly" and "healthy net dollar retention rate"—is a complete non-starter. Plaintiff does not even try to show that they were false. Quite the opposite: The AC's entire theory is that Freshworks *had* "grown rapidly" and *did* have a "healthy net dollar retention rate . . . as of June 30, 2021." *See, e.g.*, ¶¶ 8, 61, 63, 66, 67. Nor could these generic descriptions be misleading, as they were accompanied by the precise historical data they described. *Id.*; *see Splash*, 160 F. Supp. 2d at 1076 ("[P]lacing adjectives on past results generally are not actionable."). At any rate, both statements are textbook examples of inactionable corporate puffery. *See, e.g.*, *Nat'l Elevator Indus. Pension Fund v. Conagra Brands*, 2022 WL 1449184, at *1 (7th Cir. May 9, 2022) (puffery to refer to "rapid growth"); *Park v. GoPro*, 2019 WL 1231175, at *10 (N.D. Cal. Mar. 15, 2019) (puffery to refer to a "healthy mix" of customers); *Fadia v. FireEye*, 2016 WL 6679806, at *7 (N.D. Cal. Nov. 14, 2016) (puffery to refer to "smooth," "rapid," or "successful" efforts); *City of Royal Oak Ret. Sys. v. Juniper Networks*, 880 F. Supp. 2d 1045, 1064 (N.D. Cal. 2012) (puffery to refer to "strong demand metrics and good momentum").

Plaintiff fares no better with the third statement—"healthy mix of revenue." ¶ 63. The AC never explains why it was false or misleading; the only related allegation is a one-sentence recital of statistics about Freshworks' mix of customers, not revenue. ¶ 59. And the statement is classic puffery to boot. *See, e.g.*, *Park*, 2019 WL 1231175, at *10 (puffery to refer to a "healthy mix" of customers).

D.      Freshworks Did Not Violate Item 303

Even if Freshworks' affirmative statements were not false or misleading, Plaintiff insists that Item 303 of Regulation S-K created an independent duty to disclose Freshworks' interim quarterly results. ¶¶ 93-94. That is incorrect.

Item 303 requires issuers to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(b)(2)(ii). An Item 303 violation therefore requires "not only knowledge of an adverse trend . . . and material impact . . . but also that the future material impacts are *reasonably likely to occur* from the present-day perspective." *Steckman*, 143 F.3d at 1297 (emphasis in original); *see Eargo*, 2023 WL 1997918, at *8. To qualify as a trend under Item 303, a pattern must "accurately reflect[] persistent conditions" of the issuer's business. *Robinhood*, 2023 WL 1927616, at *8 (quoting *In re Restoration Robotics Sec. Litig.*, 417 F. Supp. 3d 1242, 1263 (N.D. Cal. 2019)). For that reason, adverse conditions must persist for more than just a few months to constitute a trend under Item 303. *See, e.g.*, *Nguyen v. MaxPoint Interactive*, 234 F. Supp. 3d 540, 546 (S.D.N.Y. 2017) ("[E]vents occurring within a two month period of time do not establish a 'trend' for purposes of the disclos[ures] required by Item 303."); *Pearlstein v. BlackBerry*, 93 F. Supp. 3d 233, 245 (S.D.N.Y. 2015) ("The two- and five-month periods preceding defendants' public filings were insufficient to establish a reportable trend."); *Blackmoss Invs. v. ACA Cap. Holdings*, 2010 WL 148617, at *10 (S.D.N.Y. Jan. 14, 2010) ("As a matter of law, a two-month period of time does not establish a 'trend' for purposes of the disclosures required by Item 303."); *Kapps v. Torch Offshore*, 379 F.3d 207, 218 (5th Cir. 2004) (five-month "decline in natural gas prices [did not constitute] a trend").

Here, Plaintiff fails to allege an Item 303 violation for two clear reasons.

*First*, at the time of the IPO, Freshworks had seen lower growth (if at all) for two months at most. *Supra* Part I.A (Q3 2021 growth rates generally tracked historical growth rates). As a matter of law, that is not long enough to constitute a "persistent" trend under Item 303. *See, e.g.*, *Nguyen*, 234 F. Supp. 3d at 546 (two months not enough); *Pearlstein*, 93 F. Supp. 3d at 245 (five months not enough); *Blackmoss Invs.*, 2010 WL 148617, at *10 (two months not enough); *Kapps*,

1    379 F.3d at 218 (five months not enough).

2          *Second*, Plaintiff alleges no facts showing that, as of September 22, 2021, any lower growth

3    was "reasonably likely" to continue and have a "material . . . impact" moving forward—much less

4    that any Defendant knew it. *See* 17 C.F.R. § 229.303(b)(2)(ii); *see, e.g.*, *In re Talis Biomedical Sec.*

5    *Litig.*, 2022 WL 17551984, at *21 (N.D. Cal. Dec. 9, 2022) (dismissing Section 11 claims based

6    on Items 303 and 105 where plaintiffs failed to allege facts showing defendants' knowledge).

