1    COOLEY LLP
     PATRICK E. GIBBS (183174) (pgibbs@cooley.com)
2    SHANNON M. EAGAN (212830) (seagan@cooley.com)
     3175 Hanover Street
3    Palo Alto, California  94304-1130
     Telephone:    +1 650 843 5000
4    Facsimile:    +1 650 849 7400

5    SARAH M. LIGHTDALE (slightdale@cooley.com) (*pro hac vice*)
     BRIAN M. FRENCH (bfrench@cooley.com) (*pro hac vice*)
6    55 Hudson Yards
     New York, New York  10001-2157
7    Telephone:    +1 212 479 6000
     Facsimile:    +1 212 479 6275

8

9    Attorneys for Defendants Freshworks Inc., Rathna Girish
     Mathrubootham, Tyler Sloat, Roxanne S. Austin, Johanna Flower,
10   Sameer Gandhi, Randy Gottfried, Zachary Nelson, Barry Padgett,
     and Jennifer Taylor

11   [*Additional parties and counsel in the signature block below.*]

12                    UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14

15   MOHAN R. SUNDARAM, Individually and on        Case No. 3:22-cv-06750-CRB
     Behalf of All Others Similarly Situated,
16                                                  **DEFENDANTS' REPLY IN**
                        Plaintiff,                  **SUPPORT OF THEIR MOTION TO**
17                                                  **DISMISS**
            v.
18                                                  Judge:    Hon. Charles R. Breyer
     FRESHWORKS INC., RATHNA GIRISH
19   MATHRUBOOTHAM, TYLER SLOAT,
     ROXANNE S. AUSTIN, JOHANNA FLOWER,
20   SAMEER GANDHI, RANDY GOTTFRIED,
     ZACHARY NELSON, BARRY PADGETT,
21   JENNIFER TAYLOR, MORGAN STANLEY &
     CO. LLC, J.P. MORGAN SECURITIES LLC,
22   BOFA SECURITIES, INC., JEFFERIES LLC,
     BARCLAYS CAPITAL INC., ROBERT W.
23   BAIRD & CO. INCORPORATED,
     CANACCORD GENUITY LLC, JMP
24   SECURITIES LLC, NEEDHAM & COMPANY,
     LLC, NOMURA SECURITIES
25   INTERNATIONAL, INC., OPPENHEIMER &
     CO. INC., PIPER SANDLER & CO., RAYMOND
26   JAMES & ASSOCIATES, INC., AMERIVET
     SECURITIES, INC., CASTLEOAK
27   SECURITIES, L.P., SAMUEL A. RAMIREZ &
     COMPANY, INC., and R. SEELAUS & CO.,
28   LLC,

                        Defendants.

COOLEY LLP
ATTORNEYS AT LAW

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

SUMMARY OF ARGUMENT ..................................................................................................... v

ARGUMENT ........................................................................................................................... 1

I.      PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 11 ................................. 1

    A.      Plaintiff Has Not Adequately Alleged That Freshworks' Historical Results
        Were Misleading Because He Does Not Dispute That They Were Accurate
        And Consistent With The Company's Q3 2021 Results......................................... 1

    B.      Plaintiff Has Not Adequately Alleged That Any Risk Disclosure Was
        Misleading Because There Are No Facts Showing Any Risk Had
        Materialized To Such A Degree That It Affirmatively Created An
        Impression Of A State Of Affairs That Differed Materially From The One
        That Actually Existed............................................................................................ 5

    C.      Freshworks Did Not Violate Item 303 Because Plaintiff Has Not
        Adequately Alleged An Adverse Trend................................................................. 9

    D.      Freshworks Did Not Violate Item 105 Because The Offering Documents
        Contained Robust Risk Disclosures.................................................................... 11

II.     PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 15 ............................... 12

CONCLUSION ..................................................................................................................... 12

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*In re Alphabet Sec. Litig. v. Rhode Island*,
   1 F.4th 687 ............................................................................................................. 7, 8

*In re AppHarvest Sec. Litig.*,
   2023 WL 4866233 (S.D.N.Y. July 31, 2023) ................................................. 6, 7, 10

*In re Apple Sec. Litig.*,
   2020 WL 2857397 (N.D. Cal. June 2, 2020) ........................................................ 5

*Berson v. Applied Signal Tech.*,
   527 F.3d 982 (9th Cir. 2008) ................................................................................ 5

*Bondali v. Yum! Brands*,
   620 F. App'x 483 (6th Cir. 2015) ......................................................................... 6

*Cervantes v. Countrywide Home Loans*,
   656 F.3d 1034 (9th Cir. 2011) ............................................................................. 12

*In re Coty Sec. Litig.*,
   2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) ...................................................... 7

*In re CPI Card Grp. Sec. Litig.*,
   2017 WL 4941597 (S.D.N.Y. Oct. 30, 2017) ...................................................... 11

*In re Eargo Sec. Litig.*,
   2023 WL 1997918 (N.D. Cal. Feb. 14, 2023) ................................................. 6, 8, 9

*In re Facebook IPO Sec. & Derivative Litig.*,
   986 F. Supp. 2d 524 (S.D.N.Y. 2014) ............................................................. 4, 10

*In re First Am. Fin. Corp. Sec. Litig.*,
   2022 WL 18397528 (C.D. Cal. May 11, 2022) .................................................... 6

*Flynn v. Sientra*,
   2016 WL 3360676 (C.D. Cal. June 9, 2016) ....................................................... 7

*Franchi v. SmileDirectClub*,
   633 F. Supp. 3d 1046 (M.D. Tenn. 2022) ....................................................... 4, 7, 10

*Freudenberg v. E*Trade Fin.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010). ................................................................. 5

*Gerneth v. Chiasma*,
   2018 WL 935418 (D. Mass. Feb. 15, 2018) ........................................................ 12

