IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAN R. SUNDARAM, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>FRESHWORKS INC, et al.,<br><br>    Defendants. | Case No. 22-cv-06750-CRB<br><br>**ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS** |

This securities class action alleges violations of Sections 11 and 15 of the Securities Act of 1933 ("Securities Act") against Freshworks Inc. ("Freshworks") and its executives, directors, and IPO underwriters (collectively, "Defendants"). Lead Plaintiff Mohan R. Sundaram ("Plaintiff"), on behalf of himself and all others situated, argues that he is entitled to damages caused by Freshworks' alleged failure to disclose adverse trends and risks regarding its financial and business condition prior to its public offering. Pending before this Court is Defendants' motion to dismiss Plaintiff's consolidated amended class action complaint. For the reasons explained below, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss.

**I.   BACKGROUND**

Plaintiff purchased shares of Freshworks' Class A common stock pursuant to or traceable to the company's Prospectus and Registration Statements (collectively, the "Offering Documents") filed with the Securities and Exchange Commission on August 27, 2021 and September 22, 2021, respectively. Compl. (dkt. 1) ¶ 1; Am. Compl. (dkt. 70) ¶ 1. Plaintiff alleges that the Offering Documents were materially misleading because they failed to disclose that Freshworks' growth rates were decelerating at the time of the Initial

1  Public Offering ("IPO").  Am. Compl. ¶¶ 4–6.

### A. The Defendants

Freshworks is a Delaware corporation based in San Mateo, California.  Compl. ¶ 14.  Founded in 2010, Freshworks is a software-as-a-service company that provides customer support software and tools for small- and medium-sized businesses.  Am. Compl. ¶ 18; Mot. (dkt. 72) at 1.

Members of Freshworks' Board of Directors are named as Individual Defendants.  These individuals are: (1) Rathna Girish Mathrubootham, the Chief Executive Officer and Chairman of the Board; (2) Tyler Sloat, the Chief Financial Officer; (3) Roxanne S. Austin, a director; (4) Johanna Flower, a director; (5) Sameer Gandhi, a director; (6) Randy Gottfried, a director; (7) Zachary Nelson, a director; (8) Barry Padgett, a director; and (9) Jennifer Taylor, a director.  Am. Compl. ¶¶ 19–28.

Freshworks' IPO Underwriters ("Underwriter Defendants") are also named as Defendants.  They are: Morgan Stanley & Co., LLC, J.P. Morgan Securities LLC, BofA Securities, Inc., Jefferies LLC, Barclays Capital Inc., Robert W. Baird & Co. Incorporated, Canaccord Genuity LLC, JMP Securities LLC, Needham & Company, LLC, Nomura Securities International, Inc., Oppenheimer & Co. Inc., Piper Sandler & Co., Raymond James & Associates, Inc., Amerivet Securities, Inc., CastleOak Securities, L.P., Samuel A. Ramirez & Company, Inc., and R. Seelaus & Co., LLC.  Id. ¶¶ 30–47.

### B. Factual Background

Defendants commenced Freshworks' IPO on September 22, 2021.  Am. Compl. ¶ 58.  That day, Freshworks issued 28,500,000 shares of Incorporated Class A common stock, which was sold to the investing public at $36.00 per share.  Id. ¶ 58.  After the close of markets on November 2, 2021, Freshworks issued a press release that announced its third quarter financial results, which had ended on September 30, 2021—six business days after the IPO.  Id. ¶ 78.  The press release reported a decline in Freshworks' financial metrics between the second quarter of 2021 and the third quarter of 2021.  Id. ¶ 79.

1  Defendants' failure to disclose Freshworks' declining third quarter ("Q3 2021")[1] financial
2  metrics before the IPO is the subject of this class action.

### 1. Metrics Announced Prior to the IPO

In the lead up to the IPO, Defendants touted Freshworks' "strong and accelerating" growth to convince prospective investors of the company's vitality. Id. ¶4. The Offering Documents provided financial data that Freshworks had "grown rapidly," had a "healthy dollar retention rate," and was "generating a healthy mix of revenue." Id. ¶¶ 61, 63, 67. Plaintiff alleges that the Offering Documents indicated to investors that Freshworks was experiencing strong and significant growth prior to the IPO, and that it was highly favorable that this growth would be sustained. Id. ¶¶ 62, 66, 67.