7    The AC's allegations on these points are wholly conclusory. *See* ¶ 94 ("The undisclosed negative

8    events, trends, and uncertainties referenced [above] each represented known trends or uncertainties

9    that were reasonably expected to have a material unfavorable impact."); *Mallen v. Alphatec*

10   *Holdings*, 861 F. Supp. 2d 1111, 1127 (S.D. Cal. 2012) ("[A]part from conclusory statements that

11   these delays existed, Plaintiffs fail to allege any facts to show that such delays were *known* at that

12   time or that they could *reasonably be expected to* have a *material* impact." (emphases in original)),

13   *aff'd sub nom. Fresno Cnty. Emps.' Ret. Ass'n v. Alphatec Holdings*, 607 F. App'x 694 (9th Cir.

14   2015). And how the future ultimately played out, ¶¶ 83-92, is legally irrelevant. *See, e.g.*, *Holbrook*

15   *v. Trivago*, 2019 WL 948809, at *13 (S.D.N.Y. Feb. 26, 2019) ("[T]he extent of the ultimate impact

16   . . . does not speak to what the Company knew or should have known at the time of the Offering.");

17   *Mallen*, 861 F. Supp. 2d at 1128 n.8 ("[S]ubsequent disclosure [of problems] is insufficient by itself

18   to show that those [problems] were either known or could reasonably be expected to have a material

19   impact as of [the IPO].").

20          E.    Freshworks Did Not Violate Item 105

21          Finally, Plaintiff claims that Freshworks somehow violated Item 105 of Regulation S-K.

22   ¶¶ 94-95. It did not.

23          Item 105 requires issuers to disclose risk factors—*i.e.*, "the material factors that make an

24   investment in the registrant or offering speculative or risky." 17 C.F.R. § 229.105; *see Robinhood*,

25   2023 WL 1927616, at *7. Similar to Item 303, an Item 105 violation requires "concrete knowledge"

26   of both the omitted risk and its materiality. *Terenzini v. GoodRx Holdings*, 2022 WL 2189592, at *5

27   (C.D. Cal. June 9, 2022); *see, e.g.*, *In re Progenity Sec. Litig.*, 2023 WL 219345, at *15 (S.D. Cal.

28   Jan. 13, 2023) (rejecting Item 105 theory absent allegations that defendants knew of the omitted

risk); *Berg v. Velocity Fin.*, 2021 WL 268250, at *10 (C.D. Cal. Jan. 25, 2021) (same).

Freshworks' 41 pages of risk disclosures easily meet this standard. Ex. 1 at 16-56. Among other things, Freshworks cautioned that its "recent growth rates . . . may decline in the future as a result of a variety of factors," including its inability to "attract new customers," "grow or maintain [its] net dollar retention rate," "expand usage within organizations," "sell additional subscriptions," and much more. *Id.* at 16. Freshworks even warned that it "expect[ed] that [its] revenue growth rate may decline," that it "expect[ed] [its] net dollar retention rate to fluctuate," and that it had "experienced . . . a reduction in renewal rates and increased churn rates, particularly within [its] small and medium-sized customers, many of whom are on month-to-month subscriptions." *Id.* at 16, 22, 75. These are the very possibilities that Plaintiff claims were omitted. *See, e.g.*, ¶ 5 ("[T]he Offering Documents also failed to disclose that . . . Freshworks was experiencing increased churn rates, particularly with its small- and medium-sized customers ('SMBs'), many of whom were month-to-month subscribers."); *see also Pivotal*, 2020 WL 4193384, at *8 (rejecting Item 105 theory where the issuer's "risk disclosures discuss exactly [the allegedly omitted] possibilities").

In any case, as discussed above, Plaintiff does not allege a material omitted risk or that any Defendant knew about it. *Supra* Part I.D; *see Talis Biomedical*, 2022 WL 17551984, at *21.

## II. PLAINTIFF LACKS STANDING TO BRING A SECTION 12(a)(2) CLAIM

This District has long held that Section 12(a)(2) "liability does not extend to aftermarket transactions." *Primo v. Pac. Biosciences of Cal.*, 940 F. Supp. 2d 1105, 1124 (N.D. Cal. 2013); *see, e.g.*, *Jedrzejczyk v. Skillz*, 2022 WL 2441563, at *8 (N.D. Cal. July 5, 2022) ("§ 12(a)(2) does not extend to after market transactions."); *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 925 (N.D. Cal. 2015) ("Purchasers in private or secondary market offerings do not have standing to bring actions under Section 12(a)(2)."); *In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 983 (N.D. Cal. 2007) ("The court concludes that based on *Gustafson*, § 12(a)(2) does not extend to after market transactions.").