*Golubowski v. Robinhood Mkts.*,
    2023 WL 1927616 (N.D. Cal. Feb. 10, 2023) .................................................................. *passim*

*Greenberg v. Sunrun*,
    233 F. Supp. 3d 764 (N.D. Cal. 2017) ...................................................................... 13

*Holbrook v. Trivago*,
    2019 WL 948809 (S.D.N.Y. Feb. 26, 2019) ............................................................. 11

*Howard v. Arconic*,
    395 F. Supp. 3d 516 (W.D. Pa. 2019) ........................................................................ 9

*Kendall v. Visa U.S.A.*,
    518 F.3d 1042 (9th Cir. 2008) .................................................................................. 12

*Macomb Cnty. Emps.' Ret. Sys. v. Align Tech.*,
    39 F.4th 1092 (9th Cir. 2022) .................................................................................... 6

*Mallen v. Alphatec Holdings*,
    861 F. Supp. 2d 1111 (S.D. Cal. 2012) .................................................................... 11

*Medina v. Tremor Video*,
    640 F. App'x 45 (2d Cir. 2016) ................................................................................ 11

*Milman v. Box Sys.*,
    72 F. Supp. 2d 220 (S.D.N.Y. 1999). ...................................................................... 10

*Mingbo Cai v. Switch*,
    2019 WL 3065591 (D. Nev. July 12, 2019) ............................................................. 12

*Panther Partners v. Ikanos Commc'ns*,
    681 F.3d 114 (2d Cir. 2012) ......................................................................... 4, 11, 12

*Panther Partners v. Jianpu Tech.*,
    2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020) ......................................................... 12

*In re Pivotal Sec. Litig.*,
    2020 WL 4193384 (N.D. Cal. July 21, 2020) .......................................................... 10

*In re Progenity Sec. Litig.*,
    2021 WL 3929708 (S.D. Cal. Sept. 1, 2021) .............................................................. 8

*Reidinger v. Zendesk*,
    2020 WL 6562335 (N.D. Cal. Nov. 9, 2020) ........................................................... 13

*Steckman v. Hart Brewing*,
    143 F.3d 1293 (9th Cir. 1998) .................................................................................... 9

*In re Talis Biomedical Sec. Litig.*,
    2022 WL 17551984 (N.D. Cal. Dec. 9, 2022) ........................................................... 4

COOLEY LLP
ATTORNEYS AT LAW

iii

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
3:22-CV-06750-CRB

*Wochos v. Tesla*,
    985 F.3d 1180 (9th Cir. 2021)............................................................................................ 6, 7, 8

**Other Authorities**

17 C.F.R. § 229.105 ...................................................................................................................... 11

Cooley LLP
Attorneys at Law

## SUMMARY OF ARGUMENT

The fundamental problem with Plaintiff's case is that Freshworks' Q3 2021 results did *not* represent an "extraordinary" departure from its past performance. To the contrary, the Company's Q3 2021 financial performance was consistent with its history. This alone dispenses with the notion—underpinning every claim at issue—that Freshworks was required to disclose its interim Q3 2021 results before the end of that quarter. It had no such obligation, so the case should be dismissed.

*First*, Freshworks had no duty to disclose its interim Q3 2021 results because they were in line with its prior results. Freshworks simply did not experience changes in revenue, growth rates, or net dollar retention rates that were "extraordinary and indicative of larger future trends." *Golubowski v. Robinhood Mkts.*, 2023 WL 1927616, at *11 (N.D. Cal. Feb. 10, 2023).

Plaintiff cannot get around that problem by focusing myopically on year-over-year ("YoY") growth rates in Q2 2021 versus Q3 2021—especially when the Offering Documents *specifically warned* investors that (i) Q2 2021 YoY growth rates were anomalous due to the pandemic's pronounced impact on the Company's Q2 2020 revenue, and (ii) the Company had already experienced increased customer churn that could cause revenue to grow more slowly. And Plaintiff has no answer to Judge Chen's directly-on-point logic in *Robinhood*, which rejected efforts to frame even larger intraquarter changes as "extraordinary" and, thus, should end the matter.

*Second*, Freshworks' risk disclosures were not false or misleading. They "contain[ed] no explicit or implicit representation" about the Company's performance in the quarter then in progress. *Wochos v. Tesla*, 985 F.3d 1180, 1196 (9th Cir. 2021) (not misleading to warn that Tesla "may experience delays" when it already had); *see In re AppHarvest Sec. Litig.*, 2023 WL 4866233, at *40 (S.D.N.Y. July 31, 2023) ("Companies issue risk disclosures all the time, disclosing that certain known risks may impact their performance or operations. But not every one of these risk disclosures necessarily implies that the event which could create a risk has not occurred to any extent."). Plaintiff acknowledges that the Offering Documents disclosed an expectation that revenue growth would eventually decline. And either way, Q3 2021's consistent, continuing growth means that no risk had materialized to such a degree that Freshworks' disclosures "create[d] an

1   impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]."

2   *In re Eargo Sec. Litig.*, 2023 WL 1997918, at *12 (N.D. Cal. Feb. 14, 2023) (quoting *Brody v.*

3   *Transitional Hosps.*, 280 F.3d 997, 1006 (9th Cir. 2002)).

4       *Third*, Freshworks did not violate Item 303 of Regulation S-K. *See* 17 C.F.R. § 229.303.

5   Plaintiff does not allege any aspect of an Item 303 violation—a persistent adverse trend; that any

6   lower growth was "reasonably likely" to continue and have a "material . . . impact" moving forward;

7   or that Defendants had actual knowledge of any of it. *See Eargo*, 2023 WL 1997918, at *8;

8   *AppHarvest*, 2023 WL 4866233, at *43. And Plaintiff's main response—that Defendants must have

9   known that allegedly declining growth rates were a trend because the Offering Documents

10  disclosed that Defendants expected Freshworks' growth rates to decline—is a self-defeating

11  concession that Defendants disclosed the very information that Plaintiff claims was omitted. As for

12  Plaintiff's argument that he need only allege Defendants' knowledge under Rule 8's lower pleading

13  standard, that does not change the requirement that Plaintiff must plead *some facts* to support an

14  inference of actual knowledge of a trend. He alleges no such facts.