Defendants assessed Freshworks' growth through three metrics: (1) the year-over-year revenue growth rate, (2) the calculated billings growth rate, and (3) the net dollar retention rate. Id. ¶¶ 4–5. According to the Offering Documents, Freshworks' year-over-year revenue growth rate steadily increased in the three quarters prior to the IPO, from 44% in 4Q 2020, to 49% in 1Q 2021, and 56% in 2Q 2021. Id. ¶¶ 62. The calculated billings metric, which calculated non-generally accepted accounting principles revenue and the dollar value of new contracts signed, similarly grew in the quarters preceding Freshworks' IPO, from 31% in 2Q 2020 to 47%, 53%, 54%, and 61% for 3Q 2020, 4Q 2020, 1Q 2021, and 2Q 2021, respectively.[2] Id. ¶¶ 4, 10, 66. The net dollar retention rate also increased in the five quarters leading up to the IPO, starting at 107% in 2Q 2020 and ending at 118% for 2Q 2021. Id. ¶ 75. The figures for the year-over-year revenue growth rate, the calculated billings growth rate, and the net dollar retention rate from 2Q 2020 to 3Q 2021, as provided in the Complaint, are included in the chart below.

---

[1] Hereinafter, the Court references quarterly financial figures by the quarter and year (e.g., 3Q 2021).
[2] Defendants contend that they are unable to replicate the Plaintiff's alleged calculated billings figures using the Offering Documents. Mot. at 1 n.4; Reply at 2 n.3. Because this is a motion to dismiss, the Court accepts the Plaintiff's alleged calculated billings figures as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

United States District Court
Northern District of California

| Freshworks' Growth Rate Financial Data as provided in the Offering Documents.[3] | | | | | |
|---|---|---|---|---|---|
|  | 2Q 2020 (ended June. 30, 2020) | 3Q 2020 (ended Sept. 30, 2020) | 4Q 2020 (ended Dec. 31, 2020) | 1Q 2021 (ended Mar. 31, 2021) | 2Q 2021 (ended June 30, 2021) |
| Revenue Year over Year Growth |  |  | 44% | 49% | 56% |
| Calculated Billings Growth | 31% | 47% | 53% | 54% | 61% |
| Net Dollar Retention Rate | 107% | 109% | 111% | 112% | 118% |

## 2. Metrics Announced After the IPO

Freshworks announced its "highly disappointing" 3Q 2021 financial results on November 2, 2021. Id. ¶¶ 78, 79. It reported that the 3Q 2021 revenue year-over-year growth rate decreased to 46%, compared to 56% in 2Q 2021. Id. ¶ 79. The press release also stated that the net dollar retention rate declined to 117%, compared to 118% for 2Q 2021. Id. ¶ 81. In an earnings call later that day, Chief Financial Officer Tyler Sloat disclosed that the calculated billings rate also decreased to 41% for 3Q 2021 from 61% for 2Q 2021. Id. ¶¶ 20, 80. These figures marked the first decline for the year-over-year revenue growth rate, the calculated billings growth rate, and the net dollar retention rate metrics after three to five quarters of consistent growth. The next day, on November 3, 2021, Freshworks' stock dropped 14%. Id. ¶ 82.

On February 10, 2022, Freshworks announced its Q4 2021 earnings and reported similar levels of growth deceleration as Q3 2021. Id. ¶ 84. The revenue year-over-year growth rate declined to 44%, and the net dollar retention rate declined to 114%. Id. ¶¶ 84, 85. However, the calculated billings growth rate increased to 45%. Id. ¶ 86. The day after this announcement, Freshworks' stock dropped 18%, to $18.41 per share. Id. The figures for these three metrics from 2Q 2020 to 4Q 2021, as well as Freshworks' revenue in raw dollars, are included in the chart below.

---

[3] Am. Compl. ¶¶ 62, 69, 70, 75, 79.

4

| Freshworks' Growth Rate Financial Data as provided in the Offering Documents.[4] | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 2Q 2020 (ended June. 30, 2020) | 3Q 2020 (ended Sept. 30, 2020) | 4Q 2020 (ended Dec. 31, 2020) | 1Q 2021 (ended Mar. 31, 2021) | 2Q 2021 (ended June 30, 2021) | 3Q 2021 (ended Sept. 30, 2021) | 4Q 2021 (ended Dec. 31, 2021) |
| Revenue ($ in millions) | | | $73.00 | $80.59 | $88.34 | $96.61 | $105.5 |
| Revenue Year over Year Growth | | | 44% | 49% | 56% | **46%** | **44%** |
| Calculated Billings Growth | 31% | 47% | 53% | 54% | 61% | **41%** | **45%** |
| Net Dollar Retention Rate | 107% | 109% | 111% | 112% | 118% | **117%** | **114%** |

### C. Procedural History

On November 1, 2022, Plaintiff filed an initial class action complaint, alleging that Defendants included materially incorrect or misleading statements and/or omitted material information in the Offering Documents in violation of Sections 11, 12(a), and 15 of the Securities Act. Compl. ¶ 1. The court appointed the lead plaintiff and lead counsel on February 8, 2023. Order Appointing Lead Pl. and Lead Counsel (dkt. 62). Plaintiff filed a consolidated amended complaint on April 14, 2023 with the same allegations. Am. Compl at 30. Defendants filed the present motion to dismiss all the claims on June 14, 2023. Mot. Plaintiff filed an opposition on July 31, 2023. Opp'n (dkt. 77). Defendants filed a reply on September 7, 2023. Reply.