Here, Plaintiff purchased in the aftermarket. Although he never specifies from whom he purchased his shares, Plaintiff's certification states that he purchased them the day after the IPO at $46 per share—*i.e.*, $10 per share higher than the IPO price. *See* ECF No. 1, Schedule A;

¶ 4 (alleging that Freshworks issued its shares "at a price of $36 per share"). This is sufficient to show that Plaintiff purchased in the aftermarket. *See, e.g.*, *In re Century Aluminum Sec. Litig.*, 749 F. Supp. 2d 964, 976-77 (N.D. Cal. 2010) (dismissing Section 12(a)(2) claim where "plaintiffs' certifications of their stock purchases . . . show that none of the named plaintiffs purchased any shares on the date of the . . . offering, or at the . . . offering price"); *Garnett v. RLX Tech.*, 2022 WL 4632323, at *28 (S.D.N.Y. Sept. 30, 2022) (holding that plaintiffs lacked standing under Section 12(a)(2) where their certifications stated that they did not purchase their shares at the IPO price); *In re HEXO Sec. Litig.*, 524 F. Supp. 3d 283, 304-05 (S.D.N.Y. 2021) (same); *In re Limelight Networks Sec. Litig.*, 2008 WL 11339621, at *6 (D. Ariz. Aug. 8, 2008) (dismissing Section 12(a)(2) claim where plaintiffs "failed to allege that they purchased their shares directly in the initial distribution from the underwriters on [the IPO date], or that they purchased at the offering price of $15 per share").

For this independent reason, Plaintiff's Section 12(a)(2) claim should be dismissed.[9]

## III.   PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 15

Absent a primary violation of Sections 11 or 12(a)(2), Plaintiff's Section 15 claim fails. *See In re Rigel Pharms. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012).

## CONCLUSION

For the foregoing reasons, the AC should be dismissed with prejudice.

---

[9] The Underwriter Defendants respectfully preserve their argument that the AC fails to adequately allege that they are statutory sellers under Section 12 if *Pino v. Cardone Capital, LLC*, 55 F. 4th 1253 (9th Cir. 2022)—which is subject to a pending petition for writ of certiorari—is reversed.

1
2

Dated: June 14, 2023                                    COOLEY LLP

3                                                      By:   */s/ Shannon M. Eagan*

4                                                           Patrick E. Gibbs (183174)
                                                          Shannon M. Eagan (212830)
5                                                          3175 Hanover Street
                                                          Palo Alto, California  94304-1130
6                                                          Telephone: (650) 843-5000
                                                          Facsimile: (650) 843-7400
7                                                          Email: pgibbs@cooley.com
8                                                                 seagan@cooley.com

9                                                            -and-

10                                                         Sarah M. Lightdale (*pro hac vice*)
                                                          Brian M. French (*pro hac vice*)
11                                                         55 Hudson Yards
12                                                         New York, New York 10001-2157
                                                          Telephone: (212) 479-6000
13                                                         Facsimile: (212) 479-6275
                                                          Email: slightdale@cooley.com
14                                                               bfrench@cooley.com

15                                                      *Attorneys for Defendants Freshworks Inc.,*
16                                                      *Rathna Girish Mathrubootham, Tyler Sloat,*
                                                       *Roxanne S. Austin, Johanna Flower, Sameer*
17                                                      *Gandhi, Randy Gottfried, Zachary Nelson,*
                                                       *Barry Padgett, and Jennifer Taylor*
18
19
20
21
22
23
24
25
26
27
28

1    Dated: June 14, 2023                    ORRICK, HERRINGTON & SUTCLIFFE LLP

2

3                                           By:   */s/ Alexander K. Talarides*

4                                                 Alexander K. Talarides (SBN 268068)
                                                  405 Howard Street
5                                                 San Francisco, California  94105
                                                  Telephone: (415) 773-5700
6                                                 Facsimile: (415) 773-5759
                                                  Email: atalarides@orrick.com
7
                                                  - and -
8
                                                  Darrell S. Cafasso (*pro hac vice*)
9                                                 Jennifer M. Keighley (*pro hac vice*)
                                                  51 West 52nd Street
10                                                New York, NY  10019
                                                  Telephone: (212) 506-5000
11                                                Facsimile: (212) 506-5151
                                                  Email: dcafasso@orrick.com
12                                                        jkeighley@orrick.com

13                                                *Attorneys for Underwriter Defendants*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW

DEFENDANTS' MOTION TO DISMISS
3:22-CV-06750-CRB