15      *Fourth*, Freshworks did not violate Item 105 of Regulation S-K. *See* 17 C.F.R. § 229.105.

16  It did exactly what Item 105 requires: disclose "the material factors that make an investment in the

17  registrant or offering speculative or risky." *Id.*

18      Given the nature of these defects and the fact that the Amended Complaint is virtually

19  indistinguishable from Plaintiff's initial complaint, any amendment would be futile, so the Court

20  should dismiss with prejudice.

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW

**DEFENDANTS' REPLY ISO**
**MOTION TO DISMISS**
**3:22-CV-06750-CRB**

1

2

3

4

<u>**ARGUMENT**</u>

**I.     PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 11[1]**

    **A.     Plaintiff Has Not Adequately Alleged That Freshworks' Historical Results Were Misleading Because He Does Not Dispute That They Were Accurate And Consistent With The Company's Q3 2021 Results**

5

6

7

8

9

10

      The law is clear: Companies cannot be liable for accurately reporting historical data, and they have no duty to disclose intraquarter results absent "allegations of specific contextual information demonstrating that" intraquarter changes were both "extraordinary *and* indicative of larger future trends." *Golubowski v. Robinhood Mkts.*, 2023 WL 1927616, at *5, *11 (N.D. Cal. Feb. 10, 2023); *see* MTD at 4-8 (collecting cases). These principles doom what remains of Plaintiff's case.[2]

11

12

13

14

15

      First and foremost, Plaintiff does not and cannot deny that Freshworks' Q3 2021 revenue grew from the prior quarter (in terms of absolute dollars) more than any quarter in recent past. Indeed, as the table below shows, while Q3 2021's quarter-over-quarter revenue growth rate as a percentage was immaterially smaller than in the prior three quarters, Freshworks saw its largest quarter-over-quarter revenue increase in terms of dollar amount in Q3 2021 than it had in a year:

16

17

18

19

20

| $ in millions | Q4 2020 | Q1 2021 | Q2 2021 | Q3 2021 |
|---|---|---|---|---|
| **Revenue** | $73.00 | $80.59 | $88.34 | $96.61 |
| **Quarter-over-Quarter Growth (Total)** | $6.81 | $7.59 | $7.75 | $8.27 |
| **Quarter-over-Quarter Growth (%)** | 10.3% | 10.4% | 9.6% | 9.4% |

21

22

23

And the Company's revenue growth rate as a percentage over the prior quarter was in line with its historical growth. *See* MTD at vii, 6 (comparing Q3 2021 growth to historical growth); Opp'n at 9 (not disputing that Q3 2021 growth "fell within" the range Freshworks had "experienced in the last

24

25

26

27

28

---

[1] "¶" refers to paragraphs of the Amended Complaint ("AC"). "Defendants' MTD" refers to Defendants' Motion to Dismiss. ECF No. 72. "Ex." refers to exhibits attached to the Declaration of Brian M. French. ECF No. 72-1. "Opp'n" refers to Plaintiff's Opposition to Defendants' Motion to Dismiss. ECF No. 77. Unless otherwise noted, all emphasis is added, and all internal citations, quotations marks, and alterations are omitted.

[2] Plaintiff withdraws his Section 12(a)(2) claims, conceding that he lacks standing to bring them. Opp'n at iii n.1. Plaintiff also drops his challenge to three other statements in the Offering Documents. *Id.* at 12 n.7; *see* MTD at 10. These claims should therefore be dismissed.

year or two"). Whether measured quarter-over-quarter (as above) or YoY (as in Defendants' MTD and the AC), the result is the same: Freshworks' Q3 2021 revenue *grew* overall and its Q3 2021 growth rates were in line with its historical growth.[3]

Plaintiff cannot wave that reality away by speculating that while Freshworks' Q3 2021 YoY growth rates would be unremarkable for "a mature oil company," they were somehow problematic for "an emerging growth company." Opp'n at 9. That is pure *ipse dixit*. Plaintiff does not identify *any* facts in the AC suggesting investors cared only about Freshworks' YoY growth rates continuing to rise every quarter. Nor does Plaintiff cite any authority to support his claim, because it is not the law—emerging growth companies are not held to a different standard than more established companies. Indeed, Judge Chen made no mention of such a standard in *Robinhood*, despite Robinhood's also being an emerging growth company. In any event, Plaintiff's argument is entirely untenable given how closely Freshworks' Q3 2021 growth rates tracked its historical growth.

Because Plaintiff cannot point to an "extraordinary" decline in financial metrics for Q3 2021, he proposes a narrow-minded comparison to one metric: Q2 2021 YoY growth rates. Opp'n at 8-9. But not only is that an artificially limited view of Freshworks' performance; it ignores that Q2 2021 YoY growth rates are the *exact* figures Freshworks urged investors not to rely on as indicative of future results. The Offering Documents specifically warned investors that YoY growth rates for Q2 2021 were anomalous due to the pandemic's pronounced impact on the Company's revenue in Q2 2020.[4] Ex. 1 at 85 ("Throughout 2020, the pandemic adversely affected spending trends by new and existing customers. We offered customer concessions primarily during the second and third quarters of 2020. . . . The *impact of the pandemic on our results was more*

---

[3] The same goes for calculated billings and net dollar retention. Defendants pointed out that they were unable to replicate Plaintiff's alleged calculated billings figures using the Offering Documents, even though Plaintiff claims that investors could "readily" determine them. MTD at 1 n.4. In response, Plaintiff does not explain how he calculated the figures. Instead, he merely notes that he "alleges" them. Opp'n at 2.