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter to

---

[4] Am. Compl. ¶¶ 62, 69, 70, 75, 79, 84, 86; Reply (dkt. 78) at 1.

state a claim that is facially plausible. Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678. The court "must take all of the factual allegations in the complaint as true," but it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. The plausibility standard does not impose a "probability requirement, but it asks for more than a sheer possibility that a defendant acted unlawfully." Id.

The Court should freely give leave to amend "when justice so requires" should it dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 15(a)(2); see Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty., 708 F.3d 1109, 1117 (9th Cir. 2013). The Court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

## III. DISCUSSION

Plaintiff asserts claims under Sections 11 and 15 of the Securities Act.[5] Plaintiff alleges that Defendants violated Section 11 by (1) failing to disclose the Q3 2021 decelerating growth rates prior to the IPO, materially misleading investors; (2) including statements in the Offering Documents that created an impression of a state of affairs that materially differed from the one that actually existed; (3) failing to disclose known, adverse trends in violation of Item 303 of SEC Regulation S-K; and (4) failing to disclose material adverse information in the Offering Documents in violation of Item 105 of SEC

---

[5] Plaintiff also alleged a claim under Section 12(a) of the Securities Act, arguing that the Prospectus contained materially misleading statements of fact. Compl. ¶ 119. Defendants argued that Plaintiff lacked standing to bring the Section 12(a) claim because he purchased the shares after market. Mot. at 13–14. In his reply, Plaintiff conceded that he does not have standing to bring the Section 12(a) claim. Opp'n at iii n.1. Accordingly, the Court GRANTS Defendants' motion to dismiss the Section 12(a) claim.

Regulation S-K. Plaintiff also asserts that the Individual Defendants were controlling persons of Freshworks and are thus subject to Section 15 liability. Plaintiff's Item 303 claim has merit, but his other Section 11 arguments fail. Since Plaintiff has plausibly alleged an underlying Securities Act violation through his Item 303 claim, his Section 15 claim can proceed too.

### A.  Section 11 Claims

Under Section 11(a) of the Securities Act, a stock purchaser must plausibly allege that the registration statement "contained an untrue statement of material fact" or "omitted to state a material fact . . . necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). A misrepresentation or omission is material where it "would have misled a reasonable investor about the nature of his or her investment." In re Daou Sys., Inc., 411 F.3d 1006, 1027 (9th Cir. 2005). An omission "must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists" to be actionable. Brody v. Transitional Hospitals Corp., 280 F.3d 997, 1006 (9th Cir. 2002). A statement must be both false and material to investors to be actionable. See In re Rigel Pharm., Inc. Sec. Lit., 697 F.3d 869, 880 n.8 (9th Cir. 2012).

Claims brought under Section 11 "place[] a relatively minimal burden on a plaintiff." Herman & MacLean v. Huddleston, 459 U.S. 375, 382 (1983). Unlike fraud-based claims, Section 11 liability does not require a showing of scienter, and Defendants will be held liable for unintentional or negligent material misrepresentations or omissions. In re Stac Electroncs Sec. Litig., 89 F.3d 1399, 1404 (9th Cir. 1996). Board directors of the issuer company, professionals who participated in the preparation of the registration statement, and underwriters of the security may be held liable under Section 11(a). 15 U.S.C. § 77k(a); see In re Software Toolworks Inc., 50 F.3d 615, 621 (9th Cir. 1994).