[4] Make the more meaningful comparison to Q4 2020 and Q1 2021 YoY growth rates, and Q3 2021 closely tracks. ¶ 79 (alleging YoY revenue growth of 44% in Q4 2020, 49% in Q1 2021, and 46% in Q3 2021); ¶ 80 (alleging YoY calculated billings growth of 53% in Q4 2020, 54% in Q1 2021, and 41% in Q3 2021); ¶ 81 (alleging net dollar retention rate of 111% in Q4 2020, 112% in Q1 2021, and 117% in Q3 2021).

*pronounced in the second quarter of 2020* and to a lesser extent during the second half of 2020."); *id*. at 71 ("The conditions caused by the pandemic adversely affected spending by new customers and renewal and retention rates of existing customers. . . . *The impact of the pandemic on our results were more pronounced in the second quarter of 2020* and then moderated during the second half of 2020."); *see also id*. at 7, 13, 16, 67 (cautioning that "results for [H1] 2021 [we]re not necessarily indicative of the results to be expected for [FY] 2021 or any other period"); MTD at 2, 5, 7-8, 13 (collecting risk disclosures). Not to mention, Plaintiff argues (where convenient) that the Offering Documents projected lower YoY revenue growth rates in Q3 2021. Opp'n at 14 ("This language [in the Offering Documents] can and should be plausibly construed as reflecting . . . that [Freshworks] expected its accelerating growth rates to 'top out'—and that thereafter management expected the Company's growth rates to then start a persistent downward decline."[5] (emphases omitted)). Thus, Plaintiff cannot credibly argue here that Freshworks *concealed* the possibility of reduced growth rates.

To make matters worse, Plaintiff offers nothing whatsoever to show that Freshworks' interim Q3 2021 performance (even viewed myopically as YoY growth rates) was "indicative of larger future trends." *See Robinhood*, 2023 WL 1927616, at *11. The AC is silent on the subject. And Plaintiff's brief contains nothing but bare *assertions* and *hindsight-based speculation*. *See* Opp'n at 9 (claiming that "undisclosed declines were a clear warning" that Freshworks' pre-IPO growth rates were already reversing); *id*. at 14 n.9 (claiming that future reduced growth

---

[5] Plaintiff makes contradictory arguments about Freshworks' risk disclosures—claiming on the one hand that they were ineffectual boilerplate, and on another that they reflect an expectation that the growth rates would decline. *Compare* Opp'n 9-11, *with id*. at 14. Either way, while some of the Company's risk disclosures may be viewed as high-level, they clearly warned investors not to draw the *exact* inference Plaintiff proposes: that recent historical results were indicative of future results. *Compare* ¶ 67 (alleging that Freshworks' reporting of historical revenue growth "painted a highly rosy picture of continuing and accelerating growth trends"), *with* ¶ 77 (alleging that Freshworks warned investors that "[e]ven if our revenue continues to increase, we expect that our revenue growth rate may decline in the future" (emphasis omitted)). And in *Robinhood*, Judge Chen concluded that similar warnings "[were] sufficient to negate a claim of misleading omission where, as here, the recent trends of decline in some KPIs, as alleged, were not clearly remarkable." 2023 WL 1927616, at *6-7 (evaluating warnings such as "[w]e may not continue to grow on pace with historical rates" and "[t]he circumstances that have accelerated the growth of our business may not continue in the future, and we expect the growth rates in revenue, MAU, AUC and Net Cumulative Funded Accounts to decline in future periods" (emphasis omitted)); *see supra* at Section I.A.; *see* MTD at 6-7.

"is meaningful corroboration" of "undisclosed adverse trends"). As a matter of law, that is not "specific contextual information" showing that Freshworks' interim Q3 2021 YoY growth rates were "indicative of larger future trends." *Robinhood*, 2023 WL 1927616, at \*11; *see In re Talis Biomedical Sec. Litig.*, 2022 WL 17551984, at \*12 (N.D. Cal. Dec. 9, 2022) ("To state a claim under Section 11, plaintiffs must show that the challenged statement was false at the time of the offering and cannot use the benefit of 20-20 hindsight to turn management's business judgment into securities fraud.").

Nor does Plaintiff have any legitimate answer to Judge Chen's decision in *Robinhood*. Unable to dispute that *Robinhood* is on point, Plaintiff resorts to a footnoted argument that "Judge Chen applied an overly demanding standard." Opp'n at 9 n.6. But Plaintiff provides no basis for that view because there is none. *Robinhood* is well-reasoned and supported by ample authority, and its logic squarely applies here.

Meanwhile, all of Plaintiff's cases are inapposite. Two involved catastrophic intraquarter developments—thus confirming that only "extraordinary" declines require intraquarter disclosure. *See Franchi v. SmileDirectClub*, 633 F. Supp. 3d 1046, 1057-58, 1069-71 (M.D. Tenn. 2022) (company went public during quarter in which its adjusted EBITDA plummeted from $6.2 million to *negative* $45.2 million, driven largely by massive legal expenses incurred as a result of pending investigations, litigation, and lobbying triggered by the company's alleged unlicensed practice of dentistry); *Panther Partners v. Ikanos Commc'ns*, 681 F.3d 114, 121 (2d Cir. 2012) (company went public during quarter in which it learned it had sold defective semiconductor chips to two major customers representing 72% of its revenues; that it may "have to accept returns of *all* of the chips"; and that the disaster "had jeopardized its relationship with clients who at that time accounted for the vast majority of its revenues" (emphasis in original)). Another—*In re Facebook IPO Securities and Derivative Litigation*—involved allegations that Facebook had significantly reduced its internal forecasts before the IPO and warned underwriters *but not* investors. 986 F. Supp. 2d 487, 500-05 (S.D.N.Y. 2013); *see also In re Facebook IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 538 (S.D.N.Y. 2014) (emphasizing, on reconsideration, that "the facts of this case are highly unique," and that "[t]he uniqueness of this case undermines [any] contention that the [motion to