#### 1.  Duty to Disclose/Omissions

Plaintiff alleges that he sustained damages to the value of his purchased shares due to the omission of material facts in the Offering Materials. Am. Compl. ¶ 107. Specifically, Plaintiff alleges that the Offering Materials failed to disclose that, as of the

7

1  IPO, Freshworks' revenue growth rate and billing growth rate were decelerating, and its
2  net dollar retention rate was declining.  Id. ¶¶ 68, 72.  Instead, the Offering Documents
3  only contained financial data from the ten quarters preceding the IPO from which "it could
4  be readily determined that Freshworks' year-over-year revenue had experienced strong and
5  accelerating growth."  Id. ¶ 62.  Given the temporal proximity between the IPO on
6  September 21, 2021, and the close of 3Q 2021 on September 30, 2021, Plaintiff alleges
7  that the Defendants knew or should have known of this deceleration, that information
8  about the decelerating rates was material to investors, and this information should have
9  been disclosed in the Offering Documents.  Id. ¶¶ 71, 76.  Plaintiff also alleges that the
10 Offering Documents were misleading, in violation of Defendants' duty to be complete and
11 truthful, because Defendants affirmatively disclosed the growth rates and risk factors in the
12 Offering Documents.  Id. ¶ 97.
13     Defendants respond that (1) the historical financial data was neither false nor
14 misleading; and (2) Freshworks had no duty to disclose intraquarter results.  Mot. at 4–5.
15 Defendants' arguments are correct.

### a. Financial Data Disclosed in the Offering Documents

17     Companies cannot be held liable under Section 11 for simply reporting historical
18 financial data, particularly when a plaintiff makes no allegation that the data is inaccurate.
19 See Golubowski v. Robinhood Markets, Inc., 2023 WL 1927616, at *5 (N.D. Cal. Feb. 10,
20 2023) ("A company's statements are 'inactionable' if they 'merely restate accurately
21 reported historical information.'").
22     Plaintiff argues that the Offering Documents presented data from which it could be
23 inferred that Freshworks was "riding a *then-current* and ongoing period of accelerating
24 growth while failing to disclose that this was in fact no longer the case."  Opp'n at 7.
25 Plaintiff does not allege, however, that the Offering Documents contain inaccurate figures
26 with respect to the year-over-year revenue growth rate, the calculated billings growth rate,
27 or the net dollar retention rate.  Even if Plaintiff alleges that the Offering Documents
28 contained misleading projections, that would still be unactionable because any such

8

"projections" by Freshworks were accompanied by accurate figures. See In re Gupta Corp. Sec. Litig., 900 F. Supp. 1217, 1234 (N.D. Cal. 1994) ("[A]llegedly misleading statements, including projections, that accompany the release of accurate historical data are not actionable under federal securities laws.").

The Court finds that Plaintiff fails to state a Section 11 claim based on the "inferences" that could have been made from the historical financial figures stated in the Offering Documents.

### b. Failure to Disclose Ongoing 3Q 2021 Figures

Companies generally have no duty to disclose intraquarter results, and "courts have been reluctant to impose liability based upon a failure to disclose financial data for a fiscal quarter in progress." In re Lyft Inc. Sec. Litig., 484 F. Supp. 3d 758, 773 (N.D. Cal. 2020) (citation omitted); see In re Worlds of Wonder Sec. Litig., 35 F.3d 1407, 1419 (9th Cir. 1994) (holding that a company had no duty to disclose performance figures for a quarter that ended a month after its Debenture Offering in its prospectus). However, a company's failure to disclose such data can be actionable when the individual defendants have information "indicating that the quarter in progress at the time of the public offering will be an extreme departure from the range of results which could be anticipated based on currently available information." In re Novatel Wireless Sec. Litig., 830 F. Supp. 2d 996, 1023 n.31 (S.D. Cal. 2011) (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1210 (1st Cir. 1996)). The question is therefore whether the information Freshworks had access to at the time of the IPO was an "extreme departure" from anticipated results. Id.

A recent case in this Court addressed the same issue. In Golubowski, the company conducted its IPO during Q3 2021 and did not disclose financial performance indicator declines that occurred during Q3 2021 and prior to the IPO. 2023 WL 1927616, at *2. The company saw a 35% decline in revenue between June 2021 and September 2021, a 19% decline in monthly active users between June 2021 and July 2021, and a 53% decline in average revenues per user between March 2021 and September 2021. Id. The court found that these figures in isolation—without contextual information from prior quarters—

9

were insufficient to demonstrate "misleading representations by omission" in violation of Section 11. Id. at *5. The plaintiff failed to plausibly state a Section 11 claim because he did not allege "historical data" prior to the alleged timeframe to demonstrate that the declines in any of the reported figures were "exceptional and out of line with past fluctuations" as to require intraquarter disclosure. Id.

Plaintiff asserts that decline in Freshwork's financial performance between 2Q 2021 and 3Q 2021 is an "'extreme' deviation from past performance" that should have been disclosed in the Offering Documents. Opp'n at 8. He points to an 18% decline in the revenue year-over-year growth rate (from 56% in 2Q 2021 to 46% in 3Q 2021) and a 33% decline in the calculated billings metric (from 61% in 2Q 2021 to 41% in 3Q 2021). Opp'n at 8–9. He also notes that this was the first instance of decelerating growth—of any financial performance metric— after four consecutive quarters of growth. Am. Compl. ¶ 66. Given the temporal proximity between the IPO and close of 3Q 2021, Plaintiff alleges that Defendants knew or should have known of the deteriorating growth rates and had a duty to disclose the figures. Id. ¶ 71.