dismiss decision] opens the door for issuers and underwriters to be subject to suit for not providing intra-quarter updates"). As for *In re Apple Securities Litigation*, it simply held that Apple could not trumpet sky-high iPhone upgrade rates without mentioning that it had driven those upgrade rates by "throttling" (*i.e.*, slowing down) older iPhones. 2020 WL 2857397, at *9-10 (N.D. Cal. June 2, 2020); *cf. id.* at *10 ("General descriptions of historical results have generally been found not to require disclosure of adverse factors. . . . [D]escriptions of historical performance do not represent anything about the causes of that performance or suggest that the performance will continue.").[6] Those facts stand in stark contrast to the allegations here that Freshworks' revenue was *still growing*, just not as quickly as it had in certain prior quarters when viewed on a YoY basis.

If all that were not enough, Plaintiff concedes that the Offering Documents repeatedly disclosed the allegedly omitted risks. *See* MTD at 7-8; Opp'n at 9-10. He therefore retreats to his position that Freshworks' risk disclosures "were themselves actionably misleading statements." Opp'n at 10. As discussed below, however, that is incorrect.

**B.    Plaintiff Has Not Adequately Alleged That Any Risk Disclosure Was Misleading Because There Are No Facts Showing Any Risk Had Materialized To Such A Degree That It Affirmatively Created An Impression Of A State Of Affairs That Differed Materially From The One That Actually Existed**

Plaintiff continues to insist that omitting Freshworks' interim Q3 2021 YoY revenue growth rates rendered certain risk disclosures misleading. Opp'n at 10-12; ¶ 77 (criticizing warnings such as "we expect that our revenue growth rate may decline in the future," and "the levels of our revenue . . . may vary significantly in the future" (alteration in original)). This is just a backdoor effort to impose a duty to disclose intraquarter results where none exists, and it fails.

---

[6] Plaintiff's cited cases—*Berson v. Applied Signal Technology* and *Freudenberg v. E*Trade Financial*—are also distinguishable. *See* Opp'n at 6-8. Unlike Plaintiff here, who merely alleges immaterially slowing YoY growth rates, the *Berson* plaintiff alleged that Applied Signal's revenue actually fell by 25% quarter-over-quarter due to four stop-work orders, "which halted tens of millions of dollars of work" the company had contracted to do, yet the company continued to count the stopped work as part of its backlog. 527 F.3d 982, 984-86 (9th Cir. 2008). And in *Freudenberg*, the plaintiffs alleged that E*Trade secretly changed its business model from "conservative investments in high quality loans to purchasing extremely high risk, facially low quality instruments," concealed the change by "ignor[ing] . . . SEC financial reporting and accounting rules, regulations and guidance," and the company suffered "astounding asset losses and impairments of $2.45 billion for the year." 712 F. Supp. 2d 171, 176-78 (S.D.N.Y. 2010). Plaintiff does not allege anything of the sort or magnitude here.

Most risk disclosures "contain no explicit or implicit representation that [the company] ha[s] not already experienced such issues." *Wochos v. Tesla*, 985 F.3d 1180, 1196 (9th Cir. 2021) (emphasis omitted) (not misleading to warn that Tesla "may experience delays" when it already had); *Macomb Cnty. Emps.' Ret. Sys. v. Align Tech.*, 39 F.4th 1092, 1100 (9th Cir. 2022) (risk disclosure that "[d]emand for our products may not increase as rapidly as we anticipate due to a variety of factors" did not "present[] . . . concrete assertions that could render it actually false or trigger a duty to disclose additional information"); *see Bondali v. Yum! Brands*, 620 F. App'x 483, 491 (6th Cir. 2015) ("Risk disclosures like the ones accompanying 10-Qs and other SEC filings are inherently *prospective* in nature. They warn an investor of what harms *may* come to their investment. They are not meant to educate investors on what harms are currently affecting the company." (emphases in original)). As Judge Liman in the Southern District of New York recently explained:

> Companies issue risk disclosures all the time, disclosing that certain known risks may impact their performance or operations. But not every one of these risk disclosures necessarily implies that the event which could create a risk has not occurred to any extent. A risk disclosure may just be what it purports to be—an identification by the issuer of the type of facts and events that could make the investment risky and not necessarily a representation one way or the other regarding whether the event has occurred to the extent that it presents a risk. . . . The more specific the caution, the closer it comes to an implied representation of fact and the more likely it is to mislead. General or boilerplate disclosures of future . . . risk will generally not cause a reasonable investor to believe that the company faced no current [such] risks.

*In re AppHarvest Sec. Litig.*, 2023 WL 4866233, at *40 (S.D.N.Y. July 31, 2023).

Whether a risk disclosure is misleading thus turns on its level of specificity and the degree to which the risk has manifested. *See In re Eargo Sec. Litig.*, 2023 WL 1997918, at *12 (N.D. Cal. Feb. 14, 2023) ("A misleading statement is one that 'affirmatively creates an impression of a state of affairs that differs in a material way from the one that actually exists.'" (cleaned up) (quoting *Brody v. Transitional Hosps.*, 280 F.3d 997, 1006 (9th Cir. 2002))); *In re First Am. Fin. Corp. Sec. Litig.*, 2022 WL 18397528, at *3 (C.D. Cal. May 11, 2022) (concluding "Plaintiffs failed to plausibly allege that First American's risk factor disclosures regarding data security were false and misleading because [Plaintiffs] did not adequately plead . . . that the disclosures were specific enough to misrepresent the current state of affairs"). For example, Plaintiff's cases hold that it can