The Court disagrees. Freshworks' 3Q 2021 figures are not an extreme departure from Freshworks' historical results. Cf. Golubowski, 2023 WL 1927616, at *2. Rather, these figures are exactly in line with Freshworks' financial metrics from the preceding five quarters. The revenue year-over-year growth rate for 3Q 2021, at 46%, was higher than it was for 4Q 2020, at 44%. Id. ¶ 79. Similarly, the calculated billings growth rate for 3Q 2021 was higher than it was for 2Q 2020 (41% compared to 31%), and it even rose between 3Q 2021 and 4Q 2021. Id. ¶¶ 80, 86. Moreover, the 3Q 2021 net dollar retention rate, at 117%, was well within the range established in the preceding four quarters (109% - 118%). Id. ¶ 75. In addition, the deceleration rates between 2Q 2021 and 3Q 2021 were lower than the fluctuating rates in Golubowski, which this Court found was not "exceptional" to require intraquarter disclosure. Id. ¶¶ 75, 79, 80; Golubowski, 2023 WL 1927616, at *2.

The Court finds that Defendants are not liable under Section 11 for failing to

disclose intraquarter figures because its 3Q 2021 financial performance metrics are not an "extreme departure" from the range of results that could have been anticipated from past performance.  In re Novatel Wireless Sec. Litig., 830 F. Supp. 2d at 1023 n.31.

### 2. Misleading Risk Factor Language

Plaintiff alleges that the Offering Documents misled investors because the documents presented the risk of negative financial and operational trends as "future, contingent possibilities," rather than events that already materialized.  Am. Compl. ¶ 76. Plaintiff points to statements in the Offering Documents such as:

> "[E]ven if our revenue continues to increase, we expect that our revenue growth rate may decline in the future;"
>
> "[O]ur recent growth rates may not be indicative of our future growth;"
>
> "[O]ur quarterly results of operations, including the levels of our revenue . . . may vary significantly in the future."

Id. ¶ 77.

He alleges that the declining growth figures announced in the November press release demonstrate that the decline had already occurred when the Offering Documents were issued.  Id.

Plaintiff also alleges that the Offering Documents contained misleading statements about Freshfield's revenue, overall generation of business, and growth rate, which contributed to the impression that Freshworks' financial affairs "materially differed from the one that actually existed."  Opp'n at 12 n.7; see, e.g., Am. Compl. ¶ 67 ("[T]he Offering Documents also touted how the Company had 'grown rapidly' while simultaneously maintaining a 'healthy net dollar retention rate' . . . These statements, together with the reporting of historical revenue growth . . . painted a highly rosy picture of continuing and accelerating growth trends as of the IPO."); Am. Compl. ¶ 63 ("[n]ow we generate a healthy mix of revenue from companies of all sizes").[6]

---

[6] Defendants argue that these statements about Freshfields' revenue, overall generation of business, and growth rate are corporate puffery and not independently actionable.  Mot. at

Defendants argue that the risk disclosures were not false or misleading because (1) they were sufficiently specific to the inherent market or business-related risk; and (2) no relevant risk had materialized such that an Individual Defendant could have even known that Freshworks' financial affairs was materially different than the one that actually existed.  Reply at 7–9.

The Court finds that Defendants' risk disclosures were not misleading.  First, the Offering Documents clearly disclosed that Freshworks had already experienced "a reduction in renewal rates and increased churn rates . . . that could materially impact [its] business, results of operations, and financial condition in future periods."  French Decl. Ex. 1 (dkt. 72-2) at 22.  This is not a risk disclosure that "speaks entirely of as-yet-unrealized risks and contingencies" that does not "alert the reader that some of these risks may already have come to fruition."  In re Alphabet, Inc. Sec. Litig., 1 F.4th 687, 703 (9th Cir. 2021), cert. denied sub. nom. Alphabet Inc. v. Rhode Island, 142 S. Ct. 1227 (2022) (quoting Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 985-87 (9th Cir. 2008)).  Second, as explained above, Freshworks' accurate reporting of historical financial performance data did not misleadingly "create an impression of a state of affairs that differ[ed] in a material way from one that actually exist[ed]," during 3Q 2021.  See supra at 8–9; Brody, 280 F.3d at 1006.  Freshworks accurately reported its historical financial performance metrics in the Offering Documents, and the 3Q figures were within the established range.  See supra at 9.  Third, Defendants' statements that Freshworks had "grown rapidly," maintained a "healthy net dollar retention rate," and had a "healthy mix of revenue" are simply statements of corporate optimism, which are inactionable and do not create an impression that Freshworks' financial condition was materially different from what was detailed in the Offering Documents.  See In re Cutera Sec. Litig., 610 F.3d 1103, 1111 (9th Cir. 2010) (collecting cases).