be misleading for companies to note specific, severe risks without mentioning that the risks had already materialized in a major way. *See, e.g.*, *In re Alphabet Sec. Litig. v. Rhode Island*, 1 F.4th 687, 693-95, 702-05 (misleading to caution that cybersecurity breaches "may" occur when Google had already "discovered that a security glitch . . . had [exposed] the private data of some hundreds of thousands of users . . . for three years and that [it] was plagued by multiple other security vulnerabilities" that made "additional data exposures virtually inevitable"); *Franchi*, 633 F. Supp. 3d at 1058, 1075-76 (misleading to caution that SmileDirectClub "could" face regulatory and legal challenges when it was already facing "dozens of complaints . . . by state chapters of the American Association of Orthodontics," "[it] was under investigation by the Dental Board of California for engaging in the unlicensed practice of dentistry," and "legislation passed by the California Senate required fundamental changes in [its] business models"); *Flynn v. Sientra*, 2016 WL 3360676, at *3, *11 (C.D. Cal. June 9, 2016) (misleading to caution that Sientra's manufacturing facilities "may not be able to maintain compliance with regulatory requirements" when a German health regulator and an investigation by Sientra's exclusive manufacturer had already confirmed "widespread contamination" at those facilities). By contrast, courts *consistently reject* claims that risk disclosures relating to risks inherent to a business or market could mislead anyone, even when those risks had already begun to materialize to some degree. *See, e.g.*, *Wochos*, 985 F.3d at 1195 (not misleading to caution that Tesla "may experience delays" when it already had); *Lloyd*, 811 F.3d at 1207 (not misleading to caution that "the Southern California real estate market . . . 'could' affect the ability of loan customers to repay 'in the future,' when in fact that risk had already come to fruition"); *In re Coty Sec. Litig.*, 2016 WL 1271065, at *11 (S.D.N.Y. Mar. 29, 2016) ("[E]ven if it could be demonstrated that some of these events had occurred [before the registration statement became effective], Coty's highly vague and generic discussion of potential market risks could not have been misleading to a reasonable investor.").

Applying these principles, Freshworks' risk disclosures were not false or misleading for several reasons.

*First*, the challenged disclosures were too high-level to constitute "implied representation[s] of fact." *AppHarvest*, 2023 WL 4866233, at *40; *see Wochos*, 985 F.3d at 1196 (risk disclosures

"contain no explicit or implicit representation" of fact); ¶ 77 (challenging warnings such as "we expect that our revenue growth rate may decline in the future," and "the levels of our revenue . . . may vary significantly in the future" (alteration in original)). If anything, the challenged disclosures were even more related to inherent market or business-related risk than those in *Wochos* and *Lloyd*, discussed above. But the Court need not take Defendants' word for it: *Plaintiff himself* labels the warnings "quintessential boilerplate" and derides them as "about as useful as a 'warning' that a flipped coin may come up 'heads.'" Opp'n at 9-10 (stressing that "all investors understand that there are no guarantees of future performance"). Plaintiff cannot claim these warnings were useless while at the same time claiming they were specific enough to create an impression of a state of affairs that differed in a material way from the one that actually existed.

*Second*, Plaintiff affirmatively (albeit inconsistently) acknowledges that the challenged disclosures "can and should be plausibly construed" as projecting that "the Company's growth rates would . . . start a persistent downward decline." *Id.* at 14 (emphasis omitted). It is undisputed that the Offering Documents also warned that Freshworks had already "experienced . . . increased churn rates," which could "materially impact our business, results of operations, and financial condition in future periods" and cause "revenue [to] grow more slowly than expected." Ex. 1 at 22. The situation here is therefore unlike *Alphabet*, where the risk disclosures gave no hint that the specific event warned of had already materialized. 1 F.4th at 693-95, 702-05; *see Wochos*, 985 F.3d at 1196 (noting that a risk disclosure "affirmatively acknowledge[d] that Tesla has 'experienced to date'" certain issues (alterations omitted)). Plainly, given that there can be no dispute that the Offering Documents disclosed that churn rates had increased and growth rates could decline, Plaintiff cannot complain that the risk was omitted.

*Third*, because Freshworks' Q3 2021 growth (by any relevant measure) was substantial and generally in line with its historical growth, *supra* Part I.A, no relevant risk had materialized to such a degree that the disclosures "create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]," which in turn means that no Individual Defendant could have known that any risk had materialized *or* would persist. *Eargo*, 2023 WL 1997918, at *12; *In re Progenity Sec. Litig.*, 2021 WL 3929708, at *8 n.11 (S.D. Cal. Sept. 1, 2021) (concluding

plaintiffs failed to "plead anything beyond conclusory assertions that the risks had already materialized" because they "have not established that Defendants knew or reasonably could have known at the time that [the occurrence of the warned of risk] would continue . . . beyond the date of the IPO"); *see* MTD at 9-10 (collecting cases).[7]

## C.    Freshworks Did Not Violate Item 303 Because Plaintiff Has Not Adequately Alleged An Adverse Trend

As Defendants' MTD laid out, Plaintiff's Item 303 theory fails from every angle: He does not allege a persistent adverse trend; he does not allege that any trend was, as of the IPO date, "reasonably likely" to continue and have a "material impact" on Freshworks' net sales, revenues, or income; and he does not allege that any Defendant had actual knowledge of such a trend. MTD at 11-12; *see Steckman v. Hart Brewing*, 143 F.3d 1293, 1297 (9th Cir. 1998) (An Item 303 violation requires "not only knowledge of an adverse trend . . . and material impact . . . , but also that the future material impacts are *reasonably likely to occur* from the present-day perspective." (emphasis in original)). Far from refuting this, Plaintiff's brief confirms it.

*First*, Plaintiff does not identify an "adverse" trend in revenue, calculated billings, or net dollar retention. *See Eargo*, 2023 WL 1997918, at *8. Again, Freshworks' Q3 2021 revenue grew from the previous quarter and its YoY growth rates were in line with its historical growth rate. *See supra* Part I.A; MTD at vii, 6; Opp'n at 9 (not disputing that Q3 2021 growth "fell within" the range Freshworks had "experienced in the last year or two"). Plaintiff cites no authority indicating that consistent, continuing growth qualifies as "adverse," and Defendants are aware of none.