---

10. Plaintiff concedes that they are not independently actionable.  Opp'n at 12 n.7.  However, he argues that these statements still contributed to an "impression of a state of affairs that materially differed from the one that actually existed."  Id.

1  The Court finds that the risk disclosure statements in the Offering Documents are not misleading, and thus do not state a claim for a Section 11 violation.

### 3. SEC Regulation S-K

Items 303 and 105 of Regulation S-K impose independent and affirmative disclosure duties for companies undergoing the IPO process. 17 C.F.R. §§ 229.105, 229.502(a), 229.503, § 229.303(b)(2)(ii); Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1296 (9th Cir. 1998). Item 303 requires disclosure of trends or uncertainties known to have a material effect on a company's revenue or income, and Item 105 requires a discussion of material risk factors. 17 C.F.R. §§ 229.105, 229.502(a), 229.503, 229.303(b)(2)(ii). In Steckman, the Ninth Circuit held that an Item 303 violation automatically states a claim for a Section 11 violation. 143 F.3d at 1296–97. Since both Items 303 and 105 address a company's disclosure requirements in their IPO documents, courts treat a violation of Items 303 and 105 as a violation of Section 11. See, e.g., Pirani v. Slack Techs., Inc., 445 F. Supp. 3d 367, 385 (N.D. Cal. 2020).

#### a. Item 303 Claim

Under Item 303, companies must "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(b)(2)(ii). To state a Section 11 claim for failing to adhere to Item 303, Plaintiffs must plausibly allege: (1) the existence of a trend or uncertainty; (2) known to management; (3) that is reasonably likely to have a material effect on the registrant's financial condition or results of operation. Steckman, 143 F.3d at 1296–97.

Plaintiff argues that Defendants violated Item 303 of Regulation S-K because the Offering Documents did not disclose known revenue and calculated billing growth deceleration. Am. Compl. ¶ 94. Defendants argue that (1) one quarter of financial deceleration is insufficient to establish a trend; and (2) Plaintiffs did not allege sufficient facts pertaining to Defendants' knowledge of an adverse trend. Reply at 9–10. The Court finds Plaintiff's argument persuasive.

13

### i. Knowledge of a Trend or Uncertainty

The parties dispute whether a quarter constitutes a "trend" that must be reported. Mot. at 11–12; Opp'n at 12–13. "A trend under Item 303 requires an 'observed pattern that accurately reflects persistent conditions of the particular registrant's business environment.'" In re Restoration Robotics, Inc. Sec. Litig., 417 F. Supp. 3d 1242, 1263 (N.D. Cal. 2019) (quoting Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1191 (11th Cir. 2002)). "[T]he case law is far from settled regarding the length of time necessary to constitute a "trend" for the purpose of Item 303." Franchi v. SmileDirectClub, Inc., 633 F. Supp. 3d 1046, 1066 (M.D. Tenn. 2022). Some district courts have held that a period shorter than two months or a single quarter decline of 9% in operating income is insufficient to establish a trend under Item 303. Mallen v. Alphatec Holdings, Inc., 861 F. Supp. 2d 1111, 1128 (S.D. Cal. 2012) (collecting cases about what establishes a trend under Item 303). But this is not a settled rule, and a trend may be a "factual inquiry" that is resolved at a later stage of a case. In re Lyft Inc. Sec. Litig., 484 F. Supp. 3d 758, 776 n.7 (N.D. Cal. 2020) (finding that the plaintiff plausibly pled a violation of Item 303 because they alleged that the company knew of defects that would have a material financial impact prior to the IPO). More facts are needed here to determine whether Freshworks' decelerating growth rates actually constitute a trend. Because it is plausible that Freshworks' Q3 2021 financial deceleration indicates an "observed business pattern that accurately reflects persistent conditions" of Freshworks' business environment, the Court finds that Plaintiff sufficiently alleges this element at this stage in the proceedings.