*Second*, Plaintiff does not identify any "trend," *i.e.*, "persistent" conditions affecting Freshworks' business environment, either. *See Robinhood*, 2023 WL 1927616, at *8. Indeed, he acknowledges that numerous cases hold that two months is not long enough to establish a persistent trend. Opp'n at 13; MTD at 11-12 (collecting cases). And while Plaintiff claims that "better

---

[7] *Compare Howard v. Arconic*, 395 F. Supp. 3d 516, 553 (W.D. Pa. 2019) ("Plaintiffs allege that Arconic put its compliance with health and safety legislation and regulations 'at issue,' but their theory would impose securities liability any time a company spoke on its compliance programs and then had any sort of compliance gap or issue."), *with* Opp'n at 8 ("Defendants put the subject of their revenue and calculated billings growth 'in play.'").

reasoned caselaw" holds otherwise, Opp'n at 13, he never explains why those cases are "better reasoned." To the extent they conflict with Defendants' cited cases, Plaintiff's cases overlook that:

> The word "trend" implies a change in behavior or activity that indicates a new direction for the company. Accordingly, to determine whether or not something is a trend, it is generally necessary to wait some time to investigate its longevity. The change may be passing or momentary or may be quickly addressed and put a stop to before it develops into something more. Premature disclosure of an event as a trend that turns out to be a passing occurrence can have as much potential to mislead as the failure to disclose what is a true trend.

*AppHarvest*, 2023 WL 4866233, at *43. At any rate, Plaintiff's cases are distinguishable from this one. *Facebook* held that Facebook had conceded a persistent trend by reducing its internal forecasts before the IPO. 986 F. Supp. 2d at 512-13. *Franchi* held that the sheer magnitude of the financial decline—*e.g.*, adjusted EBITDA plummeted from $6.2 million to *negative* $45.2 million—signaled a persistent trend. 633 F. Supp. 3d at 1066-67, 1069. And in *Milman v. Box Systems*, the court inferred a persistent trend from both the confirmed loss of "several key customers" and the fact that several of the "largest [remaining] customers had deferred purchasing decisions causing a material lengthening in [the company's] sales cycle" and slowing the company's "revenue stream" moving forward. 72 F. Supp. 2d 220, 231-33 (S.D.N.Y. 1999). None of this bears any resemblance to the facts here.

   *Third*, Plaintiff alleges absolutely no facts showing that, as of the IPO date, (i) any alleged slowing growth rate was "reasonably likely" to continue and have a "material . . . impact" moving forward, or (ii) any Defendant had actual knowledge of that likelihood. To both problems, Plaintiff offers the same solution: The Offering Documents "can and should be plausibly construed" as projecting that "the Company's growth rates would . . . start a persistent downward decline." Opp'n at 14 (emphasis omitted). But that is no solution; it is self-defeating. If the Offering Documents disclosed the alleged trend, then that ends the matter. If they did not, then Plaintiff obviously cannot use them to establish the trend, much less each Defendant's knowledge of it. Either way, therefore, Plaintiff's answer is no answer at all.[8]

---

[8] In footnotes, Plaintiff also speculates that Defendants must have had actual knowledge of all the elements of an Item 303 violation (*e.g.*, adverse trend, persistent trend, reasonably likely to have a material impact moving forward) because YoY revenue and calculated billings growth rates are "important performance metrics" and Freshworks ultimately saw lower growth at some point in the future. Opp'n at 13 & n.8, 14 n.9. That is emphatically not the law. *See, e.g.*, *In re Pivotal Sec.*

As a fallback, Plaintiff points to Rule 8 and asks the Court to infer Defendants' actual knowledge of an adverse trend because Freshworks must have tracked its financial performance. Opp'n at 13. But even assuming Defendants knew that growth had modestly slowed during Q3 2021, it would not explain how or why any Individual Defendant would have known as of the IPO that what he or she was observing then would continue. Rule 8 is a lower pleading standard, but it still requires Plaintiff to allege *facts* to support his claim, and he does not identify a single one in the AC suggesting that any Individual Defendant knew that whatever was causing growth rates to slow would continue. This case is therefore unlike those cited by Plaintiff, in which the plaintiff alleged that the defendants were aware of facts that were reasonably likely to have long term effects on revenue. *E.g.*, *Panther Partners*, 681 F.3d at 122 (court inferred defendants' knowledge of alleged trend because plaintiff alleged defendants learned three months before conducting secondary offering that the defect rate for company's computer chips was essentially "100% for all chips sold to clients representing 72% of revenues").

### D.   Freshworks Did Not Violate Item 105 Because The Offering Documents Contained Robust Risk Disclosures

Defendants' MTD demonstrated that Plaintiff's Item 105 theory fails on multiple levels: the Offering Documents *in fact* disclosed "the material factors that make an investment in the registrant or offering speculative or risky"; Plaintiff does *not* allege a material omitted risk; and he does *not* allege that any Defendant had "concrete knowledge" of such a risk. *See* 17 C.F.R. § 229.105; MTD at 12-13 (collecting cases).