Given that Plaintiff sufficiently pleads that Freshworks' decelerating growth rates are a trend, the Court finds that Plaintiff sufficiently alleges that Defendants had knowledge of an adverse trend. Plaintiff points to the Offering Documents, which state that Freshworks already experienced "a reduction in renewal rates and increased churn rates . . . that could materially impact [its] business, results of operations, and financial condition in future periods." French Decl. Ex. 1 at 22. Plaintiff also argues that the statement in the Offering Documents "we expect that our revenue growth rate may decline

14

in the future" is indicative of the Defendants' belief of financial deceleration—that it was a warning. Opp'n at 14. Plaintiff asserts that these statements, taken together, demonstrate that Defendants had knowledge of Freshworks' Q3 2021 decelerating growth rates at the time of the IPO. Id. Under the liberal pleading standards under Rule 12(b)(6), Plaintiff plausibly alleges that Defendants knew of Freshworks' financial deceleration prior to the IPO.

### ii. Material Impact

Plaintiff alleges that the growth deceleration Freshworks experienced during Q3 2021 had a material impact on the company's financial condition. Plaintiff references Franchi, where the court found that the plaintiffs stated a plausible Item 303 violation based on "sharp and sudden decline in three different financial metrics related to [the defendants'] operations" and argues that these declines mirror Freshworks' Q3 growth deceleration rates. Opp'n at 13–14; 633 F. Supp. 3d at 1067. In Franchi, the plaintiffs alleged that at the time of the IPO, the defendant knew and failed to disclose that its financial metrics would decrease as a result of increased marketing expenses and expenses related to pending litigation and investigations. Id. at 1058. At this stage of the proceedings, Plaintiff sufficiently alleges that the Q3 2021 decelerating growth rates in three different financial metrics were reasonably likely to have a material impact on Freshworks' financial condition, particularly given that it was a company at the IPO stage. Opp'n at 13–14.

The Court finds that Plaintiff adequately states a violation of Item 303 because he alleges that Defendants knew that the Q3 2021 decelerating growth rates were "reasonably likely" to impact Freshworks' IPO. 17 C.F.R. § 229.303(b)(2)(ii).

### b.  Item 105 of SEC Regulation S-K

Item 105 requires "a discussion of the most significant factors that make an investment in the registrant or offering speculative or risky," and failure to satisfy this requirement amounts to a Section 11 violation. 17 C.F.R. §§ 229.105(a), 229.502(a), 229.503; Steckman, 143 F.3d at 1296. "[W]here a company's filings contain abundant and

specific disclosures regarding the risks facing the company, as opposed to terse, generic statements, the investing public is on notice of these risks and cannot be heard to complain that the risks were masked as mere contingencies." Plevy v. Haggerty, 38 F.Supp. 2d 816, 832 (C.D. Cal. 1998).

This Court recently held that a company's risk disclosures were misleading in violation of Item 105 because the "risk factors" reported in its Registration Statement had already materialized at the time of its IPO. Bos. Ret. Sys. v. Uber Techs., Inc., 2020 WL 4569846, at *6 (N.D. Cal. Aug. 7, 2020). There, the plaintiff plausibly alleged that the company's financial affairs were materially different than what was represented in its Registration Statement by pointing to the company's corporate structure. Id. The plaintiff alleged that the company intentionally delayed layoffs and restructuring "it knew were inevitable" to mislead the markets in anticipation of its IPO, and indeed the company dissolved director-level positions weeks after the IPO. Id. The Court found that plaintiffs plausibly alleged that the risk factors had "already 'come to fruition'" and the Registration Statement was "misleading" in violation of Item 105. Id. at *6–*7.

Plaintiff alleges that the Offering Documents' discussion of risk factors was misleading in violation of Item 105 of SEC Regulation S-K because the Offering Documents "failed to make any mention of slowing revenue growth as required by SEC rules and regulations." Am. Compl. ¶ 96. Defendants respond that the Offering Documents contained robust risk disclosures that satisfied Item 105 requirements. Reply at 11. The Court agrees with Defendants.

Freshworks' risk disclosures adequately warned that the company may experience deterioration in its revenue growth and other financial performance metrics. See, e.g., French Decl. Ex. 1 at 16 ("We have experienced rapid growth in recent periods. Even if our revenue continues to increase, we expect that our revenue growth rate may decline in the future as a result of a variety of factors."); French Decl. Ex. 1 at 18 ("Our quarterly results may fluctuate significantly and may not meet our expectations or those of investors or securities analysts. Our quarterly results of operations, including the levels of our

revenue, deferred revenue, working capital, and cash flows, may vary significantly in the future, such that period-to-period comparisons of our results of operations may not be meaningful."). The Offering Documents specified the following factors as potential risks: the COVID-19 pandemic; the level of product demand; errors in forecasting product demand; and a reduction in customer renewal rates. French Decl. Ex. 1 at 18, 19, 22. These are not "terse, generic statements" that fail to comply with Item 105's requirement for a discussion about significant risk factors. Plevy, 38 F.Supp. 2d at 832.