---

*Litig.*, 2020 WL 4193384, at *8 (N.D. Cal. July 21, 2020) (holding that even detailed confidential witness allegations failed to establish management's actual knowledge of every Item 303 element); *Holbrook v. Trivago*, 2019 WL 948809, at *13 (S.D.N.Y. Feb. 26, 2019) ("[T]he extent of the ultimate impact . . . does not speak to what the Company knew or should have known at the time of the Offering."); *Mallen v. Alphatec Holdings*, 861 F. Supp. 2d 1111, 1128 n.8 (S.D. Cal. 2012) ("[S]ubsequent disclosure [of problems] is insufficient by itself to show that those [problems] were either known or could reasonably be expected to have a material impact as of [the IPO]."). And Plaintiff's own cases recognize as much. *See, e.g.*, *Medina v. Tremor Video*, 640 F. App'x 45, 48 (2d Cir. 2016) (rejecting Item 303 theory and admonishing that "[o]ur precedents require allegations of specific facts" establishing "actual knowledge"); *In re CPI Card Grp. Sec. Litig.*, 2017 WL 4941597, at *4 (S.D.N.Y. Oct. 30, 2017) (relying on detailed factual allegations regarding data tracking and from a confidential witness); *Panther Partners*, 681 F.3d at 121-22 (relying on detailed factual allegations establishing that the company knew 72% of its revenue was at risk).

Plaintiff does not seriously dispute any of these points. He merely replies that misleading risk disclosures must violate Item 105. Opp'n at 14-15. As explained above, however, Freshworks' risk disclosures were *not* misleading. *Supra* Part I.B. And none of Plaintiff's cases indicates otherwise, as each (unlike the situation here) involved enormous recent developments that would necessarily impact future quarters. *See Mingbo Cai v. Switch*, 2019 WL 3065591, at *5 (D. Nev. July 12, 2019) (misleading to omit that the company's strategy overhaul "presented a serious risk of diminishing revenue"); *Panther Partners v. Jianpu Tech.*, 2020 WL 5757628, at *1 (S.D.N.Y. Sept. 27, 2020) (misleading to omit that Chinese regulations imperiled "80% of [the company's] revenues at the time of the IPO"); *Gerneth v. Chiasma*, 2018 WL 935418, at *5 (D. Mass. Feb. 15, 2018) (misleading to omit that the FDA signaled it would reject the company's crucial new drug application); *Panther Partners*, 681 F.3d at 121-22 (misleading to omit that sales of defective semiconductor chips threatened "72% of [the company's] revenues"). Plaintiff therefore fails to allege an Item 105 violation.

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 15

Plaintiff fails to state a claim under Section 11, so his Section 15 claim should be dismissed as well. MTD at 14; *cf.* Opp'n at 15 (conceding the dependence).

## CONCLUSION

For the foregoing reasons and those stated in Defendants' MTD, the AC should be dismissed. That dismissal should be with prejudice because amendment would be futile. Indeed, in his cursory request for leave to amend, Opp'n at 15 n.10, Plaintiff does not explain what he would do differently in a third pleading. *See Kendall v. Visa U.S.A.*, 518 F.3d 1042, 1051 (9th Cir. 2008) (affirming denial of leave to amend because plaintiffs "fail to state how they would amend the Complaint if given leave"). Nor could the AC's deficiencies be cured through amendment, as Plaintiff cannot change that Freshworks' Q3 2021 growth was substantial and generally in line with its historical growth. *See Cervantes v. Countrywide Home Loans*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("[A] district court may dismiss without leave [to amend] where . . . amendment would be futile."). The futility of allowing an amendment is further illustrated by the fact that Plaintiff filed his initial complaint on November 1, 2022, and five and half months later he filed an amended

complaint that is basically the same. The Court's dismissal should therefore be with prejudice. *See Greenberg v. Sunrun*, 233 F. Supp. 3d 764, 775 (N.D. Cal. 2017) (Breyer, J.) (concluding leave to amend "would be futile" and dismissing first consolidated complaint with prejudice).[9]

Dated: September 7, 2023                    COOLEY LLP


                                            By:   */s/ Shannon M. Eagan*

                                                  Shannon M. Eagan (212830)
                                                  Patrick E. Gibbs (183174)
                                                  3175 Hanover Street
                                                  Palo Alto, California  94304-1130
                                                  Telephone: (650) 843-5000
                                                  Facsimile: (650) 843-7400
                                                  Email: seagan@cooley.com
                                                           pgibbs@cooley.com


                                                  -and-

                                                  Sarah M. Lightdale (*pro hac vice*)
                                                  Brian M. French (*pro hac vice*)
                                                  55 Hudson Yards
                                                  New York, New York 10001-2157
                                                  Telephone: (212) 479-6000
                                                  Facsimile: (212) 479-6275
                                                  Email: slightdale@cooley.com
                                                           bfrench@cooley.com

                                                  *Attorneys for Defendants Freshworks Inc.,*
                                                  *Rathna Girish Mathrubootham, Tyler Sloat,*
                                                  *Roxanne S. Austin, Johanna Flower, Sameer*
                                                  *Gandhi, Randy Gottfried, Zachary Nelson,*
                                                  *Barry Padgett, and Jennifer Taylor*

---

[9] Plaintiff cites *Reidinger v. Zendesk*, but in that case, the Court allowed the plaintiff to amend because the plaintiff adequately alleged a material omission but not scienter, and the Court noted that it was conceivable that plaintiff could cure the defect. 2020 WL 6562335, at *12 (N.D. Cal. Nov. 9, 2020).

1    Dated: September 7, 2023                    ORRICK, HERRINGTON & SUTCLIFFE LLP

2

3                                               By:  /s/ Alexander K. Talarides

4                                                   Alexander K. Talarides (SBN 268068)
                                                    405 Howard Street
5                                                   San Francisco, California  94105
                                                    Telephone: (415) 773-5700
6                                                   Facsimile: (415) 773-5759
                                                    Email: atalarides@orrick.com
7
                                                    - and -
8
                                                    Darrell S. Cafasso (*pro hac vice*)
9                                                   Jennifer M. Keighley (*pro hac vice*)
                                                    51 West 52nd Street
10                                                  New York, NY  10019
                                                    Telephone: (212) 506-5000
11                                                  Facsimile: (212) 506-5151
                                                    Email: dcafasso@orrick.com
12                                                      jkeighley@orrick.com

13                                                  *Attorneys for Underwriter Defendants*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW

14