Even if these statements are generic, Plaintiff has not alleged facts that plausibly demonstrate that Freshworks' financial affairs were materially different than what was represented in the Offering Documents to amount to a violation under Rule 105. Plaintiff alleges that the discussion of risk factors in the Offering Documents was "materially misleading" because the Offering Documents "failed to make *any* mention of slowing revenue growth." Am. Compl. ¶ 96. However, unlike in Bos. Ret. Sys., where the plaintiffs alleged that the company delayed "inevitable" layoffs and restructuring until after the IPO, Freshworks reported in the Offering Documents that it had already experienced "a reduction in renewal rates and increased churn rates . . . that could materially impact [its] business, results of operations, and financial condition in future periods." 2020 WL 4569846, at *6; French Decl. Ex. 1 at 22. Plus, the alleged "slowing revenue growth" was in line with historical figures. See supra at 9.

Given these risk disclosures, Plaintiff has not plausibly alleged that Defendants violated Item 105 for failing to discuss "potential future adverse impacts." Am. Compl. ¶ 96.

### B.  Section 15 Claim

Section 15 of the Securities Act imposes secondary liability on every person who controls any person liable under Section 11. In re Rigel Pharms., Inc. Sec. Litig., 697 F.3d at 886. Determining whether an individual is a control person is a fact intensive matter. Howard v. Everex Sys., Inc., 228 F.3d 1057, 1065 (9th Cir. 2000). An individual is a control person of a company if they possess "the power to direct or cause the direction of

17

the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405. "Traditional indicia" of a controlling person of a company include "a prior lending relationship with the accused company, ownership of its stock, and a seat on its Board." Pirani, 445 F. Supp. 3d at 391.

Plaintiff alleges that Individual Defendants were "controlling persons" of Freshworks "[b]y reason of their ownership in, senior management positions at, and/or directorships held." Am. Compl. ¶ 124. Defendants allege that Plaintiff lacks standing to bring a Section 15 claim because Plaintiff did not allege an underlying violation of the Securities Act. Mot. at 14.

The Court finds that Plaintiff adequately alleges a Section 15 claim. Plaintiff plausibly alleges a violation of Item 303, as discussed supra, which is a violation of Section 11. See supra at 14–16; Steckman, 143 F.3d at 1296–97. He also sufficiently alleges that the Individual Defendants were control persons by nature of their positions at Freshworks, which Defendants have not contested.

### C.     Leave to Amend

Should the Court dismiss a complaint for failure to state a claim, it should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has instructed that the policy favoring amendment "should be applied with 'extreme liberality.'" United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981) (quoting Rosenberg Brothers & Co. v. Arnold, 283 F.2d 406, 406 (9th Cir. 1960) (per curiam)). However, leave to amend "is not to be granted automatically." In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 738 (9th Cir. 2013) (quoting Jackson v. Bank of Haw., 902 F.2d 1385, 1387 (9th Cir. 1990)). A court considers five factors to assess whether to grant leave to amend: "[1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendment previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [and] [5] futility of amendment." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Defendants argue that all Plaintiff's claims should be dismissed with prejudice because leave to amend would be futile. Reply at 12. According to Defendants, Plaintiff has not explained what he would do differently in a third pleading, and he cannot change Freshworks' Q3 2021 financial performance metrics. Id. Defendants do not discuss the other four factors and do not assert that (1) leave to amend will cause undue delay; (2) Plaintiff acted in bad faith; (3) Plaintiff has repeatedly failed to cure deficiencies in the complaint; or (4) leave to amend will result in undue prejudice.

Leave to amend will not be futile here. For example, plaintiff could amend the complaint to include facts that the Q3 2021 growth deceleration rates were exceptional and out of line with historical figures as to require intraquarter disclosure. Given that it would not be futile, and because Defendants do not assert that any of the other four factors weigh against granting leave to amend, the Court GRANTS Plaintiff leave to amend his Section 11 and Item 105 claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss Plaintiff's Item 303 claim and Section 15 claim. The Court GRANTS Defendants' motion to dismiss Plaintiff's 12(a) claim with prejudice. The Court GRANTS with leave to amend Defendants' motion to dismiss the Item 105 claim and the Section 11 claims that Defendants (1) failed to disclose the Q3 2021 decelerating growth rates prior to the IPO; and (2) included statements in the Offering Documents that created an impression of a state of affairs that materially differed from the one that actually existed.

**IT IS SO ORDERED.**

Dated: September 28, 2023

CHARLES R. BREYER
United States District Judge